**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| 1600 NELSON AVENUE HOUSING DEVELOPMENT FUND CORPORATION, individually and on behalf of those individuals and families entitled to homeownership and/or occupancy in its housing project developed pursuant to Article XI of the New York State Private Housing Finance Law;: and each of ISABEL ADON, WALKIRIA COLON, : RAFAEL COTTO, ERENIA FERMIN GUZMAN, : LORANI GARCIA, JOSE GONZALEZ, : JOSE JUNIOR GONZALEZ, : MATILDE GONZALEZ, VIOLETA GUERRERO : KENIA MINIER, YADIRA POLANCO, : GILBERTO RIVERA, DINORA VELASQUEZ : and DORIS VELASQUEZ, individually and on behalf of all other similarly-situated persons, : | Civil Action No. |
| Plaintiffs, | **COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| CITY OF NEW YORK, ADOLFO CARRION, Jr. (Commissioner of the New York City Department of Housing Preservation and Development), and PRESTON NIBLACK (Commissioner of the New York City Department of Finance), NEIGHBORHOOD RESTORE HOUSING DEVELOPMENT FUND CORPORATION, and BRONX PRO GROUP, LLC, | |
| Defendants, | |

1600 NELSON AVENUE HOUSING DEVELOPMENT FUND CORPORATION, ISABEL ADON, WALKIRIA COLON, RAFAEL COTTO, ERENIA FERMIN GUZMAN, LORANI GARCIA, JOSE GONZALEZ, JUNIOR GONZALEZ, MATILDE GONZALEZ, VIOLETA GUERRERO, KENIA MINIER, YADIRA POLANCO, GILBERTO RIVERA, DINORA VELASQUEZ and DORIS VELASQUEZ (collectively, "Plaintiffs"), by and through

their attorneys HIMMELSTEIN, MCCONNELL, GRIBBEN & JOSEPH LLP, bring this action for damages and other legal and equitable relief against defendants the CITY OF NEW YORK (the "City"); against ADOLFO CARRION, Jr., in his capacity as the current Commissioner of the New York City Department of Housing Preservation and Development, as the representative of each and every prior individual in his position, and with respect to each and every act complained of herein undertaken by him and/or the New York City Department of Housing Preservation and Development on behalf of itself and/or the City at all times relevant to the actions complained of herein ("HPD"); against PRESTON NIBLACK, in his capacity as Commissioner of the New York City Department of Finance, as the representative of each and every prior individual in his position at all times relevant to the actions complained of herein, and with respect to each and every act complained of herein undertaken by him and/or the New York City Department of Finance on behalf of itself and/or the City ("DOF"); against NEIGHBORHOOD RESTORE HOUSING DEVELOPMENT FUND CORPORATION ("Neighborhood Restore"); and against BRONX PRO GROUP, LLC. ("Bronx Pro,"). HPD and DOF, together with the City, are collectively referred to herein as the "Municipal Defendants". Neighborhood Restore, together with Bronx Pro, are collectively referred to herein as the "TPT Defendants". The Municipal Defendants, together with the TPT Defendants are collectively referred to herein as the "Defendants".

## INTRODUCTION

1. This is an action brought by Plaintiffs seeking to recover their homes and other private properties – *i.e.*, their homestead, real, personal and other tangible and intangible private property appurtenant thereto and the value thereof (collectively "***Plaintiffs' Properties***" or the "***properties***") -- that were unlawfully taken by the City through seizures of said properties

under a program that the City has described and advanced since 1996 as its Third Party Transfer Program (the "TPT Program"). The TPT Program was created in legislation that was presented, in 1996, to the New York City Council (*i.e.*, New York City's legislative branch of government) by Defendant HPD, on behalf of the City, as amendments to the *in rem* powers granted to the City by the New York State Legislature in or about 1939 for tax collection purposes only, in order to, among other things and contrary to the said purpose, seize private property for purposes other than tax collection.

2. The TPT Program -- the specifics of which are described and presented *infra* -- is codified at Title 11, Chapter 4 of the New York City Administrative Code (the "Code"), as amended by The Local Law of 1996 and Title 28, Chapter 8 of the Rules of the City of New York ("The Local Law"). Under the TPT Program, utilizing the appearance of outstanding tax liens or other municipal charges, in each case, the City and the Municipal Defendants seize the private owner's property by *in rem* judgment, in order to convey the title thereto (the "Title"), in fee simple absolute, for free, along with the private owner's Surplus or Excess (defined *infra*) and Equity Values in the properties (defined *infra*), to the City's real estate development partners.

3. The City's real estate development partners are organized, guided, hand-picked and/or supported by the City for participation in the TPT Program, and include Defendants Neighborhood Restore and Bronx Pro ("TPT Program Partners"). The TPT Program Partners receive valuable real and personal properties – worth, in each round, no less than tens of millions of dollars - through the TPT Program. The TPT Program Partner paid nothing to the City in exchange for this transfer of private property (*i.e.*, the prior owners' Title to and Surplus in the property).

4. On information and belief, these fortunate real estate developers were selected by or on behalf of elected officials and employees of the executive branch of the City's government in a non-competitive and conflicted process, and are otherwise intertwined or affiliated with the City. In 2021, Defendant Neighborhood Restore's board of directors included Elizabeth Oakley, Deputy Commissioner for HPD's Office of Development.[1]

5. Under The Local Law, the City is only permitted to select private properties to seize for the TPT Program that are meet the statutory definition or requirement to be designated a distressed property (*i.e.* a property [a] against which tax liens are owed to the City in an amount of no less than 15% of property's market value at the relevant time <u>and</u> [b] which has either [i] five or more housing code violations per unit in the property or [ii] an unpaid lien of at least $1000 for work undertaken by or on behalf of the City to repair or eliminate a dangerous or unlawful condition at the property -i.e. a "*statutorily distressed property*"). However, the City and the Municipal Defendants have taken the position that they can seize or take anybody's private property, whether or not the property meets the definition in The Local Law for seizure thereunder. For example, the Municipal Defendants have championed takings of private properties that they have alleged (a) that the owners thereof owe any amount in taxes or municipal charges to the City and (b) that the properties are located -- physically – near to a *statutorily distressed property* (when said properties are not statutorily distressed); or (c) that the properties are <u>not</u> "*viable*" properties because they are in generally poor condition, and therefore, are less marketable.

1 See Missions & Board, Neighborhood Restore, http://www.neighborhoodrestore.org/about/ (as posted on July 27, 2021).

6. Procedurally and substantively, the TPT Program is utilized for purposes other than the collection of tax liens owed to the City. Tax collection is merely a pretext for seizing and taking private property. Although the purported bases for the *in rem* seizures is are claims of overdue real property taxes, or water and sewer charges, or charges resulting from the City's remedying health and safety violations at a private owner's property, for example, no auction or sale of the property is conducted following the seizure of title by *in rem* judgment; none of the purported, putative or actual tax liens assessed against the seized properties are collected by or paid to the City from the seized properties; and the title to the properties are transferred to the TPT Program partners for free, upon which, the purported, putative or actual tax liens that resulted in the seizures are simply set aside or nullified by the City (in other words, wiped off the record of the seized properties for the pecuniary benefit of its TPT Program partners).

7. The TPT Program Partners was not required to, nor did any of the TPT Defendants, make any payment towards the purported or putative underlying tax lien on which the City initiated the *in rem* proceeding in the first place. Under The Local Law, none of the original owners of the seized properties received anything for the value of the transferred property in excess of the value of the putative or actual tax lien at the time the action was commenced or the *in rem* judgment was awarded to the City (*i.e.* the "surplus" or "excess value", as each such term is defined or described by the U.S. Supreme Court in *Tyler v. Hennepin County*, 598 U.S. 631 [2023]).

8. Upon extinguishing a prior property owner's title in a private property by *in rem* judgment for the TPT Program, said property owner has no means or mechanism to demand or recover the surplus or excess value in the property under The Local Law. The Local Law

provides no opportunity or process for the prior owner to obtain the surplus or excess value once absolute title is transferred to the City by *in rem* judgment thereunder.

9. Following the seizures and transfer of title, the TPT Program Partners then effectively step in the shoes of the prior, private owners at the properties, such as the Plaintiffs. The TPT Program Partners then proceed, either directly or through their agents or additional partners, to remove or lock out the prior owners from their properties, or, for those owners who reside at the properties, convert them to tenants of the TPT Program Partners. Widespread evictions of the prior owners' tenants, or the prior owners themselves who reside at the seized and taken properties generally follow.

10. At all relevant times herein, the seizures of Plaintiffs' Properties under and for the TPT Program violated and continues to violate the Takings Clause of the Fifth Amendment (as made applicable to the states through the Fourteenth Amendment) thereof, the Equal Protection Clause of the Fourteenth Amendment (Section 1) thereof, the Due Process Clause of the Fourteenth Amendment (Section 1) thereof, and the protections afforded provided private property owners thereunder against unconstitutionally excessive fines (under the Eighth Amendment thereof). In addition and at all relevant times, the law under which the City has been permitted to enforce said seizures and unlawful takings of private property, including Plaintiffs' Properties violated the 14th Amendment prohibition against the deprivation of property without due process of law.

**New York City's Illegal And Unlawful Round X TPT Program Takings**

11. In 2018, invoking The Local Law, the City secured *in rem* judgments in summary foreclosure proceedings that extinguished Plaintiff's Title in, and facilitated the unlawful taking of the Surplus or Excess, and the Equity Values in Plaintiffs' Properties in what the City

designated as its TPT Program Round X seizures for the TPT Program. Subsequently, the City, purportedly pursuant to the additional provisions of The Local Law, transferred Plaintiffs' properties (i.e., the Title, Surplus or Excess, and Equity Value) to certain of its TPT Program Partners, for the purpose of financing, developing and constructing renovated/upgraded rental housing at the properties, with Plaintiffs' Surplus or Equity Value therein.

