# EXHIBIT G

# REQUEST FOR QUALIFICATIONS

## THIRD PARTY TRANSFER PROGRAM ROUND X
## MULTIFAMILY PRESERVATION LOAN PROGRAM
## &
## RENTAL SPECIAL PROJECTS

March 13, 2017

NYC
Department of
Housing Preservation
& Development

# THIRD PARTY TRANSFER PROGRAM ROUND X
# MULTIFAMILY PRESERVATION LOAN PROGAM
# RENTAL SPECIAL PROJECTS

## REQUEST FOR QUALIFICATIONS

CONTENTS PAGE


| | | PAGE |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | OVERVIEW OF PROGRAMS | 1 |
| | A. TPT Program | 1 |
| | B. MPLP | 2 |
| III. | PROPERTY DESCRIPTIONS | 2 |
| | A. TPT Properties | 2 |
| | B. MPLP Properties | 2 |
| | C. Rental Special Project Properties | 2 |
| IV. | PROGRAM PHASES | 2 |
| | A. Selection of Qualified Developers | 2 |
| | B. Commencement of Negotiations with Qualified Developers | 2 |
| | C. Interim Management and Pre-development | 3 |
| | 1. TPT Properties | 3 |
| | 2. MPLP Properties | 4 |
| | 3. Rental Special Project Properties | 4 |
| | 4. Preparing for Construction Loan Closing | 4 |
| | D. Construction Loan Closing and Rehabilitation | 5 |
| | 1. TPT Program | 5 |
| | 2. MPLP | 5 |
| | 3. Rental Special Projects | 5 |
| | 4. TPT, MPLP and Rental Special Projects | 5 |
| | E. Permanent Conversion | 6 |
| V. | REQUEST FOR QUALIFICATIONS PROCESS | 6 |
| | A. Applications | 6 |
| | B. Review and Evaluation | 7 |
| VI. | MINIMUM QUALIFICATION REQUIREMENTS | 7 |
| | A. Residential Development Experience | 7 |
| | B. Residential Management Experience | 7 |
| | C. Financial Capacity | 8 |
| | D. Municipal Charges | 8 |
| | E. Code Violations | 9 |
| | F. Adverse Findings | 9 |
| VII. | CRITERIA FOR ASSIGNMENT OF PROPERTIES | 9 |
| | A. Management and Development Characteristics of Properties | 9 |
| | B. Capacity | 9 |
| | C. Ability to Work with Government Agencies | 10 |
| | D. Distinguishing Attributes | 10 |
| | E. Updated Property Review | 10 |
| | F. Experience in Securing Financing | 10 |
| | G. Performance in Prior HPD Projects | 10 |
| | H. Cooperative Conversion and For-Sale Experience | 10 |

| | | |
|---|---|---|
| VIII. | APPLICATION REQUIREMENTS | 11 |
| | A. Contents of Application | 11 |
| | B. Submission Requirements | 12 |
| IX. | TERMS AND CONDITIONS | 12 |
| X. | CONFLICTS OF INTEREST | 13 |
| VIII. | EXHIBITS | |

A. Forms
- i. Form 1 Applicant Description & Reference Forms
- ii. Form 2 Residential Development Experience
- iii. Form 3 Residential Management Experience
- iv. Form 4 Active Pipeline
- v. Form 5 Principal's Property Listing
- vi. Form 6 Financial Statements Prepared by a CPA and Assets Statement
- vii. Form 7 Bank References (Applicant Provide)
- viii. Form 8 Applicant's Letter
- ix. Form 9 RFQ Application Checklist

B. Reference Documents
- i. Terms of the Management and Predevelopment Agreement
- ii. Terms of the Net Lease Agreement
- iii. Post-Selection Submission Requirements

**THIRD PARTY TRANSFER PROGRAM ROUND X**
**MULTIFAMILY PRESERVATION LOAN PROGRAM**
**RENTAL SPECIAL PROJECTS**

## REQUEST FOR QUALIFICATIONS

## I. INTRODUCTION

This Request for Qualifications (**"RFQ"**) is being issued by the New York City Department of Housing Preservation and Development (**"HPD"**) to determine the eligibility of experienced not-for-profit and for-profit organizations (**"Applicants"**) to participate in the rehabilitation and management of multifamily residential properties through HPD's Third Party Transfer program (**"TPT"**), Multifamily Preservation Loan Program (**"MPLP"**) and of other projects described below (**"Rental Special Projects"**). TPT, MPLP and Rental Special Projects are sometimes individually or collectively referred to as the **"Programs"**, and properties in TPT, MPLP and Rental Special Projects are sometimes referred to respectively as **"TPT Properties"**, **"MPLP Properties"** or **"Rental Special Project Properties"**, or collectively as the **"Properties"**. Through TPT and MPLP, HPD conveys multifamily residential properties for redevelopment as affordable rental buildings. HPD may dispose of an individual building for a single-building project (**"Project"**) or groups of buildings for multiple building projects (**"Projects" or "Cluster"**). This RFQ only determines the eligibility of qualified Applicants to rehabilitate multifamily rental properties. Applicants interested in Third Party Transfer – Tenant Petition Cooperatives are directed to apply to the Affordable Neighborhood Cooperative Program, Third Party Transfer Program – Tenant Petition Cooperatives, and Special Projects Request For Qualifications issued on October 29, 2015 which continues to accept applicants on a rolling basis.

