Index No. 23 Civ. 09616 (JHR)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

1600 NELSON AVENUE HOUSING DEVELOPMENT FUND CORPORATION, et al.,

Plaintiffs,

-against-

CITY OF NEW YORK, et al.,

Defendants.

**MUNICIPAL DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

***Sylvia O. Hinds-Radix***
*Corporation Counsel of the City of New York*
*Attorney for Municipal Defendants*
*100 Church Street*
*New York, N.Y. 10007*
*Tel: (212) 356-2565*

*Of Counsel: Andrea B. Feller*
*Michael S. Adler*
*Daniel Crandall*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... iii

PRELIMINARY STATEMENT ..... 1

STANDARD OF REVIEW ..... 1

PROCEDURAL HISTORY ..... 2

BACKGROUND ..... 3

ARGUMENT

POINT I

PLAINTIFFS' CLAIMS ARE TIME-BARRED ..... 7

A. Plaintiffs' Claims Are Governed By a Statute of Limitations No Longer Than Three Years That Began Running No Later Than September 2018 ..... 7

B. The Municipal Home Rule Law Claim Should Be Dismissed For Lack of Jurisdiction Even It Is Not Time-Barred ..... 10

POINT II

THE COMPLAINT IS BARRED BY THE ROOKER-FELDMAN DOCTRINE TO THE EXTENT IT SEEKS REVERSAL OF THE FORECLOSURE OF THE PROPERTY, OR COMPENSATORY DAMAGES ABOVE "SURPLUS" OR "EXCESS VALUE" ..... 11

POINT III

PLAINTIFFS LACK STANDING TO SEEK DECLARATORY OR INJUNCTIVE RELIEF ..... 15

POINT IV

PLAINTIFFS CANNOT SEEK PUNITIVE DAMAGES AGAINST THE CITY ..... 17

**Page**

POINT V

PLAINTIFFS' STATE CONSTITUTIONAL CLAIMS MUST BE DISMISSED BECAUSE THEY HAVE AN ADEQUATE REMEDY UNDER COMMON LAW AND FEDERAL LAW ....................17

CONCLUSION.................................................... 18

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*118 East 60th Owners, Inc. v. Bonner Properties, Inc.*,
677 F.2d 200 (2d Cir. 1982)....................9

*244 Lenox Ave. LLC v. Bazelais*,
126 A.D.3d 604 (1st Dep't 2015)....................4

*Achtman v. Kirby, McInerney & Squire, LLP*,
464 F.3d 328 (2d Cir. 2006)....................1

*Allen v. Antal*,
2014 U.S. Dist. LEXIS 79031
(S.D.N.Y. Mar. 13, 2014),
*aff'd*, 665 F. App'x 9 (2d Cir. 2016)....................17

*Arace v. Quicken Loans, Inc.*,
2016 U.S. Dist. LEXIS 11510
(S.D.N.Y. Feb. 1, 2016)....................1-2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................1

*Barretta v. Wells Fargo Bank, N.A.*,
693 F. App'x 26 (2d Cir. 2017)....................11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................1

*Browne v. Hynes*,
720 F. App'x 92 (2d Cir. 2018)....................15

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988)....................10

*Charles v. Levitt*,
716 F. App'x 18 (2d Cir. 2017)....................14

*City v. Melamed*,
19 A.D.3d 547 (2d Dep't 2005)....................4

*Dellinger v. Town of Huntington*,
2018 U.S. Dist. LEXIS 148559
(E.D.N.Y. Aug. 29, 2018),
*adopted,* 2018 U.S. Dist. LEXIS 199696
(E.D.N.Y. Nov. 26, 2018)....................7

**<u>Cases</u>** **<u>Pages</u>**


*Dorce v. City of New York*,
2 F.4th 82 (2d Cir. 2021) ....................14, 15, 16

*Feibleman v. Trs. of Columbia Univ.*,
2020 U.S. Dist. LEXIS 31499
(S.D.N.Y. Feb. 24, 2020) ....................2

*Gaidon v. Guardian Life Ins. Co. of Am.*,
96 N.Y.2d 201 (N.Y. 2001) ....................8

*GB Lodging, LLC v. Rodriguez*,
2022 U.S. Dist. LEXIS 48758
(S.D.N.Y. Mar. 18, 2022) ....................9

*Goddard v. State*,
173 Misc. 2d 1002 (N.Y. Ct. Cl. 1997) ....................8

*Golrick v. Nationstar Mortg., LLC*,
2023 U.S. Dist. LEXIS 229132
(D. Vt. Dec. 26, 2023) ....................12

*Hong Tang v. Grossman*,
2023 U.S. App. LEXIS 4625
(2d Cir. 2023) ....................1

*In Rem Foreclosure Action No. 52, Borough of Bronx,*
Index No. 40000/2015,
*aff'd*, 201 A.D.3d 517 (1st Dep't 2022) ....................2, 3, 5, 6, 12

*Matter of In Rem Tax Foreclosure Action No. 47 v. Simmonds*,
29 A.D.3d 955 (2d Dep't 2006) ....................4

*Ladeairous v. Attorney Gen. of New York*,
592 F. App'x 47 (2d Cir. 2015) ....................2

*Lewis v. Guardian Loan Co.*,
2019 U.S. Dist. LEXIS 140485
(D. Conn. Aug. 20, 2019) ....................13

*Marshall v. Hyundai Motor America*,
51 F. Supp. 3d 451
(S.D.N.Y. Sept. 30, 2014) ....................7-8

*Mhina v. Bank of Am., N.A.*,
2023 U.S. App. LEXIS 27641
(2d. Cir. 2023) ....................7

