# EXHIBIT 6

**TESTIMONY OF COMMISSIONER LILLIAM BARRIOS-PAOLI**

**APRIL 22, 1996**

**Good afternoon Chairman Spigner and members of the New York City Council Committee on Housing and Buildings. My name is Lilliam Barrios-Paoli, Commissioner of the New York City Department of Housing Preservation and Development ("HPD"). I appreciate the opportunity to discuss with you today Intro No. 679A, which was introduced by Councilmember Spigner by request of Mayor Giuliani. This landmark legislation is part of a comprehensive reform of the City's tax collection procedures that will enable the City to improve tax collection and to more effectively address the risk of abandonment of New York City's housing stock.**

***Need for Change***

**As you know, the City's primary weapon to enforce tax collection has been the *in rem* process. This system has proven to be rigid, expensive and time-consuming. Even worse, the City's experience over the past 18 years proves that foreclosure and City ownership and management of buildings has not significantly improved much of this housing stock; rather, much of it has suffered further decay, the exact opposite effect of this policy's intent. As you know, Arthur Andersen, in a *pro bono* study, concluded that the costs of maintaining, repairing**

and managing New York City's current *in rem* stock will be $10.6 billion. The study shows that City ownership is anything but temporary: the period of *in rem* ownership averages 19 years and costs the City $2.2 million in acquisition, management and repair costs per building. In contrast, the taxes and other liens on these properties averaged $36,000 when the City took ownership. These costs are magnified by the hardships to tenants, the devastating impact on local real estate markets and on neighborhood quality of life. Perhaps the most regrettable aspect of this policy is that, even with such vast sums being spent by the City, the quality of life provided to our tenants is still sub-standard. Clearly, comprehensive and bold reform is required.

*Goals of Legislation*

The Giuliani Administration and the City Council have spent many months analyzing ways to improve housing preservation efforts while ensuring swift tax collection. A critical part of the answer is identifying troubled buildings at an earlier stage, where intervention is more likely to be successful and where the flexibility exists to prevent abandonment to the latest extent possible.

In order to spend our extremely limited resources on housing preservation and community development, rather than property management and maintenance, legislative changes need to be made. Intro No. 679A is designed to

**provide flexibility, speed and cost-effectiveness as the City intervenes to prevent abandonment.**

**The bill's most critical changes are as follows:**

***First,* the Department of Finance will send HPD lists of residential properties proposed to be included in tax lien sales for review. Based on various criteria of distress included in our Early Warning System, HPD will request exclusion of properties from the tax lien sales in order to target these properties for effective intervention against abandonment.**

**A cornerstone of our Early Warning System will be the newly reorganized Neighborhood Preservation Consultant Program. As you know, this program was created in Fiscal Year 1995 to focus the efforts of qualified local housing organizations on the preservation and improvement of the existing housing stock for families in areas most at risk of housing abandonment. Fifty-four community based groups were selected to conduct a community needs assessment; develop and implement a community revitalization plan; and coordinate service delivery to tenants and owners in conjunction with HPD and others. Specifically, the NPCP's will provide abandonment prevention services as part of their contract through:**

**a. outreach to owners of buildings in disrepair or tax arrears to identify the reasons for the conditions, suggest remedies and offer appropriate assistance;**

**b. assist property owners to apply for rehabilitation loans through private lenders, as well as through HPD programs;**

**c. assist HPD's Code Enforcement Unit by targeting buildings for enforcement and counseling strategies, including negotiating voluntary repair agreements for the correction of violations;**

**d. assist HPD's Housing Litigation Bureau in targeting buildings and their owners for appropriate litigation.**

***Second,* Intro 679A would permit the Finance Commissioner to transfer title to a tax foreclosed building either to the City or a third party designated by the Commissioner of HPD. Strict timeframes-- not more than eight months after an *in rem* judgment -- require swift and decisive action and resolution. This tough provision would be utilized where owners are irresponsible, tenants are being harassed and not provided with essential services, or where buildings are unlikely to become economically viable without complete tax and mortgage restructuring. New owners will be selected through competitive screening**

processes which would be open to tenants, for-profit and non-profit organizations. City ownership will be a last resort where other strategies have not worked or are unlikely to work. The policy of City management of distressed properties will end. Interim management of properties to be sold will be provided by private property managers, if necessary.

*Finally*, a number of changes to current provisions for installment agreements to pay tax arrears have been proposed to balance tax enforcement objectives with the desire to provide a reasonable opportunity for owners to pay arrears and retain ownership. Current experience shows that more than three out of every four agreements end in default. Intro. No. 679A streamlines requirements and provides incentives to enter into agreements earlier in the process and to discharge all obligations. Such incentives include a lower interest rate on payment plans in exchange for larger downpayments.

***Challenges Being Met***

A key element of the Giuliani Administration's new policies is the development and implementation of a comprehensive "Early Warning System" to identify buildings at risk of abandonment and tax foreclosure. We have been

working in advance of the enactment of legislation to develop the elements of the Early Warning System.

When complete, the Early Warning System will integrate into a single citywide data base information from a wide variety of sources, including HPD, the Department of Finance, the Department of Buildings, City Planning and others. This will allow the City to develop profiles of privately owned residential buildings that are at risk of abandonment and tax-foreclosure, so that buildings can be targeted for aggressive and appropriate remediation efforts at the earliest stage. Indicators will include significant property tax, water and sewer fee arrearages; high numbers of uncorrected Housing Maintenance Code violations; a history of tenant- or City-initiated litigation; and rent rolls that cannot support buildings' operating expenses and major repair needs.

We have already established a Problem Building Committee within HPD to assess distressed buildings identified through the Emergency Repair Program (ERP). Buildings are being identified according to high ERP charges, frequency of ERP repairs, lack of owner response, and serious tax arrears. The Committee, which is composed of staff from HPD's Division of Preservation and Anti-Abandonment, Housing Litigation Bureau (HLB), Code Enforcement and the

Division of Planning, now meets once a month to research, assess and refer buildings for appropriate treatment. It reviews any 7A history, pending HLB actions, ownership, mortgages, debt service and tax status. Buildings may be referred to HLB for comprehensive or 7A litigation; to the Neighborhood Preservation Offices or Neighborhood Preservation Consultants for follow-up; to our Small Property Owners Advocacy Unit for owner counseling; to Code Enforcement for inspection, or to our newly creating Building Evaluation Unit for development of a disposition strategy. Our Small Property Owners Advocacy Unit works with owners of small properties with 20 units or less to resolve their issues with HPD and, where possible, other City agencies.

It is not hyperbole to say that Intro 679A is one of the most significant legislative initiatives to be considered by the Council to improve housing conditions in the City. The Administration appreciates the City Council working with us to fashion a critically needed reform which will benefit our communities. I urge your adoption of Intro 679A as the culmination of that two year process. Thank you for the opportunity to testify before you and I look forward to your questions.