12. At all relevant times herein, the City's TPT Program has amounted to the foreclosure of private property by the City in violation of fundamental principles embodied in the United States Constitution and in the New York State Constitution against unlawful takings and disregard for due process of law among other violations. The City has effected the TPT Program through illegal seizures. The City's TPT Program amounts to the unlawful taking of private property without just compensation, by one or more City governmental entities, in violation of the United States Constitution, the New York State Constitution and several additional provisions of law. The City's seizure of private property is then enforced and upheld by New York State courts (i.e., state governmental entities) pursuant to the presumption of validity enacted in The Local Law, even in the face of flagrant violation of the due process and equal protection clauses of both the United States and New York State Constitutions.

**New York City's TPT Program is Targeted and Discriminatory**

13. The TPT Program is otherwise unconstitutional, because an extraordinary percentage of the properties targeted for seizure under The Local Law in the past 10 to 15 years, for example, were owned by persons of color, and/or were located in historic African-American, Caribbean-American, Hispanic-American and Middle-Eastern American communities (*i.e.*, Black and brown communities) across New York City. The City has thus extended or applied the *in*

*rem* powers granted to it by New York State to first target, and to then deprive, property owners of color especially of their property and related rights unlawfully, misusing the in rem powers granted to the City in 1939. This alleged misuse of state-granted *in rem* power has stripped away, and, in the case of the Plaintiffs, will continue to strip away, inter-generational wealth of Black and brown individuals and families.

14. A notable number of the properties that have been illegally seized and unlawfully taken by the City for the TPT Program are cooperative residential homes within multi-family buildings that were developed approximately 30 years ago as sustainable, long-term, affordable cooperative communities, which are inhabited predominantly by Black and brown individuals and families. These multi-family buildings were owned by corporations organized pursuant to Section 573 of Article XI of the New York State Housing Finance Law (referred to herein as "HDFCs"), and the residents were, for the most part, shareholders in the cooperative corporation. As such, each multi-family building constitutes a cooperative, shareholder community for its owners and residents ("HDFC cooperative communities"), prior to the TPT Program seizure thereof.

15. In 2015, defendants DOF and HPD selected what it designated as Round X of private properties and invoked *in rem* powers captured by the City unlawfully in The Local Law. Plaintiffs' Properties is one of the HDFC cooperative communities that was selected for Round X seizures in 2015, and was in fact seized by *in rem* judgment for the TPT Program in 2017 under the Local law, following which the Title to the Building and the Surplus therein, along with the Equity Value in each of the Plaintiffs' Properties were transferred to Defendant Neighborhood

Restore, by deed, pursuant to Administrative Code §11-412.1, as the "designated grantee as a qualified third party."

16. Plaintiffs' Properties have been home to 26 cooperative shareholder families and their tenants since 1986. Plaintiffs' Properties constituted a stable, affordable, homeownership community of color, as its owners and residents were, prior to the seizure of said properties, predominantly families of color (Black and brown individuals and families). The TPT Program effected unconstitutional seizures and takings of Plaintiffs' Properties, and the systemic destabilization of this community of color.

17. At a hearing conducted by the Oversight Committee in July 2019 as to the TPT Program, the New York City Council found that properties like Plaintiffs were especially at risk of being captured by the TPT Program in the prior decade. Plaintiffs ask that this Court take judicial notice of the New York City Council's finding that "***[t]he practical implication of an HDFC's inclusion in TPT is that the HDFC converts from a cooperative to a rental building post-transfer. This meant that the economically vulnerable New Yorkers who were shareholders in such properties—and may have spent years rehabilitating and maintaining such properties when the City no longer wished to do so—stood to lose ownership of their units as a result of TPT***" (***emphasis added*** ) at https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=3968976&GUID=30748786-B223-49B9-A6E5-D381B3FAF5F7&Options=&Search (a copy of which is attached hereto as Exhibit A).

18. The TPT Program is a fundamentally unfair process designed to seize property owned largely by Black and brown individuals and families, divesting them of their

homestead, along with the properties' surplus or equity value, as well as the long-term value and inter-generational wealth that is tantamount to their ownership of the properties, as well as the other inherent values that ownership of the properties provide to the Plaintiffs, their families and their heirs. Towards this end, the Local Law facilitated the taking of Plaintiffs' Properties, as well as others, by New York City governmental entities, and its TPT Program partners acting under the color of the authority of said governmental entities, with flagrant disregard for the notice and other due process protections embodied in both the United States and the New York State Constitutions. The Local Law provided, and continues to provide, the City and the Municipal Defendants with a presumption of regularity[2] – even on a record of non-compliance with the statutory notice and other due process provisions -- which presumption effectively bars private owners from ever succeeding in challenging the Defendants' disregard for, or violation of, or failure to comply with the notice provisions thereof, prior to the seizure of taking of private property.

19. The presumptions of regularity, as codified in Sections 11-411 and 11-412(c) of the Code adopted pursuant to The Local Law, for example, and invoked by the New York State courts to affirm or otherwise uphold *in rem* foreclosure judgments awarded to the City for the TPTP Program, facilitate the deprivation of private property without due process of law. These presumptions of regularity in The Local Law, and their application by the New York State courts, directly fly in the face of the protection against deprivation of property without due process of law that is embodied in 14th Amendment of the United States Constitution.

**TPT Program Seizure and Taking of Plaintiffs' Properties**

[2] See Admin. Code §§ 11-411 and 11-412(c).

20. On July 7, 2015, the City commenced *in rem* foreclosure proceedings against Plaintiffs' Properties, among others, by filing two duplicate Lists of Delinquent Taxes in the Office of the Clerk, Bronx County, pursuant to Admin. Code §11-405. However, none of the Plaintiffs received notice of the commencement of the foreclosure proceeding, nor did the City or the Municipal Defendants comply with any of the additional notice requirements required by The Local Law.

21. In the *in rem* proceedings, Municipal Defendants represented that $399,345.35 was assessed in municipal arrears for taxes, water and sewer charges assessed against the subject property, although only $14,392.62 of DOF Lien constituted a "tax lien" under New York City law. On the date of commencement of the *in rem* proceedings none of Plaintiffs' Properties was a statutorily distressed property.

22. On November 16, 2017, the City secured an *in rem* judgment against Plaintiffs' Properties, which judgment authorized the City to prepare and execute a deed conveying title to either to the City or to a qualified third party. None of the Plaintiffs received a notice of this default judgment.

23. With the judgment in hand, the City effectively extinguished Plaintiffs' titles in their properties, and subsequently transferred said titles and the properties' Surplus or Excess Value to the TPT Defendants, purportedly pursuant to the additional provisions of The Local Law. On September 13, 2018, Municipal Defendants recorded a deed in the chain of title of 1600 Nelson Avenue, Bronx, New York, effecting the unconstitutional taking and transfer of the Plaintiffs' Properties to Defendant Neighborhood Restore, with the intent and effect of divesting and depriving Plaintiff 1600 Nelson Avenue HDFC of its primary assets, reducing the

value of each individual named plaintiffs' cooperative share value to zero monetarily and substantively, and converting each individual named plaintiff status from that of a self-sufficient homeowner to that of the TPT Defendants' tenant, and/or an alleged holdover tenant or licensee. Neither Plaintiff 1600 Nelson Avenue HDFC nor any of the Plaintiffs received any compensation for the surplus or equity in their properties, even though the value of Plaintiffs' Properties far exceeded the putative tax liens separately or in the aggregate.

24. None of the Plaintiffs were notified or otherwise learned that Municipal Defendants had seized and otherwise taken their homes and property until approximately September 2018, when agents and/or employees of Defendant Neighborhood Restore knocked on their cooperative-unit doors, informed them that Neighborhood Restore was now their landlord, and sought to change the locks to the building's entrance door. None of the Plaintiffs were provided with any opportunity to claim the surplus or equity value in the properties. Nor has the City or any of the Municipal Defendants tendered a payment to any of the Plaintiffs of the surplus, or the Equity Values, or the long-term homestead value that was unlawfully taken as to each Shareholder Plaintiff (defined *infra*).

25. The wholesale taking of the Title to, Surplus and Equity Value in Plaintiffs' Properties was effected in order for the City to hand over said properties to the City's TPT Program Partners, starting with Defendant Neighborhood Restore. The seizure and unlawful taking of Plaintiffs' Properties were effected, presumably, to develop what the City asserts would be affordable housing with Plaintiffs' Properties, even though Plaintiffs' Properties prior to the *in rem* seizures operated as an affordable-housing, multi-family cooperative development (further described *infra*).

26. Prior to the unlawful seizure and taking by the City, acting through HPD and DOF, on or about September 5, 2018, the Plaintiffs' Properties consisted of the following, among other related values, assets and/or appurtenances:

a) The building located 1600 Nelson Avenue, Bronx, New York 10453 and all appurtenances thereto, a multi-family building constituting no less than 26,650 square feet that is located in the community known as Morris Heights in the Borough of the Bronx, New York (the "Building").

b) The current value and long-term value of the Building, as owned and operated by the non-profit entity known and in existence as 1600 Nelson Avenue Housing Development Fund Corporation ("Plaintiff HDFC" or "1600 Nelson Avenue HDFC"), organized and existing pursuant to Article XI of the New York State Private Housing Finance Law for the protection and benefit of the holders of the shares therein.

c) The 250 shares in Plaintiff HDFC that, in each case, affords those persons and families residing in the Cooperative Homes appurtenant thereto to have long-term, stable, and affordable residency in the HDFC Building (the "HDFC Shares").

d) Twenty six (26) cooperative units that are the homes of the HDFC shareholders or Plaintiff HDFC's tenants in the Building (the "Cooperative Homes").

e) The four (4) commercial units, leases and rental income owned by Plaintiff HDFC for its benefit and security, and for the benefit and security of the holders of HDFC Shares or otherwise (the "HDFC Commercial Assets").

f) Each and every, and all, property rights stemming from Plaintiff HDFC, the HDFC Shares, the Cooperative Homes, and the HDFC Commercial Assets thereto.