When grouping the Properties into Projects, HPD considers attributes of the Properties such as geographic proximity, number of dwelling units, occupancy status, nature of required rehabilitation (substantial, moderate), nature of management of the Properties (scale of buildings, special needs tenants) and other characteristics HPD deems appropriate.

HPD will review Applicants' responses to determine which Applicants qualify to participate in the Programs. Qualified applicants will be included on a list of Qualified Developers for the Programs. (**"Qualified Developers"**). Please see Section VII, "Criteria for Assignment of Properties", for further information. HPD may also draw from the list of Qualified Developers for participation in other HPD programs. **Not all Qualified Developers will be selected to participate in the Programs.**

## II. OVERVIEW OF PROGRAMS

### *A. TPT Program*

The City of New York (**"City"**) enacted legislation to improve real estate tax collection while effectively preserving and maintaining the City's residential housing stock. The legislation allows the City, pursuant to the judgment of foreclosure, to transfer title of tax delinquent residential properties from the delinquent owners to Neighborhood Restore Housing Development Fund Corporation (**"Neighborhood Restore"**), a not-for-profit organization that works in collaboration with HPD in overseeing the management and rehabilitation planning of TPT Properties.

The TPT program ensures that such TPT Properties do not deteriorate further and are improved under new responsible ownership. The effort preserves and expands the City's stock of decent and affordable housing, forestalls abandonment, and stabilizes neighborhoods. The Qualified Developer will acquire the Properties from Neighborhood Restore at the time of construction loan closing.

*B. MPLP*

Under MPLP, HPD conveys and finances distressed City-owned properties to facilitate the rehabilitation and preservation as affordable housing. HPD selects Qualified Developers to purchase and rehabilitate distressed vacant and occupied multifamily properties in order to improve and preserve housing affordable to low and moderate income households. All MPLP Properties were subject to an *in rem* foreclosure action. The Qualified Developer will acquire the property from the City at the time of construction closing.

## III. PROPERTY DESCRIPTIONS

A. ***TPT Properties*** may be vacant, partially or fully occupied buildings. TPT Properties vary in size. Physical conditions in the buildings are not uniform. Most buildings will require moderate to substantial rehabilitation.

B. ***MPLP Properties*** may be vacant, partially or fully occupied buildings. MPLP Properties vary in size. Physical conditions in the buildings are not uniform. Most buildings will require moderate to substantial rehabilitation.

C. ***Rental Special Project Properties*** may be vacant, partially or fully occupied buildings. Rental Special Project Properties vary in size. Physical conditions in the buildings are not uniform. Most buildings will require moderate to substantial rehabilitation.

## IV. PROGRAM PHASES

Programs are generally organized into five phases: A) Selection of Qualified Developers; B) Commencement of Negotiations With Qualified Developers; C) Interim Management and Predevelopment; D) Construction Loan Closing and Rehabilitation; and E) Permanent Conversion.

### A. Selection of Qualified Developers

HPD will review the responses to this RFQ and identify Qualified Developers. HPD seeks to include both not-for-profit and for-profit organizations that are either neighborhood-based or operate citywide. Qualified Developers must have the residential development experience, financial resources and organizational capacity required to manage, rehabilitate, and market multifamily properties, as well as convert construction financing to permanent financing in a timely manner. Applicants must have demonstrated experience working with occupied buildings.

Inclusion of an Applicant on the list of Qualified Developers under this RFQ means only that HPD has determined that such Applicant meets the requirements set forth in this RFQ to be a Qualified Developer. **Inclusion of an Applicant on the list of Qualified Developers under this RFQ does not guarantee that the Applicant will be selected to participate in the Programs.**

### B. Commencement of Negotiations with Qualified Developers

If HPD elects to commence negotiations with a Qualified Developer with respect to a particular Project, HPD will send a letter to the Qualified Developer regarding the Commencement of Negotiations ("**Negotiation Letter**") which will set forth certain information regarding the Project, Program and procedures that will form the basis of such negotiation. The sending of the Negotiation Letter by HPD signifies, for the purpose of this RFQ only, that HPD is considering matching a particular Project to the Qualified Developer, and will not create any equitable or legal rights whatsoever on the Qualified Developer's part with respect to the Project or the proposed transfer or development. Exhibit A contains an Applicant's Letter that describes this process (Form 8). Each application must include this letter signed by a principal of the Applicant.