**Cases** **Pages**

*Morris v. Lindau*,
196 F.3d 102 (2d Cir. 1999)....................17

*O'Bryan v. Stark*,
77 A.D.3d 494 (1st Dep't 2010)....................4

*Peralta v. City of New York*,
2022 U.S. Dist. LEXIS 127136
(S.D.N.Y. July 18, 2022)....................7

*Pharr v. Evergreen Garden, Inc.*,
123 F. App'x 420 (2d Cir. 2005)....................13

*Pysa Realty Corp. v. City*,
23 A.D.3d 290 (1st Dep't 2005)....................4

*Rabinowitz v. New York*,
329 F. Supp. 2d 373 (E.D.N.Y. 2004)....................13

*Riley v. Comm'r of Fin. of New York*,
618 F. App'x 16 (2d Cir. 2015)....................12, 13

*Rizvi v. Town of Wawarsing*,
654 F. App'x 37 (2d Cir. 2016)....................10, 11

*Rouviere v. Howmedica Osteonics Corp.*,
645 F. Supp. 3d 157 (S.D.N.Y. 2022)....................9

*Schiller v. City of New York*,
2008 U.S. Dist. LEXIS 4253
(S.D.N.Y. Jan. 23, 2008)....................7

*Singh v. City of New York*,
189 A.D.3d 1697 (2d Dep't 2020)....................8

*Singleton v. City of New York*,
632 F.2d 185 (2d Cir. 1980)....................8

*Sonmax, Inc. v. New York*,
43 N.Y.2d 253 (N.Y. 1977)....................11

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009)....................16

*Swain v. Brown*,
135 A.D.3d 629 (1st Dep't 2016)....................8

**Cases** **Pages**

*Tyler v. Hennepin County*,
598 U.S. 631 (2023).....15

*Vossbrinck v. Accredited Home Lenders, Inc.*,
773 F.3d 423 (2d Cir. 2014).....12

*Wik v. City of Rochester*,
632 F. App'x 661 (2d Cir. 2015).....12

**Statutes**

24 R.C.N.Y. § 8-03.....5

28 U.S.C. § 1367(a).....10

42 U.S.C. § 1983.....7, 17

42 U.S.C. § 1985.....7, 17

Fed. R. Civ. P. 12(b)(1).....1

Fed. R. Civ. P. 12(b)(6).....1

Gen. Bus. Law § 349.....8, 14

Gen. Mun. Law § 50-i.....8

Gen. Mun. Law § 50-e.....8

Local Law 26.....3

Local Law 37.....3

Local Law 69.....3

N.Y.C. Admin. Code § 11-401.1.....6

N.Y.C. Admin. Code § 11-401.1(a).....6

N.Y.C. Admin. Code § 11-401.1(b).....6

N.Y.C. Admin. Code § 11-401.1(c).....2, 6

N.Y.C. Admin. Code § 11-401.4.....6

N.Y.C. Admin. Code § 11-404.....4, 6

**Statutes** **Pages**

N.Y.C. Admin. Code § 11-405(a) ........ 4, 5, 6

N.Y.C. Admin. Code § 11-406 ........ 5

N.Y.C. Admin. Code § 11-406(a) ........ 4

N.Y.C. Admin. Code § 11-406(b) ........ 5

N.Y.C. Admin. Code § 11-407 ........ 5

N.Y.C. Admin. Code § 11-409 ........ 5

N.Y.C. Admin. Code § 11-409(g) ........ 5

N.Y.C. Admin. Code § 11-412 ........ 6

N.Y.C. Admin. Code § 11-412(b) ........ 3

N.Y.C. Admin. Code § 11-412.1 ........ 5

N.Y.C. Admin. Code § 11-412.1(b)(1) ........ 6

N.Y.C. Admin. Code § 11-412.1(b)(2) ........ 5

N.Y.C. Admin. Code § 11-412.1(c) ........ 5

N.Y.C. Admin. Code § 11-412.1(d) ........ 5

N.Y.C. Admin. Code § 11-412.2 ........ 5

N.Y. Mun. Home R. Law § 10(1)(i) ........ 9, 11

R.P.T.L. § 11 ........ 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

1600 NELSON AVENUE HOUSING DEVELOPMENT FUND CORPORATION, et al.,

Plaintiffs,

-against-

CITY OF NEW YORK, et al.,

Defendants.

23 Civ. 09616 (JHR)

## PRELIMINARY STATEMENT

Plaintiffs challenge tax foreclosure of a property located at 1600 Nelson Avenue, Bronx, New York (the "1600 Nelson Property" or the "Property") in which they allege they held an interest, claiming that New York City's ("City") *in rem* tax foreclosure process violates the federal and New York state constitutions as well as other state law. But Plaintiffs' claims are time-barred, and they fail to allege a basis for much of the relief that they seek.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief . . . that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Similarly, to survive a Rule 12(b)(1) motion to dismiss, the Complaint's allegations must "establish subject matter jurisdiction." *Hong Tang v. Grossman*, 2023 U.S. App. LEXIS 4625, at *2 (2d Cir. 2023). "Threadbare recitals" do not suffice (*id.*), nor will conclusions "masquerading as factual." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006).

"[T]he Court may consider documents that are incorporated by reference in the complaint [and] documents that the plaintiff relied on" (*Arace v. Quicken Loans, Inc.,* 2016 US. Dist. LEXIS 11510, at *7 (S.D.N.Y. Feb. 1, 2016), as well as documents filed in other court

proceedings (*Ladeairous v. AG of N.Y.*, 592 Fed. Appx. 47, 48 (2d Cir. 2015)). The Court need not credit allegations that are contradicted by documentary evidence. *Feibleman v. Trs. of Columbia Univ.*, 2020 U.S. Dist. LEXIS 31499, at *22 (S.D.N.Y. Feb. 24, 2020).