27. ***Plaintiffs' Properties*** were seized by Municipal Defendants for purposes of the TPT Program, purportedly pursuant to The Local Law (as codified at the relevant time as Title 11, Chapter 4 of the New York City Administrative Code), even though Plaintiffs' Properties were not was not singly or, in sum, *statutorily distressed*. As such, the seizure was unlawful under New York City's The Local Law, as well as under the United States and New York Constitutions.

28. In addition, at the time that the Municipal Defendants seizure of Plaintiff's properties, the alleged municipal arrears for taxes, water and sewer charges assessed against the subject property were a fraction of the subject property's market value. At the time that the Municipal Defendants seizure of Plaintiff's properties, the value of the properties taken unlawfully by the City and the Municipal Defendants was far in excess of ten million dollars ($10 million). However, to date, neither the City nor any of the Municipal Defendants have paid any of the Plaintiff for the surplus or equity value of the properties that were seized unlawfully, which includes the long-term homestead and inter-generational value in the properties.

29. Further, while Plaintiffs' Properties were seized purportedly because of unpaid taxes, Municipal Defendants collected no taxes upon the seizure thereof. Instead Municipal Defendants transferred title to Plaintiffs' Properties to TPT Defendants, without requiring them to make any payments towards the unpaid taxes or other amount that served as the basis for the purported exercise of Municipal Defendants' putative tax powers.

30. At all times relevant herein, the Municipal Defendants' seizures of Plaintiffs' Properties for the TPT Program was undertaken and orchestrated outside of the notice and other due process requirements and parameters of The Local Law, and in spite of the protection afforded Plaintiffs under the 14th Amendment of the United States Constitution, against the deprivation or loss of their property without due process of law.

31. At all times relevant herein, the Municipal Defendants' and TPT Defendants' outright seizure of Plaintiffs' Properties violate the U.S. Constitution's prohibition against the taking of private property without due process of law.

32. At all times relevant herein, the Municipal Defendants' confiscation of the surplus or equity value in plaintiffs' properties violate the New York State and United States Constitutions' prohibition on the taking of private property for public use without just compensation.

33. At all times relevant herein, the Municipal Defendants' outright seizure of the surplus or equity value in Plaintiffs' Properties violate the United States Constitutions' prohibition against excessively fining the plaintiffs for their tax liability by seizing the surplus or equity value in Plaintiffs' Properties..

34. At all times relevant herein, the Municipal Defendants' seizure of Plaintiffs' Properties and the transfer thereof to the TPT Defendants is wholly disingenuous and unconscionable, as it is the case that Plaintiff HDFC was formed, organized and exists under New York law to secure long-term affordable housing and homeownership for the HDC Shareholders and their families in the first place.

35. At all relevant times, the Municipal Defendants conspired to deprive the plaintiffs of their constitutional rights to equal protection under the law in violation of 42 U.S.C. § 1985(3).

36. At all relevant times, the Municipal Defendants and the TPT Defendants conspired to deprive the plaintiffs of their constitutional rights to equal protection under the law in violation of 42 U.S.C. § 1985(3).

37. At all relevant times, the Municipal Defendants conspired with the TPT Defendants to deprive the plaintiffs of their constitutional rights to equal protection under the law in violation of 42 U.S.C. § 1985(3).

38. At all relevant times, each or all of the Municipal Defendants and the TPT Defendants' acts, conduct, deeds and misdeeds resulted in, and will continue to result in, conversion of Plaintiffs' Properties under New York State law.

39. At all relevant times, each or all of the Municipal Defendants and the TPT Defendants' acts, conduct, deeds and misdeeds resulted in unjust enrichment of the TPT Defendants under New York State law.

40. At all relevant times, each or all of the Municipal Defendants and the TPT Defendants' acts, conduct, deeds and misdeeds constitute deceptive practices in violation of New York State General Business Law§ 349.

41. At all relevant times, the Municipal Defendants and the TPT Defendants, acting separately or together, engaged in civil conspiracy in violation of New York State law.

42. Plaintiffs seek redress for these unconstitutional and discriminatory conduct, illegal seizures and unlawful takings, including damages equal to no less than the amount

that equals the excess value in the properties above the amount of any tax lien that was the basis of the seizure -- *i.e.,* the surplus or value in excess of the actual tax-lien debt owed, as such term is contemplated or applied by the U.S. Supreme Court in *Tyler v. Hennepin County*, 598 U.S. 631 (20230 – the "Surplus" or "Excess Value").

43. Plaintiffs also seek redress for the unconstitutional and discriminatory conduct, illegal seizures and unlawful takings, including damages equal to no less than the amount that constitute the current- and long-term values of their real and personal properties, including any and all inter-generational values, that were unlawfully taken by Defendants (the "Equity Values").

44. Further, certain of the Plaintiffs and tenants at Plaintiffs' Properties are currently facing eviction; plaintiff HDFC is facing additional loss of revenue; individuals and families that have called the Building home for decades are now at risk of displacement as a result of the unlawful and discriminatory takings and seizures complained of herein, without having received any redress or compensation therefor. Plaintiffs thus seek this Court's immediate intervention to protect the rights, privileges and immunities afforded to them under the United States Constitution.

45. Plaintiff HDFC not only also seeks this Court's immediate intervention to protect the rights, privileges and immunities afforded to it under the United States Constitution as to the Title, Surplus and Equity Values in its properties, but also seeks this Court's immediate intervention to protect the rights, privileges and immunities afforded to each of its shareholders afforded thereunder, whether or not named herein as an additional plaintiff. Plaintiff HDFC also seeks this Court's intervention to protect its rights, privileges and immunities with respect to the

certain leases or license arrangements that existed and/or exist with those persons and/or entities that may not be shareholders thereof, but whom or which are otherwise tenants thereof, and residents of the Building on the date hereof.

46. Plaintiff's ask that this Court take judicial notice of the action pending before the United States District Court of the Southern District of New York *captioned McConnell Dorce, et al v. City of New York, et al, Docket No. 1:19-cv-02217-JGK*, under which each of the Plaintiffs may be able to recover for the unlawful taking and loss of the Surplus or Excess, were one or more classes to be certified in that action and each of the Plaintiffs were to be included any such class(e) . In this action, each of the Plaintiffs, and especially Plaintiff HDFC, is seeking redress and relief herein -- pursuant to the 14th Amendment of the United States Constitution and other applicable law -- that are separate and apart from, or in addition to, the relief sought by the plaintiffs in the *Dorce* action. In particular, Plaintiff HDFC is seeking redress as to the loss of the Title to the Building and the Equity Values that Plaintiff HDFC and the Building were organized, developed, operated and managed to deliver to, and for the benefit of, the HDFC Shareholders prior to the seizure and unlawful takings thereof.

47. Plaintiffs seek just compensation of the unlawful taking of their homes and the properties, and such other and further relief as the Court deems just and proper.

## THE PARTIES

**Plaintiff HDFC**

48. At all relevant times, Plaintiff 1600 Nelson Avenue HDFC (*i.e.*, Plaintiff HDFC) is an entity that is organized and existing under the laws of the State of New York, pursuant to Section 573 of Article XI of the New York State Housing Finance Law. Plaintiff

HDFC is a cooperative corporation, for the purpose of housing improvement and long-term affordable homeownership for and families. Plaintiff owned the Building prior to the unlawful taking thereof by the City (*i.e.*, the property located at 1600 Nelson Avenue, Bronx, New York ["1600 Nelson Avenue"]).

49. At all relevant times, Plaintiff HDFC owned the subject cooperative building, located at 1600 Nelson Avenue, Bronx, New York, in the Morris Heights section of the Bronx, New York, since November 20, 1986, when it acquired title from the City. At all relevant times, Plaintiff HDFC's primary asset was the Building prior to the seizure and taking thereof by the City for the TPT Program, which Building it held in trust and operated for the benefit of individuals and families entitled to purchase its capital stock (or shares), and acquire and reside in affordable homes, in the cooperative apartment units that, in each case, is appurtenant to his or her shares in Plaintiff HDFC.

50. The Building consists of 26 residential units, occupied by cooperative homeowners and their families, most of home are of people of color , and are considered earning moderate- to median incomes, and who met the statutory income requirements of the HDFC program. The Building also has four commercial units on the ground floor, with rental revenue that inures to the Plaintiff HDFC for the benefit of the HDFC Shareholders.

51. Each of the additionally named plaintiffs, and those individuals, persons and families on whose behalf they bring this action with Plaintiff HDFC, are shareholders in Plaintiff HDFC (collectively referred to herein as the "Shareholder Plaintiffs").

**The Shareholder Plaintiffs**

52. At all relevant times, Plaintiff ISABEL ADON has been a resident of Bronx County, New York and is the holder of 250 shares in 1600 Nelson Avenue HDFC ("Ms. Adon"). As such, Ms. Adon is a HDFC Shareholder, with the right to reside in the cooperative unit appurtenant to her shares as her homestead, along with her family, and to pass those shares and unit to her heirs; that unit is apartment 5F in the Building, where she continues to reside on the date hereof. Ms. Adon has been a cooperative shareholder in 1600 Nelson Avenue HDFC since May 21, 1987.