## C. Interim Management and Predevelopment

### 1. TPT Properties

The City will transfer TPT Properties to Neighborhood Restore which will retain ownership until construction loan closing, at which time it will transfer title to the property to the Qualified Developer. On or before the date that HPD transfers title of a TPT Property to Neighborhood Restore, each Qualified Developer will enter into a Management and Predevelopment Agreement ("**MPA**") with Neighborhood Restore which sets forth the property management and predevelopment responsibilities the Qualified Developer will assume prior to construction loan closing during Neighborhood Restore's ownership.

The MPA will require that each Qualified Developer for the TPT program must adhere to specific requirements while managing TPT Properties on behalf of Neighborhood Restore. Qualified Developer obligations under the MPA shall include without limitation:

- Inspect TPT Properties including all residential units to identify conditions that need immediate repairs. Qualified Developers will prepare a Building Stabilization Plan ("**Building Stabilization Plan**") to address any required emergency repairs that includes cost estimates for the repairs. The Building Stabilization Plan is due within 30 days after transfer to Neighborhood Restore for review and approval. All approved repairs must be made within 90 days of the date of transfer to Neighborhood Restore.
- Provide an occupancy report within 30 days after transfer to Neighborhood Restore detailing existing tenancies, presence of children and rents per unit.
- The Qualified Developer must obtain copies of all existing leases, execute renewal and replacement leases on an as-needed basis. Tenants who do not currently have a lease but can establish their tenancy through other means will receive a lease for the duration of the TPT Interim Management Period.
- The Qualified Developer must register all the units with the NYS Division of Housing and Community Renewal ("**NYS DHCR**") in accordance with the Rent Stabilization Code if they are not already.
- Obtain income information from tenants.
- Respond, record, and attend to all tenant complaints and requests with respect to services and facilities.
- Notify Neighborhood Restore immediately of any loss or damage to any portion of TPT Properties or any accident or injury at TPT Properties.
- Maintain appropriate legal actions and report to Neighborhood Restore on a monthly basis the existence and status of all legal actions.
- Provide Monthly Operating Report ("**MOR**") to Neighborhood Restore detailing the income collected and expenses incurred for the TPT Properties (with appropriate back-up documentation), due no later than the 20th of the month following the month in which the expenses were incurred.

Neighborhood Restore will provide guidance in the preparation and/or submission of the above items. Limited funds from Neighborhood Restore may be available to address operating deficits prior to construction loan closing, but the selected Qualified Developers for the TPT Program must demonstrate that they have working capital sufficient to cover at least three months of operating deficits. All selected Qualified Developers for the TPT Program, both not-for-profit and for-profit organizations, will be required, upon the City's transfer of TPT Properties to Neighborhood Restore, to initially fund the Project or Cluster's operating account with $5,000 for the first building

plus $1,000 for each additional building in the Cluster, which will be reimbursed by Neighborhood Restore at or before Neighborhood Restore's transfer of the property to the Qualified Developer. In addition to pre-funding the Cluster operating account as described above, the Qualified Developers must have sufficient liquid assets to meet the minimum requirements of this RFQ, as outlined in Section VI C.

Prior to construction loan closing, the TPT Properties (with rents that have already been registered with the NYS DHCR) will be subject to rent stabilized increases.

**2. MPLP Properties**

Properties will remain under HPD ownership until construction loan closing, at which time HPD will transfer title to the Qualified Developer. HPD will execute a Net Lease (**"Net Lease"**) with the Qualified Developer for occupied buildings at the time the developer is matched with a Project or Cluster. Under the Net Lease, the Qualified Developer will manage the Properties throughout the pre-development period.

The Net Lease will specify requirements for managing MPLP Properties. Qualified Developer requirements may include, but are not limited to, the following:

- Inspect the property and prepare a rehabilitation scope of work.
- Compile a report detailing household sizes and incomes of tenants, children on premises, rents, and vacancies.
- Respond, record, and attend to all tenant complaints and requests with respect to services and facilities.
- Notify HPD immediately of any loss or damage to any portion of the property or any accident or injury at the property.
- Take appropriate legal actions and report to HPD on a monthly basis the existence and status of all legal actions.
- Provide financial reports to HPD detailing the income collected and expenses incurred for the property (with appropriate back-up documentation), due no later than the 15th of the month following the month in which the expenses were incurred.
- Register all multiple dwellings with the Division of Code Enforcement at HPD.