## PROCEDURAL HISTORY

On November 16, 2017, the City obtained an *in rem* foreclosure judgment against several tax-delinquent properties, including the 1600 Nelson Property, in the Bronx County Supreme Court proceeding captioned *In Rem Foreclosure Action No. 52, Borough of Bronx*, Index No. 40000/2015 ("*Bronx 52*"). Compl. ¶ 22. Subsequently, pursuant to the foreclosure judgment, on September 13, 2018, the deed to the Property was transferred to Defendant Neighborhood Restore Housing Development Fund Corporation ("Neighborhood Restore"), an affordable housing developer. *Id.* ¶ 23. The foreclosure and transfer of the Property were executed pursuant to the City's Third Party Transfer Program ("TPT). *Id.* ¶ 1.

Plaintiff 1600 Nelson Avenue Housing Development Fund Corporation (the "1600 Nelson HDFC" or the "HDFC") moved to vacate the foreclosure judgment and reverse the transfer on September 26, 2018, arguing *inter alia* that the Property should not have been included in the foreclosure action because it was not "distressed" pursuant to New York City Administrative Code ("Ad. Code") Section 11-401.1(c), and that the City had failed to provide sufficient notice of the foreclosure action. *See* Brief in support of motion to vacate transfer of 1600 Nelson Property and Reply Affidavit in further support of same in *Bronx 52*, annexed as Exhibits A and B to the accompanying Declaration of Andrea B. Feller, dated March 29, 2024 ("Feller Decl."). The Bronx County Supreme Court rejected the HDFC's arguments and denied the motion to vacate by order dated May 31, 2019. Feller Decl., Exh. C. On January 18, 2022, the First Department affirmed the Bronx County Supreme Court's order. *Bronx 52*, 201 A.D.3d 517 (1st Dep't 2022).

By the Complaint in this action, filed on November 17, 2023, the 1600 Nelson HDFC again seeks *inter alia* to reverse the foreclosure and transfer of the Property. Compl. ¶¶ 213-14. The Complaint repeats some of the same arguments asserted in the HDFC's motion to vacate in *Bronx 52*, including the arguments regarding the 1600 Nelson Property not being "distressed" (*id.* ¶¶ 5, 87, 98) and the allegedly insufficient notice of foreclosure (*id.* ¶¶ 18, 20-22, 30). But this time, the HDFC now asserts, among other affirmative causes of action, claims that the foreclosure and transfer of the Property, and the entire TPT program, are unconstitutional (*id.*, counts I-IX), and it is joined by several individual Plaintiffs who allegedly had an interest in the Property prior to foreclosure by virtue of owning shares in the HDFC (*id.* ¶¶ 51-65).[1]

**BACKGROUND**

*In rem* tax foreclosure is a procedure by which a taxing authority obtains a multi-property judgment authorizing foreclosure of properties subject to delinquent real property and other charges ("tax liens"). Typically, the taxing authority takes title pursuant to the judgment. *See* New York Real Property Tax Law ("RPTL") Article 11; Ad. Code § 11-412(b).

By amendments to the City's *in rem* law in 1996 (NYC, NY, Local Law no. 37 §5 (May 14, 1996) ("Local Law 37")) and 1997 (NYC, NY, Local Law no. 69 §1 (Aug. 26, 1997)), the City added to its traditional *in rem* tax foreclosure process an alternative authorizing the City to dispose of class one and class two (*i.e.*, residential) properties subject to foreclosure judgment by deed either to the City or to a qualified third-party affordable housing developer. This "modified" *in rem* process, TPT, was "part of a comprehensive reform[2] of the City's tax collection

[1] Plaintiffs also name another entity involved in TPT, Bronx Pro Group, LLC ("Bronx Pro," and together with Neighborhood Restore, the "TPT Defendants"), as a Defendant, though the Complaint contains no specific allegations about what Bronx Pro's alleged wrongdoing was in connection with TPT.

[2] The City added its bulk tax lien sale procedure by Local Law no. 26 (Mar. 18, 1996). *See* Ad. Code, Title 11, chapter 3.

procedures."[3] The award-winning TPT[4] program enabled the City to mitigate a problem: due to widespread tax- delinquency and abandonment of private property, the City had through *in rem* foreclosure become the landlord with the largest holdings in the City, most in serious disrepair.[5] Since its inception, TPT has rehabilitated over 6000 units in 520 formerly tax-delinquent properties for the benefit of 15,000 residents.[6]

There is nothing revolutionary about *in rem* tax foreclosure; moreover, legions of decisions over more than two decades have upheld TPT and the City's compliance with its requirements. *See, e.g.*, *Matter of In Rem Tax Foreclosure Action No. 47 v. Simmonds*, 29 A.D.3d 955 (2d Dep't 2006); *City v. Melamed*, 19 A.D.3d 547 (2d Dep't 2005); *244 Lenox Ave. LLC v. Bazelais*, 126 A.D. 3d 604 (1st Dep't 2015); *O'Bryan v. Stark,* 77 A.D. 494 (1'st Dept 2010); *Pysa Realty Corp. v. City*, 23 A.D.3d 290, (1st Dep't 2005)**.** Copies of a sample of seven unreported cases from New York State Supreme Court are annexed as Exhibit F to Feller Decl.