53. At all relevant times, Plaintiff WALKIRIA COLON has been a resident of Bronx County, New York and is the holder of 250 shares in 1600 Nelson Avenue HDFC ("Ms. Colon"). As such, Ms. Colon is a HDFC Shareholder, with the right to reside in the cooperative unit appurtenant to her shares as her homestead, along with his family, and to pass those shares and unit to her heirs; that unit is Apartment 3A in the Building, where she continues to reside on the date hereof. Ms. Colon has been a cooperative shareholder in 1600 Nelson Avenue HDFC since August 1, 2006.

54. At all relevant times, Plaintiff RAFAEL COTTO has been a resident of Bronx County, New York and is the holder of 250 shares in 1600 Nelson Avenue HDFC ("Mr. Cotto"). As such, Mr. Cotto is a HDFC Shareholder, with the right to reside in the cooperative unit appurtenant to his shares as his homestead, along with his family, and to pass those shares and unit to his heirs; that unit is Apartment 4E in the Building, where he continues to reside on the date hereof. Mr. Cotto has resided in Apartment 4E since October 7, 1985, and has been a cooperative shareholder in 1600 Nelson Avenue HDFC since the premises converted to cooperative ownership.

55. At all relevant times, Plaintiff ERENIA FERMIN GUZMAN has been a resident of Bronx County, New York, and is the holder of 250 Shares in 1600 Nelson Avenue HDFC ("Ms. Guzman"). As such, Ms. Guzman is a HDFC Shareholder, with the right to reside in the cooperative unit appurtenant to her shares as his homestead, along with her family, and to pass those shares and unit to her heirs; that unit is Apartment 1A in the Building, where she continues to reside on the date hereof. Ms. Guzman has been a cooperative shareholder in 1600 Nelson HDFC since November 3, 2017.

56. At all relevant times, Plaintiff LORANI GARCIA has been a resident of Bronx County, New York, and is the holder of 250 shares in 1600 Nelson Aveue HDFC ("Ms. Garcia"). As such, Ms. Garcia is a HDFC Shareholder, with the right to reside in the cooperative unit appurtenant to her shares as her homestead, along with her family, and to pass those shares and unit to her heirs; that unit is in Apartment 1B in the Building, where she continues to reside on the date hereof. Ms. Garcia has been a cooperative shareholder in 1600 Nelson Avenue HDFC since 2016.

57. At all relevant times, Plaintiff JOSE GONZALEZ has been a resident of Bronx County, New York, and is the holder of 250 shares in 1600 Nelson Avenue HDFC ("Mr. Gonzelez"). As such, Mr. Gonzelez is a HDFC Shareholder, with the right to reside in the cooperative unit appurtenant to his shares as his homestead, along with his family, and to pass those shares and unit to his heirs; that unit is Apartment 5C in the Building, where he continues to reside on the date hereof. Mr. Gonzalez has been a cooperative shareholder in 1600 Nelson Avenue HDFC since April 7, 2010.

58. At all relevant times, Plaintiff JOSE JUNIOR GONZALEZ has been a resident of Bronx County, New York, and is the holder of 250 shares in 1600 Nelson Avenue HDFC ("Mr. Gonzalez, Jr."). Mr. Gonzalez, Jr. is a HDFC Shareholder, with a right to reside in the cooperative unit appurtenant to his shares as his homestead, along with his family, and to pass those shares and unit to his heirs; that unit is Apartment 5E in the Building, where he continues to reside on the date hereof. Mr. Gonzalez, Jr. has been a cooperative shareholder in 1600 Nelson Avenue HDFC since April 7, 2010.

59. At all relevant times, Plaintiff MATILDE GONZALEZ has been a resident of Bronx County, New York, and is the holder of 250 shares in 1600 Nelson Avenue HDFC ("Ms. Gonzalez"). Ms. Gonzalez is a HDFC Shareholder, with a right to reside in the cooperative unit appurtenant to her shares as his homestead, along with her family, and to pass those shares and unit to her heirs; that unit is Apartment 5D in the Building, where she continues to reside on the date hereof. Ms. Gonzalez has been a cooperative shareholder in 1600 Nelson Avenue HDFC since May 21, 1987 date.

60. At all relevant times, Plaintiff ONDINA GUERRERO has been a resident of Bronx County, New York, and is the holder of 250 shares in 1600 Nelson Avenue HDFC ("Ms. Guerrero"). Ms. Guerrero is a HDFC Shareholder, with a right to reside in the cooperative unit appurtenant to her shares as her homestead, along with her family, and to pass those shares and unit to her heirs; that unit is Apartment 2F in the Building, where she continues to reside on the date hereof. Ms. Guerrero has been a cooperative shareholder in 1600 Nelson Avenue HDFC since October 7, 1989.

61. At all relevant times, Plaintiff KENIA MINIER has been a resident of Bronx County, New York, and is the holder of 250 shares in 1600 Nelson Avenue HDFC ("Ms Minier"). Ms. Minier is a HDFC Shareholder, with a right to reside in the cooperative unit appurtenant to her shares as her homestead, along with her family, and to pass those shares and unit to her heirs; that unit is Apartment 3F in the Building. Ms. Minier has been a cooperative shareholder in 1600 Nelson Avenue HDFC since June 15, 1999.

62. At all relevant times, Plaintiff YADIRA POLANCO has been a resident of Bronx County, New York, and is the holder of 250 shares in 1600 Nelson Avenue HDFC ("Ms. Polanco"). Ms. Polanco is a HDFC Shareholder, with a right to reside in the cooperative unit appurtenant to her shares as her homestead, along with her family, and to pass those shares and unit to her heirs; that unit is Apartment 4F in the Building. Ms. Polanco has been a cooperative shareholder in 1600 Nelson Avenue HDFC since May 21, 2002.

63. At all relevant times, Plaintiff GILBERTO RIVERA has been a resident of Bronx County, New York, and is the holder of 250 shares in 1600 Nelson Avenue HDFC ("Mr. Rivera"). Mr. Rivera is a HDFC Shareholder, with a right to reside in the cooperative unit appurtenant to his shares as his homestead, along with his family, and to pass those shares and unit to his heirs; that unit is in Apartment 2B in the Building. Mr. Rivera has been a cooperative shareholder in 1600 Nelson Avenue HDFC since 1988.

64. At all relevant times, Plaintiff DINORA VELASQUEZ has been a resident of Bronx County, New York, and is the holder of 250 shares in 1600 Nelson Avenue HDFC ("Ms. Dinora Velasquez"). Ms. Dinora Velasquez is a HDFC Shareholder, with a right to reside in the cooperative unit appurtenant to her shares as her homestead, along with her family, and to pass

those shares and unit to her heirs; that unit is Apartment 4E in the Building. Ms. Dinora Velasquez has been a cooperative shareholder in 1600 Nelson Avenue HDFC since 1988.

65. At all relevant times, Plaintiff DORIS VELASQUEZ has been a resident of Bronx County, New York, and is the holder of 500 shares in 1600 Nelson Avenue HDFC ("Ms. Doris Velasquez"). Ms. Doris Velasquez is a HDFC Shareholder, with a right to reside in the cooperative unit appurtenant to her shares as her homestead, along with her family, and to pass those shares and unit to her heirs; that unit is Apartment 2DE in the Building . Ms. Doris Velasquez's mother was a cooperative shareholder in 1600 Nelson Avenue HDFC since May 21, 1987. Upon her mother's death, Ms. Doris Velasquez acquired her mother's shares in 1600 Nelson Avenue HDFC.

**Defendants**

66. Municipal Defendants are the City and its agents, including the Commissioner(s) of HPD and the Commissioner(s) of DOF, who have administered and operated the TPT Program by selecting and seizing numerous properties pursuant to The Local Law, or that or who otherwise contribute and participate in the scheme to take Plaintiffs' Properties without just compensation and otherwise illegally or unlawfully.

67. Defendant City is a government and municipal entity existing within the boundaries of the five boroughs of the City of New York, State of New York, and lies within this judicial district.

68. The City is responsible for the illegal and unconstitutional application of the TPT Program to Plaintiffs' Properties.

69. Defendant HPD is a department of the Defendant City that, among other functions, selects properties for the City to seize through the TPT Program and effectuates their seizures and transfers to favored third party real estate developers.

70. Defendant DOF is a department of the Defendant City that selects properties for the City to seize through the TPT Program and effectuates their seizures and transfers to favored third party real estate developers..

71. The TPT Defendants are real estate developers to whom the City conveys the properties it seizes through the TPT Program.

72. On information and belief, the TPT Defendants consult with the Municipal Defendants concerning the selection of properties for inclusion in the TPT Program and target properties generally owned by elderly persons of color.

73. At all relevant times, each of TPT Defendants – Neighborhood Restore and Bronx Pro -- engaged in state action against each of the Plaintiffs and each of the persons on whose behalf they asset claims herein.

74. Defendant Neighborhood Restore is a New York corporation organized and existing under the laws of the State of New York, including but not limited to Article XI of the New York Private Housing Finance Law. Neighborhood Restore operates within the State of New York and within this judicial district, and maintains its primary place of business at 150 Broadway, Suite 2101, New York NY 10038. Neighborhood Restore, through coordination with the City, obtained title to the properties previously owned by Plaintiffs when Municipal Defendants transferred those properties under the TPT Program.