**3. Rental Special Project Properties**

HPD will Net Lease occupied City-owned rental properties directly to the Qualified Developers for Rental Special Projects prior to conveyance.

**4. Preparing for Construction Loan Closing**

Qualified Developers are required to prepare for closing on a construction loan by completing the following:

i. Prepare a scope of work, schematic plans, cost estimates and construction documents for HPD approval;
ii. For occupied buildings, prepare a relocation plan and complete relocation of tenants;
iii. Obtain commitments that are acceptable to HPD from construction lenders and, if applicable, permanent lenders; and
iv. Comply with all closing requirements of construction lenders and HPD.

HPD expects to make construction and permanent funding available. Term Sheets can be found on the HPD website. HPD will require all Qualified Developers to meet applicable Program guidelines including requiring marketing plans where applicable as

well as HPD approval of scopes of work and plans. In addition, projects may be eligible for tax incentive programs.

Applicants will find HPD Design Guidelines at http://www1.nyc.gov/site/hpd/developers/guide-to-building-land-development-services.page

## D. Construction Loan Closing and Rehabilitation

### 1. TPT Program

After successful compliance with the program requirements during the TPT Interim Management Period (**"Interim Management Period"**), Neighborhood Restore will convey the TPT Properties to the Qualified Developers concurrent with the Qualified Developer's construction loan closing. Once title has been transferred to the Qualified Developer, rehabilitation and management of the TPT Properties must commence in accordance with the terms and schedules agreed to by HPD.

### 2. MPLP

The MPLP Development Period (**"Development Period"**) encompasses the rehabilitation period. Concurrent with the Qualified Developer's construction loan closing, HPD will transfer title of MPLP Properties to the Qualified Developer. Once title has been transferred to the Qualified Developer, rehabilitation and management of the MPLP Properties must commence in accordance with the terms and schedules agreed to by HPD. MPLP Properties are required to be registered with NYS HCR within 10 business dates of construction closing.

### 3. Rental Special Projects

Qualified Developers for Rental Special Projects are subject to the following requirements upon conveyance of the Rental Special Projects Properties:

- Register Rental Special Projects Properties with NYS DHCR and comply with all Rent Stabilization requirements;
- Register all multiple dwellings with the Division of Code Enforcement at HPD; and
- Once title has been transferred to the Qualified Developer, rehabilitation and management of the Rental Special Project Properties must commence in accordance with the terms and schedules agreed to by HPD.

### 4. TPT, MPLP and Rental Special Projects

Qualified Developers for TPT, MPLP, or Rental Special Projects will be required to comply with some or all of the following:

- Distribute to Tenants annual notices as required by Local Law 1 of 2004.
- Tenants residing in the Properties at the time of transfer will be offered their original unit, unless otherwise notified by the Qualified Developer that due to the rehabilitation plans, their original unit cannot be offered. In this case, tenants will be offered a unit that meets their household size.
- Where applicable Qualified Developers must market and rent units in accordance with income guidelines established by HPD pursuant to HPD marketing guidelines and project regulatory agreements.
- HPD may impose additional restrictions upon the use of the Properties and may require a Qualified Developer to agree to comply with such restrictions.
- An HPD Regulatory Agreement will be executed at construction loan closing.

### E. PERMANENT CONVERSION

Once the rehabilitation of a Project is complete, the Qualified Developer will manage the return of the tenants to the Project and facilitate the conversion to permanent financing. Qualified Developer may begin the loan conversion process when Project rehabilitation has reached 95% completion **("Substantial Completion")**.

During the loan conversion process the Qualified Developer will be required to provide a number of documents not limited to the following:

- Documentation of Substantial Completion
- Temporary or final Certificate of Occupancy or Directive 14
- Certified Rent Roll
- Proof of clearance of violations
- Copy of recent DHCR registration
- Post construction Architect's Statement of Compliance with Fair Housing and Section 504 form
- Copy of last full year's income and expense schedule
- Proof of compliance with other permanent lender requirements, if any.
- Qualified Developer must work towards permanent loan closing in an efficient manner and must communicate any challenges with HPD as they arise.

## V. REQUEST FOR QUALIFICATIONS PROCESS

### A. Applications

Developer Applications received by April 24, 2017, will be considered by HPD for inclusion on a Qualified Applicant list ("**List**"). It is anticipated that the List will be updated annually. Each application must include all information requested pursuant to Section VI of this RFQ for all principals and/or officers of the Applicant. **All Applicants, including those qualified through any previous HPD RFQ, must submit a full response to this RFQ and meet the minimum criteria set forth in this RFQ.** Eligible Applicants may be for-profit entities, joint ventures, sole proprietors, or not-for-profit organizations.