The City's *in rem* foreclosure actions, traditional or modified, are commenced by filing a List of Delinquent Taxes in the relevant County Clerk's office. Ad. Code §11-406(a). For either type of action, the List is prepared by the Commissioner of the Department of Finance (*id.* §11-405(a)), and may include properties with tax liens delinquent for at least one year or three years, depending on the category of property (*id.* §11-404), and must include all tax-delinquent

---

[3] Testimony of Lilliam Barrios-Paoli, NYC HPD Commissioner, April 22, 1996 at p.7, https://legistar.council.nyc.gov/View.ashx?M=F&ID=4109407&GUID=54F5A586-B2E1-4C6C-833A-06496B81A0AE.

[4] *Breaking the Cycle of Abandonment: Using a Tax Enforcement Tool to Return Distressed Properties to Sound Private Ownership*, PIONEER INSTITUTE 1-3 (2000) (annexed to Feller Decl. as Exh. D).

[5] *See Comment: The Warranty of Habitability as Applied to New York City In rem Housing: A Premature Promise: City of New York v. Rodriguez,* 50 BROOKLYN L. REV. 1103, 1105-06 (Summer 1984).

[6] Testimony of HPD Commissioner Louise Carroll to New York City Council, July 22, 2019 ("HPD Testimony 2019"), p. 2. (annexed to Feller Decl. as Exh. E).

properties within a specific geographical area, which may not be smaller than a block (*id.* §11-405(a)).

Upon commencement of any *in rem* action, the City must give notice to owners and other interested parties. *Id.* §11-406. Interested parties can serve an answer (*id.* §11-409), have many opportunities to redeem (*e.g.*, *id.* §11-406(b)), and, in modified *in rem* foreclosure, up until four months following entry of foreclosure judgment, may redeem by full payment or by installment agreement (*id.* §11-412.1(d)), either of which redemption option excludes property from judgment and transfer. (*id.* §§11-407, 409, 412.1).[7]

In TPT, the City must transfer foreclosed property within eight months of entry of judgment (with a 45-day toll for review by the City Council) (*id.* §§ 11-412.1 and 412.2), to the City or to a qualified third party, chosen pursuant to criteria set forth in Ad. Code §11-412.1(b)(2), including residential management experience, financial ability, rehabilitation experience, and ability to work with governmental and community organizations. *See also* Rules of the City of New York ("RCNY") § 8-03 and HPD's Request for Qualifications for Third Party Transfer Program (annexed to Feller Decl. as Exh. G). Upon execution of a deed, the City or third party is seized of an estate in fee simple absolute, barring forever "any right, title, interest, claim, lien or equity of redemption." Ad. Code §11-412.1(c). TPT is a non-eviction foreclosure program in which, upon transfer, lawful tenants are entitled to leases at affordable rents. *See* Affirmation of Margaret DeVoe submitted in opposition to motion to vacate the in rem judgment and transfer of 1600 Nelson Property in *Bronx 52* (annexed to Feller Decl. as Exh. H).

[7] Interested parties are entitled to installment agreements prior to judgment; the City has the discretion to deny an installment agreement following entry of foreclosure judgment. Ad. Code §§11-409(g); 11-412.1(d). Only payment agreements kept current exempt property from judgment. *Id.* §11-409(g).

Plaintiffs allege the City may only foreclose properties "distressed" pursuant to the statutory definition (Ad. Code § 11-401.4) and that the City contravenes that requirement (Compl ¶¶ 5, 87, 98). However, Plaintiffs misread the statute and misapprehend the purpose of inclusion of the statutory definition.[8] TPT foreclosure is *not* addressed specifically to "distressed" properties, but rather to *residential* properties. *Compare* Ad. Code §11-412.1(b)(1) enacted in 1996 ("[t]he court shall make a final judgment authorizing the award of possession of *any parcel of class one and class two [residential] real property*" otherwise eligible for foreclosure) (emphasis added), to the pre-existing Ad. Code §11-412 ("the court shall make a final judgment awarding to the city the possession of any parcel" otherwise eligible for foreclosure, without the limiting language regarding class one and class two residential properties).

Section 11-404 of the Ad. Code, applicable to both traditional and modified *in rem* actions, provides that unpaid tax liens may be foreclosed, without reference to whether or not property is distressed. Similarly, Section 11-405(a) provides that the List of Delinquent Taxes shall include "*all* parcels within a particular class, that are within a particular borough or section of a tax map . . ." (emphasis added), again with no mention of "distress."

In the *Bronx 52* multi-property foreclosure proceeding, the Bronx County Supreme Court already rejected Plaintiffs' then-novel argument that the Property should not have been included in *Bronx 52* because it was not "distressed." *See* decision in *Bronx 52*, p. 3 ("[T]ax delinquent properties of the same class on the same block must be included whether or not 'distressed[.]'"), annexed as Exhibit C to Feller Decl, *aff'd Bronx 52,* 201 A.D.3d 517 (1st Dep't 2022).

[8] "Procedures for distressed properties," Ad. Code §401.1, precludes "distressed" properties from the City's bulk tax lien sales (subsec. (a)); obligates HPD to monitor for "distress" to ensure exclusion from the lien sale and for possible inclusion in other rehabilitation programs (subsec. (c)); and relieves HPD from monitoring properties no longer "distressed" (subsec. (b)).

Contrary to what Plaintiffs allege, the definition of "distressed" was not broadened in 1996 (Compl. ¶ 83)— the prior *in rem* law contained no such definition. Nor was there any expansion, in 2015 or 2018, of TPT or the type of properties foreclosed. *Id.* ¶¶ 90, 92.