75. Defendant Bronx Pro is a New York corporation organized and existing under the laws of the State of New York. Upon information and belief, Bronx Pro is an affiliate or subsidiary or otherwise controlled or directed by Bronx Pro Preservation, HDFC, a New York corporation organized and existing under the laws of the State of New York, including but not limited to Article XI of the New York Private Housing Finance Law. Bronx Pro operates within the State of New York and within this judicial district, and maintains its primary place of business at 1605 DR. Martin Luther King, Jr. Boulevard, Bronx, New York 10453.

**JURISDICTION AND VENUE**

76. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights and under 42 U.S.C. §§ 1983 *et seq*.

77. Venue is proper in this Court pursuant to 42 U.S.C. §§ 19831 *et seq*., because this judicial district lies in a State in which the unlawful practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b) (1) and (c), because Defendants maintain facilities, conduct business, and reside in this district.

78. The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

## BACKGROUND AND FACTUAL ALLEGATIONS

**New York State's In Rem Grant to Municipalities**

79. Legislation creating the TPT Program was presented to the New York City Council by HPD in 1996 as amendments to the *in rem* tax-lien collection provisions of New York City the Local Law, which provisions were previously promulgated pursuant to New York State's grant of in rem tax collection powers to municipalities across New York State following the Great Depression of the 1930s.

80. These specific *in rem* powers were granted to tax districts across New York State by the New York State Legislature for the collection of tax liens, starting on or about June 3, 1939, under Section 165 of Title 3 of Article VII A of Chapter 692 of the 1939 Laws of New York State (referred to herein as "Tax Law § 165"). Tax Law § 165 was further amended from time to time, including through Chapter 602 of the 1993 Laws of New York State. It is now codified as Section 1120 of the Real Property Tax Law of New York Consolidated Laws ("New York State's In Rem Grant to Municipalities").

81. In rem foreclosure proceedings are considered summary proceedings. New York State's In Rem Grant to Municipalities expressly confines the use of in rem foreclosure procedures to actions for the purpose of collecting "Tax Liens." "Tax Liens" consist of unpaid municipal charges owed to "Tax Districts" that are classified as taxes over the period of time prescribed in state and the Local Law, and at the end of this period these charges, if still unpaid, are classified as liens for collection by the Tax District.

82. Pursuant to New York State's In Rem Grant to Municipalities, starting in 1948, New York City Council enacted *in rem* foreclosure provisions to collect Tax Liens. Those

provisions are now codified in Section 404 of Chapter 4, Title 11 of the Code. These local New York City laws are hereinafter collectively referred to herein as "New York City's In Rem Laws."

**New York City's In Rem Laws**

83. In April 1996, the City (through the then HPD Commissioner Lilliam Barrios-Paoli) sought from and was granted the right by the New York City Council—but not by the New York State Legislature—to broaden and utilize the *in rem* foreclosure powers purportedly granted to it by New York State, in order to "permit the DOF Commissioner to transfer title to a tax foreclosed [distressed] building either to the City or a third party designated by the Commissioner of HPD." In seeking this authority, the City also sought and was granted the authority to broaden the classification of properties that could be taken through in rem proceedings, and also sought to change the purpose for those takings. The City thus proposed, and New York City Council enacted, a broadened statutory definition of "distressed property" under The Local Law:

> "Distressed property." Any parcel of class one or class two real property that is subject to a tax lien or liens with a lien or liens to value ratio, as determined by the commissioner of finance, equal to or greater than fifteen percent and that meets one of the following two criteria:
>
> i. such parcel has an average of five or more hazardous or immediately hazardous violations of record of the housing maintenance code per dwelling unit; or
>
> ii. ii. such parcel is subject to a lien or liens for any expenses incurred by the department of housing preservation and development for the repair or the elimination of any dangerous or unlawful conditions therein, pursuant to section 27-2144 of this code, in an amount equal to or greater than one thousand dollars.

See Code § 11-401.4, *et seq.*

84. Nonetheless, the legislative intent of The Local Law 37 pursuant to which the TPT Program was adopted was set forth in the testimonies of HPD Commissioner Deborah C. Wright and Commissioner Lilliam Barrios-Paoli before the Housing & Buildings Committee of the New York City Council on January 29, 1996, and April 22, 1996, both of which make clear that one of "most critical" parts of The Local Law 37 was to target distressed properties "for effective intervention against abandonment." Section 11-401.1(a), (b), and (c) set forth the procedures to determine which parcels are subject to a tax lien sale, or excluded from such sale, and therefore subject to *in rem* foreclosure. Pursuant to Section 11-401.1(a), HPD is tasked with the duty to determine whether a property is "distressed" and to exclude from the tax lien sale any parcel deemed "distressed". It provides in pertinent part as follows:

> The commissioner of housing preservation and development shall determine, and direct the commissioner of finance, not less than ten days preceding the date of the sale of a tax lien or tax liens, whether any such parcel is a distressed property as defined in subdivision four of section 11-401 of this chapter. Any tax lien on a parcel so determined to be a distressed property shall not be included in such sale.

85. Pursuant to Section 11-401.1(c), properties deemed distressed are subject to in rem foreclosure. Section 11-401(c) provides as follows:

> Any parcel so determined to be a distressed property shall be subject to an in rem foreclosure action, or in the case where the commissioner of finance does not commence such action the commissioner of housing preservation and development shall evaluate such parcel and take such action as he or she deems appropriate under the programs, existing at the time of such evaluation, that are designed to encourage the rehabilitation and preservation of existing housing, and shall monitor or cause to be monitored the status of the property. The commissioner of housing preservation and development, in his or her discretion, shall cause an

> inspection to be conducted on any parcel so determined to be a distressed property. In addition, the commissioner of housing preservation and development shall submit to the council a list of all parcels so determined to be a distressed property within thirty days from the date such parcels are identified as a distressed property.

86. The obligation for HPD to assess whether a property is distressed is a continuing one. A property initially deemed distressed, and included in list of properties subject to in rem foreclosure is required to be excluded from foreclosure once it no longer meets the statutory definition of distressed. Section 11-401(b) provides:

> The commissioner of housing preservation and development may periodically review whether a parcel of class one or class two real property that is subject to subdivision c of this section or subdivision j of section 11-412.19 of this chapter remains a distressed property. If the commissioner determines that the parcel is not a distressed property as defined in subdivision four of section 11-401 of this chapter, then the parcel shall not be subject to such subdivisions.

87. To be subject to "Modified" In Rem Foreclosure under The Local Law, the property must meet the definition of "distressed" Under The Local Law, at NYC Admin. Code 11-401 (4) "Distressed property" is defined as:

> Any parcel of class one or class two real property that is subject to a tax lien or liens with a lien or liens to value ratio, as determined by the commissioner of finance, equal to or greater than fifteen percent and that meets one of the following two criteria:
>
> i. such parcel has an average of five or more hazardous or immediately hazardous violations of record of the housing maintenance code per dwelling unit; or
> ii. such parcel is subject to a lien or liens for any expenses incurred by the department of housing preservation and development for the repair or the elimination of any dangerous or unlawful conditions

> therein, pursuant to section 27-2144 of this code, in an amount equal to or greater than one thousand dollars. See NYC Administrative Code § 11-401.4, et seq.

88. Sections 11-411 and 11-412 (c) of the Code provided, and continue to provide, the City and the Municipal Defendants with a presumption of regularity. Section 11-411 states:

> Presumption of validity. It shall not be necessary for the city to plead or prove the various steps, procedures and notices for the assessment and levy of the taxes, assessments or other lawful charges against the parcels set forth in the list of delinquent taxes and all such taxes, assessments or other lawful charges and the lien thereof shall be presumed to be valid. A defendant alleging any jurisdictional defect or invalidity in such taxes, assessments or other lawful charges or in the foreclosure thereof must particularly specify in his or her answer such jurisdictional defect or invalidity and must affirmatively establish such defense. A judgment of foreclosure granted in any proceeding brought pursuant to this chapter, which contains recitals that any acts were done or proceedings had which were necessary to give the court jurisdiction or power to grant such judgment of foreclosure, shall be presumptive evidence that such acts were duly performed or proceedings duly had, if such judgment of foreclosure shall have been duly entered or filed in the office of the clerk of the county in which the proceeding was pending and wherein such judgment was granted. The provisions of this chapter shall apply to and be valid and effective with respect to all defendants even though one or more of them be infants, incompetents, absentees or non-residents of the state of New York.

89. Section 11-412(c) states:

> Every deed given pursuant to the provisions of this section shall be presumptive evidence that the action and all proceedings therein and all proceedings prior thereto from and including the assessment of the lands affected and all notices required by law were regular and in accordance with all provisions of law relating thereto. After two years from the date of the recording of such deed, the presumption shall be conclusive, unless at the time that this subdivision takes effect the two year period since the recording

> of the deed has expired or less than six months of such period of two years remains unexpired, in which case the presumption shall become conclusive six months after this subdivision takes effect.

90. By 2015, HPD expanded the bases on which it would invoke Local Law No. 37 to take and nullify the title of private-property owners, or the title of HDFC-cooperative owners, utilizing Code 11-404(a), *et seq*. HPD currently invokes Code § 11-404(a) to seize properties that HPD determines are not viable properties to be auctioned to the highest bidder in a regular tax lien, judicial foreclosure proceeding and auction, purportedly on the basis of HPD's unilateral conclusion that the properties are in generally poor condition and thus less marketable at the time of the taking or seizure.

91. This expanded basis for invoking in rem powers to foreclose was asserted by HPD's commissioner Maria Torres-Springer, in affidavits submitted in 2017 in in rem foreclosure proceedings before New York State Supreme Courts, and in support of the City's application to such courts for the award of in rem foreclosure judgments against certain listed properties. This expanded purpose for invoking in rem powers was not granted to the City or HPD under any state or city law.