Upon review, HPD, at its discretion, may notify an Applicant that additional information or clarification is necessary. Such additional information may include the completion of disclosure statements concerning the Applicant, its related companies, and its principals and officers. An Applicant's submission of qualifications will be deemed to be permission for HPD to make such inquiries concerning the Applicant as HPD deems necessary, including inspecting properties within the Applicant's portfolio and interviewing current tenants in such properties.

In order to remain qualified, Applicants must continue to meet the minimum criteria set forth in this RFQ.

### B. Review and Evaluation

HPD will determine if Applicants meet minimum qualification requirements based on the criteria specified in Section VI below. HPD may disapprove the inclusion of any or all members of the Applicant's team and may require Applicants to substitute other individuals or firms. HPD will notify all Applicants as to whether or not they meet the eligibility requirements for Qualified Developers. Applicants who are deemed Qualified Developers pursuant to this RFQ may also be considered for properties to be offered in the future of the Programs at HPD's discretion. **However, inclusion on the List of Qualified Developers does not ensure that an Applicant will ever be selected to receive a Property.** For a discussion of assignments of Properties to Qualified Developers, please see Section VII below.

## VI. MINIMUM QUALIFICATION REQUIREMENTS

Applicants must be qualified in each of the following Qualification Criteria in order to be considered Qualified Developers for possible participation in the Program. **All applicants, including those qualified through a previous RFQ, must submit a full response to this RFQ and meet the minimum criteria set forth in this RFQ. Any incomplete application may be a basis for disqualification.**

### A. Residential Development Experience

Each Applicant will be evaluated on the extent of its experience with the rehabilitation of properties similar to the Properties that are involved in the Programs. Such consideration may include but not be limited to assessing the quality, efficiency, and timeliness of completed rehabilitation work gauging the ability of the Applicant to temporarily relocate tenants during construction, contacting references and reviewing other information available to HPD.

To be qualified under this criterion, an Applicant must demonstrate the capacity to effectively rehabilitate properties on a scale commensurate with TPT, MPLP, and Rental Special Projects. An Applicant's residential development experience statement as listed on Form 2 must include at least two substantially rehabilitated properties completed in the most recent ten years (2006- 2016), totaling at least twenty units and including at least three major systems replacements. HPD may consider an Applicant's experience in buildings totaling less than twenty units when qualifying Applicants for Properties that are less than twenty units. For for-profit Applicants, only the experience of the principal members with ownership interests in the Applicant entity, shall apply towards qualification. Specifically, the experience of general contractors who have no ownership interests in the Applicant shall not count towards meeting the qualification criteria. For not-for-profit Applicants, the experience of top-level management of the Applicant entity may be considered towards qualification.

Applicants applying as joint-venture partnerships (for example, developers applying with their general contractors) must form their joint venturing entities prior to submission of their applications in response to this RFQ. HPD reserves the right to disqualify Applicants due to changes made to the composition of the Applicant entity after the date of the application or after designated as a Qualified Developer.

It is the responsibility of the Applicant to select a proficient and professional development team for each project. It is recommended that Applicants select architects, general contractors, property managers and attorneys who have experience working with the City of New York and occupied housing.

### B. Residential Management Experience

HPD may consider the extent and quality of the Applicant's management of residential properties by conducting a review of the following in regard to the Applicant's portfolio: the physical condition of the properties; the number of Housing Maintenance Code violations; the payment record for City real estate taxes, water and sewer charges and any other municipal charges on the Applicant's

properties; the Applicant's track record and current capacity to provide effective management services in a timely and responsive manner including the handling of tenant complaints; ability to quickly stabilize distressed properties; the ability to provide social and community services or referrals for special needs tenants; and the Applicant's ability to supervise building employees and maintain appropriate records. HPD may conduct site visits to properties owned and managed by the Applicant, and HPD may check references, conduct office visits and tenant interviews.

To be qualified under this criterion, an Applicant must demonstrate the capacity to manage property, either directly or through a managing agent identified in the application. The Applicant must demonstrate the ability to manage properties in a professional manner to meet the requirements for this RFQ. Applicant's management portfolio, as listed on Form 3, must show that the Applicant has managed a minimum of fifty units continuously in New York City during the most recent five year period (2011-2016). Applicants must identify in Form 3 all of the managing agents, whether outside or internal managers, they will use to manage the Properties. HPD reserves the right to request or disapprove changes of the managing agents. The residential management portion of this RFQ must be completed by the proposed managing agent.

HPD will also consider the Applicant's past performance during periods of interim ownership in the TPT program and other HPD development programs.