Nor is TPT "a pretext" for foreclosure. *Id.* ¶¶ 6. The City's *secondary* goal of creating and preserving affordable housing does not negate TPT's indisputable tax enforcement purpose. The City collects significant revenue from TPT ("approximately $40 million in outstanding arrears" in the last round, which included the 1600 Nelson Property)[9], notwithstanding that taxes are extinguished on *transferred* properties.

## ARGUMENT

## POINT I

## PLAINTIFFS' CLAIMS ARE TIME-BARRED

### A. Plaintiffs' Claims Are Governed By a Statute of Limitations No Longer Than Three Years That Began Running No Later Than September 2018

Counts I-XI and XIII of the Complaint are directly subject to a statute of limitations of no longer than three years. *See Mhina v. Bank of Am., N.A.*, 2023 U.S. App. LEXIS 27641, at *7 (2d. Cir. 2023) (federal constitutional claims asserted in New York pursuant to 42 U.S.C. §§ 1983 and 1985 [counts I-V] are subject to a three-year statute of limitations); *Dellinger v. Town of Huntington*, 2018 U.S. Dist. LEXIS 148559, at *7-*8 (E.D.N.Y. Aug. 29, 2018), *adopted by* 2018 U.S. Dist. LEXIS 199696 (E.D.N.Y. Nov. 26, 2018) (New York state constitutional claims [counts VI-IX] also subject to three-year limitations period) (citing *Schiller v. City of New York*, 2008 U.S. Dist. LEXIS 4253, at *36 (S.D.N.Y. Jan. 23, 2008)); *Peralta v. City of New York*, 2022 U.S. Dist. LEXIS 127136, at *9 (S.D.N.Y. July 18, 2022) (applicable limitations period for state law tort claims against the City [counts X-XI] is one year and ninety days); *Marshall v. Hyundai Motor*

[9] HPD Testimony 2019, p. 3 (annexed to Feller Decl. as Exh. E).

*America*, 51 F. Supp. 3d 451, 461 (S.D.N.Y. Sept. 30, 2014) (three-year limitations period for General Business Law ("GBL") § 349 claims [count XIII]). [10]

Additionally, each of the foregoing causes of action accrued either at the time of Plaintiffs' alleged injury, or when Plaintiffs discovered or had reason to know of their injury. *See Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (federal claims [counts I-V] accrue "when the plaintiff knows or has reason to know of the injury which is the basis of his action"); *Goddard v. State*, 173 Misc. 2d 1002, 1005 (N.Y. Ct. Cl. 1997) (state constitutional claims [counts VI-IX] accrue at the time of injury); *Swain v. Brown*, 135 A.D.3d 629, 631 (1st Dep't 2016) (conversion and unjust enrichment claims [counts X-XI] accrue as of alleged wrongful taking or withholding or property); *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210 (N.Y. 2001) (GBL § 349 claims [count XIII] accrue "when plaintiff has been injured by a deceptive act or practice").

The statute of limitations on Plaintiffs' claims that accrued upon injury began to run no later than September 13, 2018 when, following the *in rem* foreclosure judgment against the 1600 Nelson Property, the City transferred the deed to the Property to Neighborhood Restore. Compl. ¶ 23. And Plaintiffs certainly knew, or had reason to know, of the foreclosure and transfer of the Property by September 26, when Plaintiff HDFC moved to vacate the foreclosure and reverse the transfer. *See* Feller Decl., Exh. A. Accordingly, the statute of limitations for the claims that accrued when Plaintiffs knew or had reason to know of their alleged injuries began to run no later than September 26, 2018. Because September 26, 2018 is more than three years prior to the

[10] Because Counts X-XI are state law tort claims, they are subject to General Municipal Law ("GML") §§ 50-e and 50-i, which require Plaintiffs to file a notice of claim within 90 days after the claims arose as a prerequisite to filing tort claims against the City. The Second Department has held that GML §§ 50-e and 50-i also apply to GBL § 349 claims against the City, like count XIII. *Singh v. City of New York*, 189 AD3d 1697, 1699 (2d Dep't 2020). Plaintiffs do not allege that they filed a notice of claim, so even if their claims were not time-barred under the applicable statutes of limitation, the Court would need to dismiss Counts X-XI and XIII pursuant to GML §§ 50-e and 50-i.

commencement of this action on November 17, 2023, counts I-XI and XIII of the Complaint are time-barred.

Plaintiffs' other causes of action, counts XII, XIV and XV, are also time-barred because they are derivative of the directly time-barred claims. Plaintiffs' Municipal Home Rule Law ("MHR") claim (count XII), which is based on the allegation that the City's foreclosure of the Property and TPT as a whole "constitute[] ultra vires activity exceeding the lawful authority expressly, actually, or implicitly granted to the City by New York state's legislature" (Compl. ¶ 199), is derivative of Plaintiffs' state constitutional claims.[11] The MHR claim is therefore subject to the same three-year statute of limitations that governs the state constitutional claims. *Rouviere v. Howmedica Osteonics Corp.*, 645 F. Supp. 3d 157, 165 (S.D.N.Y. 2022) (dismissing claim because it was derivative of time-barred claims). Counts XIV and XV, Plaintiffs' declaratory and injunctive relief claims, are likewise time-barred because they simply seek a declaration that Plaintiffs are entitled to the relief that Plaintiffs have sought based on their other time-barred claims. Compl. ¶¶ 211, 214;[12] *118 East 60th Owners, Inc. v. Bonner Properties, Inc.*, 677 F.2d 200, 202 (2d Cir. 1982) ("When the declaratory judgment sought by a plaintiff would declare his entitlement to some affirmative relief, his suit is time-barred if the applicable limitations period has run on a direct claim to obtain such relief."); *GB Lodging, LLC v. Rodriguez*, 2022 U.S. Dist. LEXIS 48758, at *11 (S.D.N.Y. Mar. 18, 2022) ("To determine whether an action for declaratory

[11] The City violates MHR by exceeding its authority under state law only where it "adopt[s] [or] amend[s] local laws" that are "inconsistent with the provisions of the [state] constitution or . . . any general law." N.Y. Mun. Home R. Law § 10(1)(i). Plaintiffs' Complaint does not allege that the City adopted locals laws that violate any specific New York state law other than the state constitution.