92. In December 2018, the City asserted an even more expansive view of its powers under the TPT Program, claiming that it was permitted to foreclosure upon properties that are not statutorily distressed if (1) the property has a Tax Lien that makes it subject to foreclosure, and (2) the property is located on the same tax block as another property selected for inclusion in the TPT Program.

93. On information and belief, in recent years, the Municipal Defendants, in consultation and coordination with the TPT Defendants and other similarly situated real estate developers, make a list of properties they want to seize, and target properties owned by elder persons of color who are less likely to have a mortgage on their home. The City then commences in rem proceedings under Code § 11-404(a) against properties targeted for seizure by the City and the TPT Defendants, and seeks default judgments, and judgments of foreclosure, under the color of authority that such Defendants assert is provided by The Local Law. Indeed, the City, through HPD and DOF, made and is making at least arbitrary and capricious, if not outright discriminatory, internal determinations to seize property utilizing the in rem powers purportedly granted to the City by the New York State Legislature.

94. Upon obtaining a judgment of foreclosure and sale under the TPT Program, the City transfers ownership of the properties to certain organizations selected by HPD to participate in the TPT Program, and which are designated by HPD or the City as its "Third Party Program Partners." Code Section 11-412.1(c) provides that, after expiration of a statutory four-month redemption period following foreclosure, DOF is permitted to enter a deed transferring the property to a Third Party Program Partner, which receives title to the property in fee simple absolute. If DOF fails to enter a deed transferring the property within eight months (plus a 45 day tolling period for City Council review) following the award of judgment in foreclosure, then the property is not transferred.

95. The City receives no tax revenue when it uses the TPT Program to foreclose upon and transfer properties. After foreclosure of a property, the City transfers title to a Third Party Program Partner without requiring the Third Party Program Partner to make any payment towards

the Tax Lien or other amount that served as the basis for the City's exercise of its purported powers under Code § 11-401. Instead, the City simply transfers the property in fee simple absolute, which extinguishes any outstanding Tax Liens, and then conveys the property to the Third Party Program Partner for zero dollars.

96. In each in rem action, the Municipal Defendants pursue an award of fee title ownership and absolute possession utilizing Code § 11.404(a) et seq. to effectively extinguish all rights of the owner to the property. When the City uses a summary proceeding to secure an in rem foreclosure judgment in rem, the original property owner also loses all of his or her (or its, in the case of an HDFC) surplus or equity value in the property. This surplus or equity value is the difference between a foreclosure-public-auction-bid amount on (or the market value of) the property and the amount of the foreclosure judgment premised on a valid Tax Lien, if any. There is no method pursuant to which the former owner of the property may claim the Surplus (the amount in excess of the amount claimed as a Tax Lien by the City, as exists with Tax Lien foreclosure sales resulting from judicial foreclosure proceedings). See Code §§ 11-401 – 428.

97. Section 11-404 et seq. of the Code specifies that amounts owed to the City do not provide a basis to use summary in rem foreclosure proceedings until the owed amounts may be designated as Tax Liens. However, even in the instances where amounts owed to the City for taxes do not yet have lien status under the Code, the Municipal Defendants utilize Code § 11-404(a) to seize or otherwise take private property.

98. Subsection 4 of the Definitions section of Code § 11.401 specifies the bases on which DOF and HPD are required to designate a property as a distressed property, before the summary in rem foreclosure proceeding of the Code can be utilized. But Municipal Defendants

have used summary in rem foreclosure proceedings to seize properties even in the instances where properties did not meet the bases or requirements for being designated as "distressed" by DOF and HPD under Code § 11-401.4.

99. Section 11-401.1 of the Code mandates that DOF and HPD follow certain procedures before commencing a summary in rem foreclosure proceedings. See Code 11-401.1, et seq. Municipal Defendants used summary in rem foreclosure proceedings to seize the subject property even though they have failed to demonstrate compliance with these procedures.

100. Moreover, Municipal Defendants used summary in rem foreclosure proceedings to seize the subject property even though the amount of the Tax Lien asserted by the City comprises a small fraction of the value of the property.

101. From on or about 2015, the Municipal Defendants utilized Code § 11-404 et seq. for the purpose of advancing the City's (and its then Mayor's) affordable housing program. The City's affordable housing plan was unveiled by Mayor Bill de Blasio, in May 2014, as New York's "Housing New York Plan" (the "Plan"). On information and belief, the Plan has been spearheaded by Maria Torres-Springer in her capacity then as Commissioner of HPD.

102. Margaret DeVoe, Esq., assistant corporation counsel of the City of New York, averred in an affirmation—dated October 11, 2018 and submitted to the Supreme Court of the State of New York, Bronx County, in the proceedings involving Plaintiffs' Properties—that "the purposes [sic] of the [TPT] Program is to create and maintain affordable housing." In this way, in her affirmation, Ms. DeVoe further described that the City, HPD, and DOF are utilizing the provisions of The Local Law and the *in rem* authority granted to the City by New York State

Legislature for purposes other than tax collection, and to otherwise advance a public purpose of the current Mayor (affordable housing).

103. In papers submitted to the New York State Courts from 2019, the City has asserted that it is not limited to only seizing properties that meet the definition of "distressed property" under Section 11-401.4 of the Code, in order to advance the purported affordable housing plain set by then Mayor de Blasio. However, neither the City nor HPD or DOF sought or obtained authority from the New York Council to broaden or expand the purpose for which it currently utilizes The Local Law. Nor has the City sought authority from the New York State Legislature to expand the New York State In Rem Grant to Municipalities to advance the Plan.

104. Since the enactment of The Local Law 37, the City has completed ten "rounds"—i.e., mass foreclosure proceedings—under the TPT Program. The most recent round ("Round X") ended in 2018. Plaintiffs' properties were seized in Round X, its Title thereto extinguished by in rem judgment, and the Surplus and the Equity Values therein transferred to Defendant Neighborhood Restore by deed dated September 5, 2018.

105. Following the seizure and transfer of the Title to the Building, neither Plaintiff HDFC nor any of the Shareholder Plaintiffs had any means or mechanism to obtain the Surplus or Excess in Plaintiffs' Properties. To date none of the Plaintiff HDFC nor any of the Shareholder Plaintiffs – the (former) property owners –received any compensation for the unlawful taking of their Surplus, the illegal seizure of the Title to the Building, and the wholesale eradication of and deprivation of the Equity Values in Plaintiff HDFC, in the HDFC Shares, in the Building and in their HDFC community of more than three decades.

## CAUSES OF ACTION

## COUNT I
## VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
## 42 U.S.C. § 1983
## TAKING

106. Plaintiffs repeat and reiterate each and every allegation contained in the paragraphs above.

107. In taking the actions described above, Defendants each are "persons" who acted "under color of" state law, and/or conspired with such persons, in violation of 42 U.S.C. §1983.

108. Defendants have subjected, or caused to be subjected, Plaintiffs to the deprivation of their rights, privileges, and immunities secured to them by the United States Constitution and law, specifically the Fifth and Fourteenth Amendments' prohibition of taking property for public use without the payment of just compensation.

109. TPT Defendants acted under color of state law in accepting properties transferred to them under the TPT Program. TPT Defendants and Municipal Defendants' interests are also intimately intertwined. Municipal Defendants rely on TPT Defendants to implement their purported affordable housing plan. Similarly, TPT Defendants rely on Municipal Defendants to provide them with valuable properties free of charge. Moreover, there is a close nexus between the TPT Defendants and Municipal Defendants, including because Municipal Defendants are effectively subsidizing TPT Defendants, and TPT Defendants purport to perform a public function through providing affordable housing.

110. Defendants' actions described herein constitute a policy, custom, and/or

practice of taking property for public use without paying just compensation.

111. Plaintiffs have been proximately and directly injured by the unlawful actions of Defendants alleged herein, in violation of clearly established law.

112. Through the TPT Program, Defendants have taken Plaintiffs' Surplus Equity in their properties and have appropriated this Surplus or Excess Value for public use without the payment of just compensation.

113. Defendants did not pay any compensation to Plaintiffs in exchange for taking their Surplus or Excess Value.

114. Defendants' actions violate the rights of Plaintiffs under the Takings Clause of the Fifth Amendment to the United States Constitution, as applied to the states under the Fourteenth Amendment to the United States Constitution.

115. Plaintiffs have suffered damages in an amount to be proven at trial, including the Surplus or Excess Value of their properties seized pursuant to the TPT Program.

116. Plaintiffs are also entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**COUNT II**

**VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION**
**42 U.S.C. § 1983**
**EQUAL PROTECTION**

117. Plaintiffs repeat and reiterate each and every allegation contained in the paragraphs above.

118. In taking the actions described above, Defendants each are "persons" who acted "under color of" state law, and/or conspired with such persons, in violation of 42 U.S.C.

§1983.

119. Defendants have subjected, or caused to be subjected, Plaintiffs to the deprivation of their rights, privileges, and immunities secured to them by the United States Constitution and law, specifically the Fourteenth Amendment and its guarantee of equal protection under the law.

120. TPT Defendants acted under color of state law in accepting properties transferred to them under the TPT Program. TPT Defendants and Municipal Defendants' interests are also intimately intertwined. Municipal Defendants rely on TPT Defendants to implement their affordable housing plan—in fact, one of the purported reasons for creating the TPT Program was precisely because the City was unable to manage all of the foreclosed upon properties that TPT Defendants are now tasked with managing. Similarly, TPT Defendants rely on Municipal Defendants to provide them with valuable properties free of charge. Moreover, there is a close nexus between the TPT Defendants and Municipal Defendants, including because Municipal Defendants are effectively subsidizing TPT Defendants, and TPT Defendants purport to perform a public function through providing affordable housing.