C. <u>Financial Capacity</u>

HPD will consider the Applicant's ability to obtain private financing and to provide equity for rehabilitation/predevelopment of the Properties. HPD will evaluate the Applicant's credit history, financial records, lender, and other references in order to assess the Applicants capacity to secure construction financing (construction and permanent financing), and meet the construction lender's equity requirements.

To be qualified under this criterion an Applicant must demonstrate its financial capacity to fund or finance predevelopment work, anticipated equity requirements for construction loans, and the working capital needs of a Cluster during the Interim Management Period, if applicable. All Applicants will be required to submit at a minimum, compiled financial statements, assured by a Certified Public Accountant **("CPA")** for the most recent year. Financial statements must include disclosures from a CPA, cash flow statement, balance sheet statement, and income statement. Applicant must provide a consolidated financial statement if the applicant owns one or more subsidiaries. For-profit Applicants' financial capacity should indicate liquid assets, namely cash and marketable securities, of at least $350,000. Not-for-profit Applicants' financial capacity should indicate liquid assets of at least $50,000. For-profit Applicants shall also submit a completed Assets Statement for at least one principal. Please note that the equity requirement for specific Clusters may exceed these minimums. In addition, the inability to secure construction financing from an appropriate lender will be grounds for de-designation and selection of a new Qualified Developer.

For TPT Properties, it is anticipated that Qualified Developers will have to cover at least three months of operating expenses after submission to Neighborhood Restore for reimbursement through the MORs. Qualified Developers will be required to initially fund the Cluster's operating account with $5,000 plus $1,000 for each additional building in the Cluster, which funding will be reimbursed by Neighborhood Restore, at or before the end of the applicable Interim Management Period. In addition to pre-funding the Cluster operating account as described above, the Qualified Developers must have sufficient liquid assets to meet the minimum requirements of this RFQ. HPD will require updated financial information upon designation of each Qualified Developer for each Cluster.

D. <u>Municipal Charges</u>

All buildings managed or owned by the Applicant must be current with all New York City real estate taxes and water and sewer charges or have entered into and be in compliance with payment agreements for all outstanding taxes and charges.

### E. Code Violations

Applicants may be rejected at any time during the evaluation process if findings of a substantial record of serious Building Code or Housing Maintenance Code violations with regard to properties owned or managed by the Applicant or any of its principals or related entities, and such findings have not been adequately addressed, as determined by HPD.

### F. Adverse Findings

Applicants may be rejected at any time during the evaluation process if adverse findings are made with regard to the Applicant or any of its principals or related entities, including, but not limited to, adverse findings with respect to any of the following:

- Conviction, administrative violation, judicial or administrative finding, pending judicial or administrative case, or pending litigation for harassment, arson, fraud, bribery, grand larceny, any felony or crime of dishonesty, or noncompliance with fair housing or anti-discrimination laws, any applicable codes or ordinances, labor laws, or construction laws.
- Defaults or poor performance under any government-assisted program;
- Suspension, debarment, or non-responsibility determination by any governmental entity;
- Mortgage arrears, default, or foreclosure proceedings;
- Tax arrears, tax foreclosure or enforcement proceedings, or sale of tax liens;
- Voluntary or involuntary bankruptcy proceeding;
- Negative findings by the Department of Investigation;
- A negative history with Neighborhood Restore or its affiliates;
- Non-compliance with Conditions, Terms and Limitations, as stated in the RFP (see Section XI); or
- Findings regarding Conflicts of Interest, as stated in this RFP (see Section XI).

## VII. CRITERIA FOR ASSIGNMENT OF PROPERTIES

Once Applicants are deemed Qualified Developers pursuant to the RFQ, a small number will be selected for properties through the Program. The following factors will be considered in the assignment of Properties.

### A. Management and Development Characteristics of Properties

Specific Properties or Clusters, by the nature of the buildings and occupants, may require particular skills and expertise on the part of Qualified Developers for successful management and rehabilitation. These include, but are not limited to, the ability to: quickly stabilize distressed properties; correct and certify any code violations; pursue legal action against unlawful occupants; carry out rehabilitation with tenants in place; provide temporary relocation resources for tenants during the period of construction; market vacant units in buildings; manage properties with special needs tenants; provide social and community service linkages; comply with HOME regulations; and collect rent subsidies such as Senior Citizens Rent Increase Exemption **("SCRIE")**, Disability Rent Increase Exemption **("DRIE")** and Section 8. As such, the appropriateness of Qualified Developers for specific Properties or Clusters will include an assessment of expertise in these and/or other areas as determined to be necessary by HPD.

### B. Capacity

The Qualified Developer's current workload and other pending project obligations will be considered in assessing its capacity to carry out the management and rehabilitation and/or development of specific Properties.