[12] The declaratory judgment claim seeks a declaration that TPT and the foreclosure and transfer of Plaintiffs' Property are unconstitutional and violate Plaintiffs' rights. Compl. ¶ 211. Plaintiffs' state their claim for injunctive relief as a separate cause of action from their claim for declaratory relief, but the injunctive relief claim is in essence a restyled declaratory judgment claim: it explicitly seeks "a Declaratory judgment" that no Defendant has an interest in the Property, and that the Plaintiffs are the rightful owners of the Property. Compl. ¶ 214.

judgment is time-barred, courts look to whether 'the applicable limitations period has run on a direct claim to obtain such relief.'") (quoting *id.*).

**B. The Municipal Home Rule Law Claim Should Be Dismissed For Lack of Jurisdiction Even It Is Not Time-Barred**

Even if Plaintiffs' MHR claim were not time-barred as derivative of their state constitutional claims, the MHR claim would still be subject to dismissal. Plaintiffs' sole alleged basis for invoking this Court's jurisdiction over their non-federal claims, including their MHR claim, is supplemental jurisdiction. Compl. ¶ 78 (alleging jurisdiction over Plaintiffs' non-federal claims because they "aris[e] from a common nucleus of operative facts" as the federal claims) (citing 28. U.S.C. § 1367(a)). Because the federal claims must be dismissed as time-barred for the reasons discussed above, the Court has no basis to exercise supplemental jurisdiction over remaining state law claims. *Rizvi v. Town of Wawarsing*, 654 Fed. Appx. 37, 39-40 (2d Cir. 2016) ("In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)) (internal alteration marks omitted).

While district courts have discretion to retain supplemental jurisdiction over a state law claim following the dismissal of federal claims in some circumstances, it is an abuse of discretion to retain such jurisdiction over a claim that "raises unsettled questions of New York law that implicate the balance between state and local entities." *Id.* at 40 (holding that it was abuse of discretion for district court to retain jurisdiction over state law preemption claim after granting summary judgment dismissal of federal equal protection claim). Plaintiffs' MHR claim is based on an allegation that the City "exceed[ed] the lawful authority . . . granted to the City by New York

state's legislature." Compl. ¶ 199. And while the Complaint does not specify exactly how the City allegedly exceeded its authority, to succeed on the MHR claim, Plaintiffs must establish that the City "adopt[ed] [or] amend[ed] local laws" that are "inconsistent with the provisions of" New York state law. N.Y. Mun. Home R. Law § 10(1)(i); *see also Sonmax, Inc. v. New York*, 43 N.Y.2d 253, 258 (N.Y. 1977) (holding that a City local law establishing a localized *in rem* tax foreclosure procedure did not violate MHR, despite that the localized procedure varied from the State's *in rem* foreclosure procedure, because there was no "inconsistency or contradiction" between the local and State laws).

No Court has determined that TPT, or any of the associated local laws that are at issue in this case, are inconsistent with New York state law, so adjudicating Plaintiffs' MHR claim would involve resolving unsettled issues of New York law. "New York [state] courts are better suited than [federal courts] to address these questions in the first instance" (*Rizvi*, 654 Fed. Appx. At 40), so the Court must not retain jurisdiction over the MHR claim after the federal claims are dismissed.

## POINT II

## THE COMPLAINT IS BARRED BY THE ROOKER-FELDMAN DOCTRINE TO THE EXTENT IT SEEKS REVERSAL OF THE FORECLOSURE OF THE PROPERTY, OR COMPENSATORY DAMAGES ABOVE "SURPLUS" OR "EXCESS VALUE"

Assuming *arguendo* that the Complaint is not time-barred, it would still be barred, in part, by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine provides that federal district courts "lack subject matter jurisdiction over claims brought by state court losers that invite review and rejection of state court judgments." *Barretta v. Wells Fargo Bank, N.A.*, 693 Fed. Appx. 26, 28 (2d Cir. 2017). The doctrine applies where "(1) the federal-court plaintiff lost in state court;

(2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (internal alteration marks and quotation marks omitted).

The first and fourth elements of *Rooker-Feldman* are clearly present here. Plaintiffs first lost in state court when the City obtained an *in rem* foreclosure judgment against the Property. Compl. ¶ 22. Plaintiffs lost again when the Bronx County Supreme Court rejected Plaintiff 1600 Nelson HDFC's motion to vacate and reverse the foreclosure and transfer of the Property. Feller Decl, Exh. C. And they lost for a third time when the First Department rejected their appeal of the Bronx Supreme Court's Order. *Bronx 52*, 201 A.D.3d 517, *supra.* The First Department's decision, and the prior Bronx Supreme Court decisions, were all issued prior to the date Plaintiffs commenced this action.