121. Defendants' actions described herein constitute a policy, custom, and/or practice of taking property in violation of the former property owners' rights to equal protection under the law.

122. Plaintiffs have been proximately and directly injured by the unlawful actions by Defendants alleged herein, in violation of clearly established law.

123. Plaintiffs are members of a suspect class because of their race, specifically African American, Caribbean American, and/or Hispanic American descent.

124. Defendants discriminate against elderly and minority homeowners through their implementation of the TPT Program, taking Surplus or Excess Value from Plaintiffs and other elderly minority homeowner who live in communities of color without any compensation.

125. Defendants select which properties to include in the TPT Program, and they intentionally select properties in communities of color owned by elderly and minority homeowners.

126. Defendants' disparate treatment of otherwise similarly-situated property owners is also arbitrary and capricious, as there is no rational basis for treating property owners who own non-distressed properties differently based on whether the properties happen to be on the same tax lot block as a statutorily distressed property.

127. Defendants' actions violate the rights of Plaintiffs under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

128. Plaintiffs have suffered damages in an amount to be proven at trial, including the Surplus or Excess Value of their properties seized pursuant to the TPT Program.

129. Plaintiffs are also entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT III

## VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION
## 42 U.S.C. § 1983
## DUE PROCESS

130. Plaintiffs repeat and reiterate each and every allegation contained in the paragraphs above.

131. In taking the actions described above, Defendants each are "persons" who

acted "under color of" state law, and/or conspired with such persons, in violation of 42 U.S.C. § 1983.

132. Defendants have subjected, or caused to be subjected, Plaintiffs to the deprivation of their rights, privileges, and immunities secured to them by the United States Constitution and law, specifically the Fourteenth Amendment's guarantee that Plaintiffs shall not be deprived of property without due process of law.

133. TPT Defendants acted under color of state law in accepting properties transferred to them under the TPT Program. TPT Defendants and Municipal Defendants' interests are also intimately intertwined. Municipal Defendants rely on TPT Defendants to implement their affordable housing plan—in fact, one of the purported reasons for creating the TPT Program was precisely because the City was unable to manage all of the foreclosed upon properties that TPT Defendants are now tasked with managing. Similarly, TPT Defendants rely on Municipal Defendants to provide them with valuable properties free of charge. Moreover, there is a close nexus between the TPT Defendants and Municipal Defendants, including because Municipal

134. Defendants are effectively subsidizing TPT Defendants, and TPT Defendants purport to perform a public function through providing affordable housing.

135. Defendants' actions described herein constitute a policy, custom, and/or practice of depriving homeowners of their property without due process of law.

136. Plaintiffs and those similarly situated have been proximately and directly injured by the unlawful action of Defendants alleged herein, in violation of clearly established law.

137. As codified, the notice provisions of the TPT Program violate the Due Process Clause of the and Fourteenth Amendment to the United States Constitution.

138. As implemented, the notice provisions of the TPT Program violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

139. Defendants' actions violate the rights of Plaintiffs and those similarly situated under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

140. Plaintiffs have suffered damages in an amount to be proven at trial, which damages include the Surplus or Excess Value of their properties seized pursuant to the TPT Program.

141. Plaintiffs have also suffered damages in an amount to be proven at trial, which damages include the Equity Values of their properties seized pursuant to the TPT Program.

142. Plaintiffs are also entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**COUNT IV**

**VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION 42 U.S.C. § 1983 EXCESSIVE FINES**

143. Plaintiffs repeat and reiterate each and every allegation contained in the paragraphs above.

144. In taking the actions described above, Defendants each are "persons" who acted "under color of" state law, and/or conspired with such persons, in violation of 42 U.S.C.

§1983. Defendants have subjected, or caused to be subjected, Plaintiffs to the deprivation of their rights, privileges, and immunities secured to them by the United States Constitution and law, specifically the Eighth Amendment, as applied to the states under the Fourteenth Amendment, and its prohibition of excessive fines.

145. TPT Defendants acted under color of state law in accepting properties transferred to them under the TPT Program. TPT Defendants and Municipal Defendants' interests are also intimately intertwined. Municipal Defendants rely on TPT Defendants to implement their affordable housing plan—in fact, one of the purported reasons for creating the TPT Program was precisely because the City was unable to manage all of the foreclosed upon properties that TPT Defendants are now tasked with managing. Similarly, TPT Defendants rely on Municipal Defendants to provide them with valuable properties free of charge. Moreover, there is a close nexus between the TPT Defendants and Municipal Defendants, including because Municipal Defendants are effectively subsidizing TPT Defendants, and TPT Defendants purport to perform a public function through providing affordable housing.

146. Defendants' actions described herein constitute a policy, custom, and/or practice of imposing excessive fines on homeowners who allegedly owe taxes to the City.

147. Plaintiffs and those similarly situated have been proximately and directly injured by the unlawful actions by Defendants alleged herein, in violation of clearly established law.

148. Through the TPT Program, Defendants have imposed excessive fines on Plaintiffs by taking their Surplus or Excess Value based upon purported Tax Liens that constitute a small fraction of the values of the properties Defendants have taken. Defendants' conduct

violates the Excessive Fines Clause in the Eighth Amendment to the United States Constitution.

149. Seizure and retention of equity far in excess of any Tax Liens on the property is punitive in nature because it punishes homeowners for owing Tax Liens.

150. Seizure and retention of the Surplus or Excess Value cannot be tied to any rational purpose because it punishes those inversely to the relative amount of their Tax Liens. Seizure and retention of the Equity Values cannot be tied to any rational purpose because it punishes those inversely to the relative amount of their Tax Liens.

151. These excessive fines violate the Eighth Amendment rights of Plaintiffs and those similarly situated.

152. Plaintiffs and those similarly situated have suffered damages in an amount to be proven at trial, including the Surplus or Excess Value of their properties seized pursuant to the TPT Program.

153. Plaintiffs are also entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT V

## CONSPIRACY TO DEPRIVE PLAINTIFFS OF EQUAL PROTECTION UNDER THE LAW 42 U.S.C. § 1985(3)

154. Plaintiffs repeat and reiterate each and every allegation contained in the paragraphs above

155. Defendants have deprived Plaintiffs of their rights to equal protection under the law, among other rights, because of their race, by targeting them to include their properties in the TPT program and to seize their home equity in excess of any Tax Lien.

156. Defendants engaged in a conspiracy with each other for the purpose of depriving Plaintiffs and those similarly situated of equal protection under the law.

157. Actions taken by each Defendant in furtherance of the conspiracy deprived Plaintiffs of equal protection of the laws.

158. For example, each Defendant took actions to select Plaintiffs' Properties for inclusion in the TPT Program based on their race of the property owners. Each Defendant also took actions to seize the Surplus or Excess Value, and also the Equity Values from Plaintiffs without compensation.

159. Defendants each engaged in other overt acts to further the conspiracy, including the transfer by Municipal Defendants to the TPT Defendants of the Surplus and also the Equity Values in Plaintiffs' Properties.

160. Municipal Defendants have further overtly acted by attempting to conceal the facts of the transfer from Plaintiffs and those similarly situated in furtherance of the agreement by deceiving them into not challenging Defendants' seizures or preventing them from paying off the Tax Liens that constitute the predicate for Defendants' seizures.

161. Defendants each intentionally participated in the agreement to use the TPT Program in furtherance of the plan and purpose to expropriate both the Surplus and the Equity Values, primarily from minority homeowners with properties in communities of color, to deprive Plaintiffs of equal protection of the laws.

162. Defendants' conduct has caused financial harm to Plaintiffs and those similarly situated and is likely to continue to cause financial harm to Plaintiffs.

163. Plaintiffs have been damaged in an amount to be proven at trial, including

the Surplus or Excess Value of their properties seized pursuant to the TPT Program.

164. Plaintiffs have been damaged in an amount to be proven at trial, including the Equity Values of their properties seized pursuant to the TPT Program.

**COUNT VI**

**VIOLATION OF ARTICLE I, SECTION 7 OF THE NEW YORK STATE CONSTITUTION TAKING**

165. Plaintiffs repeat and reiterate each and every allegation contained in the paragraphs above.

166. Article I, Section 7 of the New York State Constitution provides that "[p]rivate property shall not be taken for public use without just compensation."

167. For the same reasons why Defendants' actions violate the Takings Clause of the United States Constitution, their conduct also violates Article I, Section 7 of the New York State Constitution.

168. Plaintiffs have suffered damages in an amount to be proven at trial, which damages include the Surplus or Excess Value of their properties seized pursuant to the TPT Program.

169. Plaintiffs have suffered damages in an amount to be proven at trial, which damages include the Equity Values of their properties seized pursuant to the TPT Program.

## COUNT VII

## VIOLATION OF ARTICLE I, SECTION 11 OF THE NEW YORK STATE CONSTITUTION EQUAL PROTECTION

170. Plaintiffs repeat and reiterate each and every allegation contained in the paragraphs above.

171. Article I, Section 11 of the New York State Constitution provides: "No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his or her civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state."

172. For the same reasons why Defendants' actions violate the Equal Protection Clause of the United States Constitution, their conduct also violates Article I, Section 11 of the New York State Constitution.

173. Plaintiffs and those similarly situated have suffered damages in an amount to be proven at trial, which damages include the Surplus or Excess Value of their properties seized pursuant to the TPT Program.

174. Plaintiffs have suffered damages in an amount to be proven at trial, which damages include the Equity Values of their properties seized pursuant to the TPT Program.