C. <u>Ability to Work with Government Agencies</u>

HPD may evaluate the Qualified Developer's demonstrated ability to work successfully with public agencies, meet schedules and comply with special reporting requirements imposed by government funding sources.

D. <u>Distinguishing Attributes</u>

HPD may take into account any distinguishing attributes of the Qualified Developer that further HPD's policy goals and initiatives and/or serve local housing objectives.

E. <u>Updated Property Review</u>

Prior to selecting a Qualified Developer for a Property or Cluster, HPD will conduct an updated review of code violations, arrears in real estate taxes, water and sewer charges, any outstanding housing litigation and up to date building registrations. Should there be any adverse findings, HPD will require that all issues be resolved or that a plan, satisfactory to HPD, be established to address the items. The plan should be implemented prior to the transfer of TPT, MPLP Properties and/or Rental Special Projects and the commencement of the applicable Interim Management Period.

F. <u>Neighborhood Preservation Consultant Program</u>

Not-for-profit organizations that have or had a contract with HPD to act as Neighborhood Preservation Consultants within the five years prior to the scheduled transfer of the property to Neighborhood Restore are not eligible to acquire Properties that were covered by such contract.

G. <u>Experience in Securing Financing</u>

HPD will take into consideration whether a Qualified Developer has demonstrated experience in securing construction financing, in assessing its capacity to carry out the predevelopment process and close on construction financing in a timely manner.

H. <u>Performance in Prior HPD Projects</u>

HPD will take into consideration past performance on HPD projects when selecting Qualified Developers for Properties. Such factors will include Applicants responsiveness to, and level of compliance with timeframes for establishing and completing building stabilization, submission of complete and timely monthly operating reports, and capacity for overall management and oversight of buildings. In addition, failure to close rehabilitation financing within the established timeframe as determined by HPD and the project lender will negatively impact consideration for participation in future development projects.

## VIII. APPLICATION REQUIREMENTS

All Applicants must submit all forms as described below. Submission of an incomplete application may be grounds for disqualification of the Applicant.

**PLEASE NOTE THAT EACH COPY OF THE APPLICANT'S QUALIFICATIONS MUST CONTAIN THE FOLLOWING FORMS AND SUPPORTING DOCUMENTATION:**

### A. Contents of Application

**Form 1 - Applicant Description & Reference Forms**
A completed Description Form 1. All Applicants must complete Part 1 of that Form; not-for-profit Applicants must also complete Part 2.

**Form 2 - Residential Development Experience**
A completed Residential Development Experience Form, Form 2 for the principal(s) of the Applicant and, if applicable, the general contractor responsible for rehabilitation. List all projects that have been completed within the last ten years or that are in construction, in pre-development or have otherwise been committed.

**Form 3 - Residential Management Experience**
A completed Residential Management Experience Form, Form 3 for the principal or managing agent proposed for the management of the Properties. List all properties that have been managed in the last five years. If any other principal of the Applicant has other management experience that the Applicant wishes to be considered, a separate form should be completed for that principal.

**Form 4 - Active Pipeline**
A completed Active Pipeline Form; Form 4 for the principal(s) of the Applicant and, if applicable, the general contractor responsible for rehabilitation. List all projects that are in process/in construction and in conversion/construction completion. *Applicants need to list all projects including those that are NOT receiving assistance from HPD and/or affiliated through HPD.*

**Form 5 - Principal's Property Listing**
A completed Principal's Property Listing, Form 5, for each principal of the Applicant and for any affiliated or subsidiary entities listing all Properties owned within the last three years either directly by the principal or by an organization in which the principal was a corporate officer or general partner or held more than a 10 (%) percent interest.

**Form 6 - Financial Statements (Compiled, Reviewed or Audited) Prepared by a CPA and Assets Statement**
Applicants are required to provide the year to date operating statement and the most current CPA prepared Financial Statements.
For-profit Applicants shall also submit a completed Assets Statement, Form 6, for at least one principal.

**Form 7 - Bank References**
A reference letter(s) from a bank(s) together with a list of all outstanding loans and bank officer contacts.

**Form 8 - Applicant's Letter**
An Applicant's Letter, Form 8, signed by a principal of the Applicant.

**Form 9 - RFQ Application Checklist**
An Application Checklist, Form 9, signed and certified by a principal of the Applicant.

B. <u>Submission Requirements</u>

**One fastened original, one fastened copy, and one electronic copy on a USB flash drive** of the Applicant's qualifications, including all documentation requested as described above, must be submitted in response to this RFQ. The copy may be fastened with either staples, prong paper fasteners, or organized in a three ring binder. The copy of the qualifications must be clearly labeled with tabs as indicated above. The tabs should run down the right hand side of the submission. The copies must be clearly labeled with the name of the Applicant on the cover.