It is immaterial that, because the state court proceeding was an *in rem* action, Plaintiffs were not named as parties there—the Second Circuit has held that people who were deprived of a property interest by a state *in rem* foreclosure judgment still constitute state court losers for purposes of *Rooker-Feldman*, notwithstanding that they were not named parties in state court. *Riley v. Comm'r of Fin. of N.Y.*, 618 Fed. Appx. 16, 17 (2d Cir. 2015) (*Rooker-Feldman* barred federal action challenging state *in rem* foreclosure judgment); *Wik v. City of Rochester*, 632 Fed. Appx. 661, 662-663 (2d Cir. 2015) (same); *see also Golrick v. Nationstar Mortg., LLC*, 2023 U.S. Dist. LEXIS 229132, at *13 (D. Vt. Dec. 26, 2023) ("Someone who loses an ownership interest in property through a state in rem foreclosure proceeding against the property has lost in state court even if they were not a named party in that earlier action.") (internal quotation marks and alteration marks omitted). Plaintiffs also do not circumvent *Rooker-Feldman* by raising new

allegations and legal theories in this action that were not litigated in the *in rem* proceeding. *Lewis v. Guardian Loan Co.*, 2019 U.S. Dist. LEXIS 140485, at *4 n.3 (D. Conn. Aug. 20, 2019) ("[I]t is well settled that a federal plaintiff may not escape application of the *Rooker-Feldman* bar by relying on legal theories not raised in state court.") (citing *Pharr v. Evergreen Garden, Inc.*, 123 Fed. Appx. 420, 423 n.2 (2d. Cir. 2005)); *Rabinowitz v. New York*, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) ("A plaintiff may not overcome the [Rooker-Feldman] doctrine and seek a reversal of a state court judgment simply by casting his complaint in the form of a civil rights action.") (internal quotation marks omitted).

The second and third elements of *Rooker-Feldman* are also present, at least insofar as Plaintiffs complain of and seek to reverse the Bronx County Supreme Court's foreclosure of the 1600 Nelson Property. Plaintiffs' specifically seek, *inter alia*, "a Declaratory judgment that the TPT Defendants [to whom the Property was transferred] have no right, title, claim, lien, mortgage or interest in the Premises whatsoever at law or at equity, and that the Plaintiff 1600 Nelson is the owner of the Premises in fee simple absolute." Compl. ¶ 214; *see also id.*, p. 55 (demanding, in subparagraph G of prayer for relief, "[a] judgment declaring that the Deed from the Municipal Defendants to the TPT Defendants to be void ab initio and vacated"). A federal complaint that seeks to reverse a state court foreclosure judgement, and void any subsequent transfers or clouds on title that were enabled by the foreclosure judgment, plainly "complains of injuries caused by a state court judgment" and "invites review and rejection of that judgment." *Riley*, 618 Fed. Appx. at 17 (plaintiff's federal complaint that "sought to remove six alleged clouds on [plaintiff]'s claimed title to a Brooklyn property, as well as a declaratory judgment of free-and-clear ownership," was barred by *Rooker-Feldman* because it sought to, in effect, reverse a state court

judgment, from prior *in rem* foreclosure proceedings, that had rejected plaintiff's claim of ownership).

The Second Circuit's decision in *Dorce v. City of New York*, 2 F.4th 82 (2d Cir. 2021) is instructive. *Dorce* involved a challenge to TPT *in rem* foreclosures that is very similar to the challenge that Plaintiffs make here. Like Plaintiffs here, the *Dorce* plaintiffs alleged, in a federal complaint, that the City foreclosed on their properties as part of TPT, thereby violating the Takings, Due Process, and Equal Protection Clauses of the New York state and federal constitutions. *Id.* at 93.[13] Applying the *Rooker-Feldman* doctrine, the Second Circuit held that "it is clear that Plaintiffs cannot seek to void the state court foreclosure decisions transferring their property." *Id.* at 104. The Second Circuit further held that the district court lacked jurisdiction over the *Dorce* plaintiffs' claims insofar as they sought damages "caused by the state court judgments that divested them of that property." *Id.* at 105. And the Second Circuit recognized that, where a plaintiff files a federal complaint challenging a state court foreclosure, *Rooker-Feldman* bars the plaintiff from asserting a claim for damages in the amount of "the full value of the foreclosed-on property," because this "was akin to asking the federal court to review and reject the state court judgment. *Id.* at 108 n.29 (citing *Charles v. Levitt*, 716 F. App'x 18, 22 (2d Cir. 2017) (internal quotation marks omitted)).

However, the Second Circuit also determined that *Rooker-Feldman* did not bar the *Dorce* plaintiffs' claims "to the extent that for each of those claims, they s[ought] only the value of their lost property in excess of the amount owed in taxes." *Id.* at 104-05. The Second Circuit reasoned that, in seeking this surplus from transfer of property, the *Dorce* plaintiffs were not challenging the state court's foreclosure judgment, but rather the City's failure to provide an

---

[13] The *Dorce* plaintiffs also asserted a GBL§ 349 deceptive business practices claim, and a Municipal Home Rule Law claim, exactly like Plaintiffs in this action. 2 F.4th at 93 n.13.

adequate "mechanism for seeking compensation for the excess value of the property following foreclosure." *Id.* at 105. Applying the same reasoning here, Plaintiffs' Complaint is barred by *Rooker-Feldman* to the extent it seeks compensatory relief for the "full value" of the property; pursuant to *Rooker-Feldman*, only the alleged "excess" or "surplus" value of their Property may be sought.[14]

Therefore, even if the Complaint were not time-barred, it would still be barred by *Rooker-Feldman* to the extent it seeks to void the foreclosure and transfer of the Property, and any compensatory damages other than the "excess" or "surplus" value of the Property.