## COUNT VIII

## VIOLATION OF ARTICLE I, SECTION 6 OF THE NEW YORK STATE CONSTITUTION DUE PROCESS

175. Plaintiffs repeat and reiterate each and every allegation contained in the paragraphs above.

176. Article I, Section 6 of the New York State Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law."

177. For the same reasons why Defendants' actions violate the Due Process Clause of the United States Constitution, their conduct also violates Article I, Section 6 of the New York State Constitution.

178. Plaintiffs have suffered damages in an amount to be proven at trial, which damages include the Surplus or Excess Value of their properties seized pursuant to the TPT Program.

179. Plaintiffs have suffered damages in an amount to be proven at trial, which damages include the Equity Values of their properties seized pursuant to the TPT Program.

## COUNT IX

## VIOLATION OF ARTICLE I, SECTION 5 OF THE NEW YORK STATE CONSTITUTION EXCESSIVE FINES

180. Plaintiffs repeat and reiterate each and every allegation contained in the paragraphs above.

181. Article I, Section 5 of the New York State Constitution prohibits the

imposition of excessive fines.

182. For the same reasons why Defendants' actions violate the Excessive Fines Clause of the United States Constitution, their conduct also violates Article I, Section 5 of the New York State Constitution.

183. Plaintiffs and those similarly situated have suffered damages in an amount to be proven at trial, which damages include the Surplus or Excess Value of their properties seized pursuant to the TPT Program.

184. Plaintiffs have suffered damages in an amount to be proven at trial, which damages include the Equity Values of their properties seized pursuant to the TPT Program.

## COUNT X

## CONVERSION

185. Plaintiffs repeat and reiterate each and every allegation contained in the paragraphs above.

186. Plaintiffs, and those similarly situated, held possessory rights or interests in the properties subject to the TPT program and seizure.

187. Defendants intentionally exercised control over Plaintiffs' Properties to the exclusion of the owners' rights or interests held in the subject properties.

188. Defendants exercise of control over Plaintiffs' Properties is in derogation of their rights to the Surplus or Excess Value, and separately their rights to the Equity Values of their homes.

189. Defendants' conduct has caused financial harm to Plaintiffs is likely to

continue to cause financial harm to Plaintiffs and those similarly situated.

190. Plaintiffs have accordingly been damaged in an amount to be proven at trial.

**COUNT XI**

**UNJUST ENRICHMENT**

191. Plaintiffs repeat and reiterate each and every allegation contained in the paragraphs above.

192. Plaintiffs held possessory rights or interests in the Surplus or Excess Value, and in the Equity Values, in the properties subject to the TPT Program seizures.

193. Defendants have been enriched by the Surplus or Excess Value, and also the Equity Values, they took from Plaintiffs

194. Defendants' enrichment was at Plaintiffs' expense, as Plaintiffs were deprived of their Surplus or Excess Value.

195. Defendants' enrichment was at Plaintiffs' expense, as Plaintiffs were deprived of their Equity Value.

196. It is against equity and good conscience to permit Defendants to retain the Surplus or Excess Value.

197. It is against equity and good conscience to permit Defendants to retain the Equity Value.

## COUNT XII

## VIOLATION OF ARTICLE II SECTIONS 10-11 OF THE NEW YORK STATE MUNICIPAL HOME RULE LAW
**(Against the Municipal Defendants)**

198. Plaintiffs repeat and reiterate each and every allegation contained in the paragraphs above, with the same force and effect as if more fully set forth at length herein.

199. As set forth herein, Municipal Defendants' conduct constitutes ultra vires activity exceeding the lawful authority expressly, actually, or implicitly granted to the City by New York State's Legislature.

200. Further, as set forth herein, Municipal Defendants' conduct constitutes ultra vires activity because their conduct failed to adhere to the letter and spirit of the Code when it instituted in rem proceedings against properties that did not meet the statutory definition of "distressed" under the Code, and by otherwise deviating from the requirements of the Code and other applicable law in their execution and administration of the Third Party Transfer Program.

201. Plaintiffs, and those similarly situated, have been damaged as a result of Municipal Defendants' misconduct in an amount to be proven at trial.

## COUNT XIII

## DECEPTIVE PRACTICES VIOLATION OF NY GBL § 349

202. Plaintiffs repeat and reiterate each and every allegation contained in the paragraphs above.

203. Defendants' conduct in administering the TPT Program has constituted a deceptive act and practice in violation of NY GBL § 349.

204. Defendants' conduct in administering the TPT Program has been

consumer oriented because their misleading practices implicate the public interest and constitute repeated, deceptive practices.

205. Defendants' conduct in administering the TPT Program has been misleading in a material way. For example, Defendants have, through deceit, acquired Plaintiffs' Surplus Equity and have not provided Plaintiffs, or those similarly situated, with constitutionally required due process or any mechanism to recover the value of their Surplus Equity.

206. Plaintiffs, and those similarly situated, have suffered injuries as a result of Defendants' deceptive acts. For example, Plaintiffs and those similarly situated have lost their Surplus Equity.

207. Plaintiffs and those similarly situated have suffered damages in an amount to be proven at trial, which damages include the Surplus Equity.

**COUNT XIV**

**FOR DECLARATORY JUDGMENT**

208. Plaintiffs repeat and reiterate each and every allegation contained in the paragraphs above, with the same force and effect as if more fully set forth at length herein.

209. Defendants' policy and practice results in a deprivation of the rights of Plaintiffs under the Fifth Amendment to the Constitution of the United States, the Fifth Amendment to the Constitution of the State of New York, and violates 42 U.S.C. §1983.

210. Defendants' application of the Third Party Transfer Program is unconstitutional and ought to be deemed violative of the rights and liberties of Plaintiffs

211. Plaintiffs are accordingly entitled to a declaratory order pursuant to 28 U.S.C. § 2201 by reason that their rights, as well as those of persons similarly situated, should no

longer be subjected to the unconstitutional actions of Defendants. It is accordingly submitted that a declaratory order be issued:

A. Declaring that the use of the Third Party Transfer Program is inherently in violation of federally protected rights of all citizens who have a right to their real property;

B. Declaring that Defendants can no longer undertake *in rem* foreclosure actions pursuant to the Third Party Transfer Program;

C. Declaring that New York City Administrative Code §11-401 – 412 be deemed unconstitutional under the United States Constitution and be deemed violative of the rights and liberties of all citizens; and

D. Declaring that New York City Administrative Code §11-401 – 412 be deemed unconstitutional under the New York State Constitution and be deemed violative of the rights and liberties of all citizens.

E. Declaring that New York City Administrative Code §11-411 – 412(h) be deemed unconstitutional under the due process clause of the 14th Amendment of the United States Constitution and be deemed violative of the rights and liberties of all citizens.

F. Declaring that each of the Plaintiffs were deprived of their properties without due process of law, and deem such deprivation violative of Plaintiffs' rights, liberties and/or immunities.

## COUNT XV

## FOR INJUNCTIVE RELIEF
(Against TPT Defendants)

212. Plaintiffs repeat and reiterate each and every allegation contained in the paragraphs above, with the same force and effect as if more fully set forth at length herein.

213. By reason of the foregoing, Plaintiffs are entitled to judgment that TPT Defendants are barred from any estate or interest in the Premises which TPT Defendants ever had, claimed or may claim in the Premises or in any party thereof, and any and all liens and encumbrances which ever existed, were claims or may be claimed in favor of TPT Defendants, including the estates and interests claimed or which may be claimed by TPT Defendants by virtue of the Deed from Municipal Defendants, are void ab initio, and invalid as against the interest of Plaintiffs which they now own and hold in the Premises.

214. By reason of the foregoing, Plaintiff requests and is entitled to a Declaratory judgment that the TPT Defendants have no right, title, claim, lien, mortgage or interest in the Premises whatsoever at law or at equity, and that the Plaintiff 1600 Nelson is the owner of the Premises in fee simple absolute, free and clear of any claims which Defendant 2020 True LLC may have to an ownership interest, lien interest, mortgage interest, or any other interest in the Premises.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and those similarly situated demand judgment against Defendants as follows:

A. In the event that any claims brought by any or all of the individual Plaintiffs are not maintainable as direct claims, either as to themselves or as to

any additional HDFC Shareholder, a finding that demand on 1600 Nelson Avenue HDFC would be futile, and that individual Plaintiffs may bring such claims derivatively on behalf of 1600 Nelson Avenue HDFC;

B. Granting Plaintiffs a jury trial on all issues so triable, including to determine liability and damages;

C. An award of all damages which Plaintiffs have sustained as a result of Defendants' conduct, including compensatory damages—e.g., the value of the seized properties less the amount of any outstanding Tax Liens—consequential damages, punitive damages, penalties, and general and special damages caused by Defendants' unlawful practices;

D. An award to Plaintiffs of pre-judgment interest at the highest applicable rate;

E. Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

F. A judgment declaring that the practices complained of herein are unlawful and in violation of the United States Constitution, New York State Constitution, and 42 U.S.C. §1983;

G. A judgment declaring that the Deed from the Municipal Defendants to the TPT Defendants to be void ab initio and vacated;

H. An award to Plaintiffs of post-judgment interest at the highest applicable

rate;

I. An award to Plaintiffs of their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other fees and costs;

J. Granting Plaintiffs such other and further relief as this Court finds just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable, including liability and damages.

Dated: New York, New York
November 1, 2023

**HIMMELSTEIN McCONNELL, GRIBBEN & JOSEPH LLP**
Attorneys for Plaintiffs
15 Maiden Lane – Suite 1700
New York, New York 10038-4003
212.349.3000

By: Jesse Gribben, Esq.