All applications become the property of HPD. HPD reserves the right to ask for additional information. Submissions will be promptly reviewed by HPD. Interviews, site visits and/or additional information may be requested. For inclusion on the Qualified Developer List, a package of an original signed application along with the saved documents on a USB flash drive must be delivered **by hand** no later than April 24, 2017 at 4:00 PM to:

**Division of Property Disposition and Finance**
**NYC Housing Preservation and Development**
**100 Gold Street, Room 9-V**
**New York, NY 10038**

Each application requires a non-refundable fee of one hundred dollars ($100.00) in the form of a certified check, cashier's check or money order payable to "**NYC Department of Housing Preservation and Development**". No cash or personal checks will be accepted. For not-for-profit Applicants, the fee is reduced to fifty dollars ($50.00).

IX. <u>TERMS AND CONDITIONS</u>

This RFQ is subject to the specific conditions, terms and limitations stated below:

A. Properties transferred under the Programs described in this RFQ shall conform to, and be subject to, the provisions of the New York City Zoning Resolution, and all other applicable laws, rules, regulations and ordinances of all Federal, State, and City authorities having jurisdiction, as the same may be amended from time to time.

B. The City is not obligated to pay nor shall in fact pay any costs or losses incurred by any Applicant at any time including the cost of responding to this RFQ.

C. The City reserves the right to reject at any time any or all submissions and/or withdraw this RFQ in whole or in part, to negotiate with one or more Qualified Developers, and/or cause Properties to be transferred on terms other than those set forth herein. The City likewise reserves the right, at any time, to waive compliance with, or change any of the terms and conditions of this RFQ, and to entertain modifications and additions to the applications of Qualified Developers.

D. The City reserves the right to monitor and assess a Qualified Developer on any and all projects and/or associations with HPD with regard to poor performance and unlawful actions.

E. Inclusion of an Applicant as a Qualified Developer does not guarantee that the Applicant will be assigned any buildings under the Programs.

F. Selection of an Applicant as a Qualified Developer for these Programs and/or assignment of a Property to a Qualified Developer will not create any rights on the Applicant's part, including without limitation, rights of enforcement, equity, or reimbursement.

G. This RFQ and any agreement or other documents resulting therefrom are subject to all applicable laws, rules and regulations promulgated by any Federal, State or Municipal

authority having jurisdiction over the subject matter thereof, as the same may be amended from time to time.

H. HPD may select a third party for conveyance of a Property pursuant to the Third Party Transfer or for conveyance of a City-owned building by any method which it determines will best meet the purposes of such process.

I. All determinations in connection with this RFQ (including, but not limited to, any determinations regarding the experience, capability, financial resources of any Applicant or regarding the addition or removal of Qualified Developers to or from the list of Qualified Developers shall be at the sole discretion of HPD.

J. HPD is not legally obligated to issue this RFQ.

K. HPD reserves the right to discontinue the List of Qualified Developers at any time.

L. Any material with misrepresentation made by an Applicant or any failure by an Applicant to disclose any material information in connection with its response to this RFQ may result in the Applicant's disqualification from consideration for inclusion on the list of Qualified Developers, or, if Applicant is already on the list of Qualified Developers, the removal of the Applicant from the List of Qualified Developers as well as Applicant's disqualification from consideration for assignment of any particular building.

M. Each Applicant has a continuing obligation, prior to and after placement on the List of Qualified Developers, to update HPD regarding any material changes to information that such Applicant has provided to HPD within 30 days of any such material changes, including, but not limited to material changes to information regarding investigations, subpoenas, and changes of principals. Failure of any Applicant to update HPD on such material changes may result in the Applicant's disqualification from consideration for inclusion on the List or, if the Applicant is already on the List of Qualified Developers, the removal of the Applicant from the List of Qualified Developers as well as Applicant's disqualification from consideration for assignment of any particular building.

N. Each Applicant has a continuing obligation, prior to and after placement on the List of Qualified Developers, to provide any documentation and/or information requested by the City. Failure of any Applicant to provide such documentation and/or information when requested by the City may result in the Applicant's disqualification from consideration for inclusion on the List of Qualified Developers or, if the Applicant is already on the List of Qualified Developers, the removal of the Applicant from the List of Qualified Developers as well as Applicant's disqualification from consideration for assignment of any particular building.

## X. CONFLICTS OF INTEREST

The City Charter imposes certain restrictions on post-employment business relationships with the City by former City employees and on business relationships with the City by current City employees. Such individuals should consult Chapter 68 of the City Charter on specific provisions on this issue. Any questions concerning such provisions should be addressed to the Conflict of Interest Board, 2 Lafayette Street, New York, New York 10007, telephone number (212) 442-1400.