## POINT III

## PLAINTIFFS LACK STANDING TO SEEK DECLARATORY OR INJUNCTIVE RELIEF

Plaintiffs seek declaratory and injunctive relief that would declare TPT unconstitutional and bar the City from commencing further TPT foreclosure actions. Compl. ¶ 211, p. 55 (subparagraphs E and F of prayer for relief).[15] But Plaintiffs do not allege any facts suggesting that they would be injured by future TPT foreclosures; they only allege injuries caused by a prior TPT foreclosure.

To establish standing to seek declaratory or injunctive relief in federal court, Plaintiffs must allege facts showing "a likelihood that [they] will be injured in the future," and "cannot rely on past injury." *Browne v. Hynes*, 720 Fed. Appx. 92, 93 (2d Cir. 2018). "[T]he threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the

---

[14] The Complaint alleges that Plaintiffs suffered damages "including the Surplus or Excess Value of their properties seized pursuant to [TPT]." Compl. ¶ 113. And the Complaint states that the meaning of "surplus" or "excess value" is "defined or described by the U.S. Supreme Court in *Tyler v. Hennepin County*, 598 U.S. 631 (2023)." *Id.* ¶ 7. *Tyler* recognized that surplus includes the "money remaining after" a foreclosed property is "seized and sold to satisfy [] past due taxes, along with the costs of collecting them." 598 U.S. at 1375.

[15] Plaintiffs also seek declaratory and injunctive relief that would reverse the foreclosure and transfer of the Property to Neighborhood Restore. Compl. ¶¶ 213-14, p. 55 (subparagraph G of prayer for relief). The *Rooker-Feldman* doctrine bars Plaintiffs from seeking this relief, as explained in Point II, *infra*.

challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

In the *Dorce* case—which, as discussed above, involved constitutional claims challenging the TPT foreclosures of the plaintiffs' properties that were similar to claims asserted by Plaintiffs here—the plaintiffs sought declaratory and injunctive relief enjoining TPT that was also much like the declaratory and injunctive relief sought by Plaintiffs here. 2 F.4th at 95. The Second Circuit held that the *Dorce* plaintiffs lacked standing for declaratory or injunctive relief, reasoning that the mere continued existence of TPT, and the fact that TPT had allegedly injured the plaintiffs in the past, did not establish a "likelihood of future harm." *Id.*

Plaintiffs here lack standing to seek declaratory and injunctive relief for the same reasons as the *Dorce* plaintiffs. One paragraph of the Complaint does hint at the concept of future harm, alleging that "certain of the Plaintiffs . . . are currently facing eviction." Compl. ¶ 44. But even if the Court granted the declaratory judgment and injunction that Plaintiffs seek, thereby preventing future TPT foreclosures, this would do nothing to protect Plaintiffs from being evicted from the already foreclosed-upon 1600 Nelson Property. Because a declaratory or injunctive relief plaintiff must allege that "a favorable judicial decision will prevent or redress" a likely future injury in order to establish standing (*Summers*, 555 U.S. at 493), Plaintiffs' allegation about possible future evictions does not confer standing.

Accordingly, the Court should find that Plaintiffs lack standing to seek declaratory or injunctive relief.

## POINT IV

## PLAINTIFFS CANNOT SEEK PUNITIVE DAMAGES AGAINST THE CITY

The Complaint seeks punitive damages (Compl., p. 55 (subparagraph C)), but "punitive damages may not be awarded against a municipality." *Morris v. Lindau*, 196 F.3d 102, 112 (2d Cir. 1999). Thus, the Complaint must not be allowed to proceed to the extent it seeks punitive damages against the City.

## POINT V

## PLAINTIFFS' STATE CONSTITUTIONAL CLAIMS MUST BE DISMISSED BECAUSE THEY HAVE AN ADEQUATE REMEDY UNDER COMMON LAW AND FEDERAL LAW

"A plaintiff cannot assert a constitutional tort claim under the New York State Constitution if he has an alternative remedy either at state common law or under federal law." *Allen v. Antal*, 2014 U.S. Dist. LEXIS 79031, at *28 (S.D.N.Y. Mar. 13, 2014), *aff'd*, 665 Fed. Appx. 9 (2d Cir. 2016). In *Allen*, this Court dismissed the plaintiff's state constitutional claims because the plaintiff had also stated several state common law claims, and a Section 1983 claim, based upon the same grounds. *Id.* at *30. Like the *Allen* plaintiff, Plaintiffs here assert Section 1983 (counts I-IV), Section 1985 (count V), and state common law claims (counts X-XI), that are based on the same grounds as their state constitutional claims (counts VI-IX). Therefore, if Plaintiffs' Section 1983, Section 1985, or state common law claims are allowed to proceed, the state constitutional claims must be dismissed.

## CONCLUSION

The motion to dismiss should be granted and the Complaint should be dismissed as time-barred. In the alternative, to the extent the Court determines that the Complaint is not time-barred, the Court should (i) dismiss the Complaint to the extent it seeks compensatory relief other than the surplus or excess value of the property, pursuant to the *Rooker-Feldman* doctrine; (ii) dismiss the Complaint to the extent it seeks declaratory or injunctive relief due to lack of standing; (iii) find that Plaintiffs cannot seek punitive damages; and (iv) dismiss Plaintiffs' state constitutional claims (counts VI-IX) because their federal claims and state common law claims provide an adequate alternative remedy.

Dated: New York, New York
March 29, 2024

SYLVIA O. HINDS-RADIX
Corporation Counsel of the
City of New York
*Attorney for Municipal Defendants*
100 Church Street
New York, New York 10007
(212) 356-2565

By: /s/ Daniel Crandall
Andrea B. Feller
Michael Adler
Daniel Crandall
*Assistant Corporation Counsel*