**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

1600 NELSON AVENUE HOUSING DEVELOPMENT FUND CORPORATION, individually and on behalf of those individuals and families entitled to homeownership and/or occupancy in its housing project developed pursuant to Article XI of the New York State Private Housing Finance Law; and each of ISABEL ADON, WALKIRIA COLON, RAFAEL COTTO, ERENIA FERMIN GUZMAN, LORANI GARCIA, JOSE GONZALEZ, JOSE JUNIOR GONZALEZ, MATILDE GONZALEZ, VIOLETA GUERRERO KENIA MINIER, YADIRA POLANCO, GILBERTO RIVERA, DINORA VELASQUEZ and DORIS VELASQUEZ, individually and on behalf of all other similarly-situated persons,

Plaintiffs,

v.

CITY OF NEW YORK, ADOLFO CARRION, Jr. (Commissioner of the New York City Department of Housing Preservation and Development), and PRESTON NIBLACK (Commissioner of the New York City Department of Finance), NEIGHBORHOOD RESTORE HOUSING DEVELOPMENT FUND CORPORATION, and BRONX PRO GROUP, LLC,

Defendants,

Civil Action No.
1:23-CV-09616-LTS

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**HIMMELSTEIN MCCONNELL GRIBBEN & JOSEPH LLP**
Jesse Gribben
15 Maiden Lane, 17th Floor
New York, New York 10038
Tel: (212) 349-3000
Attorneys for Plaintiffs

Date of Service: July 29, 2024

## TABLE OF CONTENTS


| | Pages |
|---|---|
| TABLE OF AUTHORITIES | i,ii,iii,iv |
| PRELIMINARY STATEMENT | 1 |
| FACTUAL ALLEGATIONS IN THE COMPLAINT | 3 |
| A. Background | 4 |
| B. The City Illegally Confiscated Plaintiff's Property | 4 |
| C. Statutory Scheme | 6 |
| D. Defendants' Illegal Conduct | 7 |
| E. Plaintiffs' Injuries | 9 |
| **ARGUMENT** | |
| **A. RULE 12(B) STANDARDS ARE SATISFIED IN THE INSTANT CASE** | 10 |
| **B. COUNTS I-XI AND XIII OF PLAINTIFFS' COMPLAINT ARE PROPERLY AND TIMELY PLED** | 11 |
| **C. THE COURT IS VESTED WITH JURISDICTION TO ENTERTAIN PLAINTIFFS' MUNICIPAL HOME RULE LAW CLAIM** | 17 |
| **D. THE ROOKER-FELDMAN DOCTRINE DOES NOT NEGATE JURISDICTION** | 20 |
| **E. NON-MUNICIPAL DEFENDANTS ARE PROPERLY JOINED** | 23 |
| **F. REQUEST FOR INJUNCTIVE RELIEF** | 25 |
| CONCLUSION | 25 |

# TABLE OF AUTHORITIES

**Cases**

Abbas v. Dixon, 480 F.3d 636, 642, 2007 U.S. App. LEXIS 4437, *14 .......... 16

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) .......... 10

A.Q.C. ex rel. Castillo v. United States, 656 F.3d 135, 140 (2d Cir. 2011) .......... 12

Babbitt v. Farm Workers, 442 U.S. 289, 298 (1979) .......... 23

Baldwin Union Free Sch. Dist. v. Cty. of Nassau, 9 N.E.3d 351, 361 (N.Y. 2014) .......... 20

Baretta v. Wells Fargo Bank, N.A., 693 F. App'x 26, 28 (2d Cir. 2017) .......... 21

Boening v. Nassau Cty. Dep't of Assessment, 69 N.Y.S.3d 666, 669 (N.Y. App. Div. 2018) .......... 19

Brody v. Brody, 2009 WL 436404, P. 3 (S.D.N.Y 2009) .......... 17

Carnegie-Mellon Univ. Cohill, 484 US.343, 350 n.7 (1988) .......... 18

City of Amsterdam v. Helsby, 332 N.E.2d 290, 292 (N.Y. 1975) .......... 20

Civic Ass'n of Deaf of New York City, Inc. v. Giuliani, 915 F. Supp. 622, 625 (S.D.N.Y. 1996) .......... 25

Dennis v. Sparks, 449 U.S. 24, 27-28, 66 L. Ed. 2d 185, 101 S. Ct. 183 (1980) .......... 24

DiFolco v. MSNBC Cable LLC, 622 F.3d 104 (2d Cir. 2010) .......... 10

District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed. 206 (1983) .......... 1,23

Dorce v. City of New York, 2 F.4th 82 (2d Cir. 2021) .......... 1,2,3,23,24

Drayton v. Toys 'R' Us Inc., 645 F. Supp. 2d 149, 162, 2009 U.S. Dist. LEXIS 64214, *31. .......... 24

Dykes v. Hosemann, 743 F.2d 1488, 1494 (11th Cir. 1984) .......... 25

Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) .......... 21,22

Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R., 410 F.3d 17, 24, 2005 U.S. App. LEXIS 9748, *17-18 .......... 22

Fin Guar Inc. Co. v. Putnam Advisory Co., LLC, 783 F.3d 395 (2d Cir. 2015). .......... 11

Fullerton Ave. Land Dev. Ltd. v. Cianciulli, 48 F. App'x 813, 815 (2d Cir. 2002) .......... 23

Green v. Mattingly, 585 F. 3d 97, 101 (2d Cir. 2009) .......... 21

Grancio v. De Vecchio, 572 F. Supp. 2d 299, 309 (E.D.N.Y. 2008) .......... 12

Hatorah v. New York, 175 A.D.2d 795, 796, 573 N.Y.S.2d 94, 95(2d Dept., 1991 .......... 12

Haw. Hous. Auth. V. Midkiff, 467 U.S. 229, 245 (1984) .......... 17

Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85, (2d Cir. 2005) .......... 21,23

In rem Tax Foreclosure Action No. 52 & City of New York v. 1600 Nelson Avenue, HDFC, 38 N.Y.3d 1171, 195 N.E.3d 529, 174 N.Y.S.3d 695, 2022 NY Slip Op 71661 (2022) .......... 2

ISCA Enterprises v. City of New York, 77 N.Y.2d 688, 698, 572 N.E.2d 610, 614, 569 N.Y.S.2d 927, 931, (1991) .......... 12

Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 448 (2d Cir. 1998) .......... 19

Johnson v. De Grandy, 512 U. S. 997, 1005–06 (1994) .......... 21

Kamhi v. Town of Yorktown, 547 N.E.2d 346, 348–49 (N.Y. 1989) .......... 20

Kelo v. City of New London, Conn, 545 U.S. 469, 477 (2005) .......... 17

Kleinknecht v. Ritter, 2023 U.S. App. LEXIS 1851, *6-7, 2023 WL 380536 .......... 13

Knick v. Township of Scott, Pa., 139 S. Ct. 2162, 204 L. Ed. 2d 558 (2019) .......... 12,13

Knick v. Township of Scott, Pennsylvania, 139 S.Ct. 2162, 2181 (2019) .......... 13

Ladeairous v. AG of N.Y., 592 Fed. Appx, 47, 48 (2d Cir. 2015). .......... 3

Lance v. Dennis, 546 U.S. 459, 464–66 (2006) .......... 21

Lopez v. Annucci 690 Fed. Appx., 56, 59 (2d Cir. 2017) .......... 16

Lucente v. City of Suffolk, 980 F.3d 284, 309 (2d Cir. 2020). .......... 14

MacNaughton v. Warren County, 123 Fed. Appx. 425, 427, 2005 U.S. App. LEXIS 1393, *5.. 12

McClellan v. Carland, 217 U.S. 268, 282, 54 L. Ed. 762, 30 S. Ct. 501 (1910). .......... 22

McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004). .......... 11

Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 348 (2d Cir. 2005) .......... 14

Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc., 51 F. Supp.2d 457, 468 (S.D.N.Y.1999) .......... 18

Palazzalo v. Rhode Island, 533 U.S. 606, 621 (2001) .......... 15

Parisienne v. Scripps Media, Inc., No. 19 CIV. 8612 (ER), 2021 WL 3668084, at *4 (S.D.N.Y. Aug. 17, 2021 .......... 12

Rizvi v. Town of Wawarsing, 654 Fe. Appx. 37, 39-40 (2d Cir. 2016) .......... 18

Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923)... 2,20,21,22,23,24

Rounseville v. Zahl, 13 F.3d 625, 633 (2d Cir. 1994) .......... 24

Roque v. United States, 676 F. Supp. 2d 36, 42 (D. Conn. 2009) .......... 12

Sagaponack Realty, LLC v. Vill. of Sagaponack, 778 F. App'x 63, 64 (2d Cir. 2019) .......... 13

Salim Shahriar v. Smith & Wollensky Rest. Group, Inc., 659 F.3d 234, 245, 2011 U.S. App.

LEXIS (2d Cir. 2004) .......... 19
Scheur v Rhodes, 416 US 232 (1974).......... 10
Sherman v. Town of Chester, 752 F.3d 554, 566-67 (2d Cir. 2014) .......... 15
Shomo v. City of NY, 579 F.3d 176, 182 (2d Cir. 2009) .......... 15
Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot., 560 U.S. 702 (2009).......... 16
Susan B. Anthony List v. Driehaus, 573 U.S. 149, 159 (2014) .......... 23
Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 535 U. S. 302, 324 (2002).......... 1
Tyler v. Hennepin County, Minnesota, et. al., 598 U.S. 631 (2023) .......... 1,14,17
Vossbrinck v. Accredited Home Lenders, Inc.,773 F.3d 423 (2d. Cir. 2014 .......... 22
Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 156–158, 160–164 (1980).......... 16

**OTHER STATUTES AND AUTHORITIES**

28 U.S.C. § 1367.......... 18
28 U.S.C. § 1367(a)2006 .......... 18
CPLR § 317.......... 15
Code § 11-401.......... 8
Code § 11-404(a) .......... 8
§ 11-404 et seq. .......... 8,9
DOF and HPD under Code § 11-401.4. .......... 8
Municipal Home Rule Law § 10(1)(ii)(a)(8) .......... 20
NY GBL § 349 .......... 2,11
N.Y. Priv. Hous. Fin. Law § 573(3)(a),(4). .......... 4
N.Y. Priv. Hous. Fin. Law § 575 (McKinney). .......... 10
NYC Admin. Code § 11-412.1(h).......... 5
NYC Admin. Code 11-401 (4).......... 7
PHFL § 547 (3)(a), (4) .......... 4
Section 11-401.1 .......... 8,9
Section 11-401.4 .......... 9
Section 404 of Chapter 4, Title 11 of the Code .......... 6
Tax Law § 165 .......... 6

Plaintiffs 1600 Nelson Avenue Housing Development Fund Corporation, and the individual named plaintiffs ("Plaintiffs") hereby submit this memorandum of law in opposition to Defendants' motions to dismiss the complaint. Currently, there are pending two motions.[1]

## PRELIMINARY STATEMENT

This case involves Municipal Defendants' misuse of New York City's Third Party Transfer ("TPP") Program to seize Plaintiffs' property, and transfer title to Non-Municipal Defendants, under the guise of tax collection. The TPT Program does not actually serve any tax collection purposes because Municipal Defendants did not collect any of the taxes or charges that were the alleged basis in the state court for its judgment of foreclosure, seizure and extinguishment of Plaintiffs' title and value in the subject property. Instead, Municipal Defendants used the purported charges as a pretext or a "toehold" [2] to advance the City's desire to seize and transfer Plaintiffs' private property without the constitutional detail of noticing the illegal seizure, or otherwise paying for the illegal taking. As the Court in Dorce v. City of New York, 2 F.4th 82 (2d Cir. 2021) recently confirmed, there is no mechanism in the TPT Program for Plaintiffs to receive compensation for any value of their property in excess of their tax liability once the transfer is complete. Plaintiffs thus ask the Court to find that the municipal statute under which the Municipal Defendants execute the TPT Program unconstitutional as applied, and otherwise illegal and thus

---

1 The first was filed by the City of New York (City's ECF Nos. 16 through 18) on behalf defendants the City of New York, Adolpho Carrion, Jr. Commissioner of the New York City Department of Housing Preservation and Development, and Preston Niblack, Commissioner of the New York City of Department of Finance (collectively "Municipal Defendants"). The second was filed by defendants, Neighborhood Restore Housing Development Fund Corporation ("Neighborhood Restore") and Bronx Pro Group, LLC ("Bronx Pro") (ECF Nos. 19 & 20) (collectively, the "Non-Municipal Defendants").

2 See Tyler v. Hennepin County, Minnesota, et. al., 598 U.S. 631 (2023) ["But it could not use the toehold of the tax debt to confiscate more property than was due. By doing so, it effected a "classic taking in which the government directly appropriates private property for its own use." Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 535 U. S. 302, 324 (2002) (internal quotation marks and alteration omitted)."

void. Plaintiffs assert fifteen (15) causes of action, alleging violation of the Takings Clause (Counts I and VI), Equal Protection (II V, and VII), Due Process (III and VIII), Excessive Fines (IV and IX), Conversion (X), Unjust Enrichment (XI), Municipal Home Rule, NY GBL § 349 (Deceptive Practices) (XIII), and seeking equitable relief (XIV and XV).

The motions to dismiss by Municipal and Non-Municipal Defendants are completely lacking in merit. Counts I-XI and XIII of the Complaint are not time-barred since these claims did not accrue until Plaintiffs learned that they would not be paid just compensation for the taking of the Subject Property. The claims also did not become "ripe" for statute of limitations purposes until September 15, 2022, when the New York State Court of Appeals issued its decision in In rem Tax Foreclosure Action No. 52 & City of New York v. 1600 Nelson Avenue, HDFC, 38 N.Y.3d 1171 (2022), denying leave to appeal. Indeed, the NY Court of Appeals denied leave to appeal not merely on "procedural grounds" as Non-Municipal Defendants assert in a slight of hand (MOL 3), but precisely because the orders of the NY Supreme Court and Appellate Division did not "finally determine the action within the meaning of the Constitution."[3] Nor does the *Rooker-Feldman* Doctrine (see Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed. 206 (1983)) require dismissal of the entire complaint. The Court in Dorce, *supra*, confronting the very issue of the interplay of the TPT Program and the *Rooker-Feldman* Doctrine, found that "*the Rooker-Feldman* doctrine does not bar Plaintiffs' equal protection and due process claims, or their second taking claim – that their property was taken for a public purpose without just compensation – to the extent that for each of those claims, they seek only the value of their lost property in excess

[3] A copy of the Decision of the NY Court of Appeals is annexed as Exh.1 to Declaration of Jesse Gribben, dated July 29, 2024. A copy of the Decision and Order of the Supreme Court is annexed as Exh. 2; the Decision and Order of the Appellate Division is annexed as Exh. 3. Thus, there is currently pending before the State of NY Supreme Court a motion to renew. See Gribben Decl. Exh. 4.

of the amount owed in taxes." Similarly, dismissal of Plaintiffs' state constitutional claims is not warranted. Indeed, the Court in Dorce, *supra*, rejected this very same argument by Municipal Defendants, vacating the "district court's decision not to exercise supplemental jurisdiction over Plaintiff's state law claims." Dorce, 2 F.4th 82, 108. Lastly, Non-Municipal Defendants are properly joined as defendants in this lawsuit. While they are not local government units, they are liable under § 1983 as a result of the close nexus and joint activity between them and the City.

Notwithstanding the self-evident sufficiency of the Complaint and the ordinary limits on judicial inquiry at this stage, Plaintiffs welcome Municipal Defendants' invitation to the Court to consider also those "documents that are incorporated by reference in the complaint [and] documents that plaintiff relied on … as well as documents filed in other court proceedings." MOL 2, citing Ladeairous v. AG of N.Y., 592 Fed. Appx, 47, 48 (2d Cir. 2015). Even at this initial juncture, there is an important story to tell, part of which is Plaintiffs' ongoing efforts to ensure that all relevant proof is properly before the Court, despite Defendants' relentless, unending efforts to preclude key evidence, and deny Plaintiffs their day in Court.

**FACTUAL ALLEGATIONS IN THE COMPLAINT**

Contrary to Defendants' presentation, this case is not a challenge to "a tax foreclosure" by Plaintiffs, taxpayers aggrieved by the City taking their property because of failure to pay taxes and other liens. Rather, the Complaint explicitly asserts that the Plaintiffs' Property was taken from Plaintiffs in bad faith manipulation of Plaintiffs' property rights [Compl. ¶¶ 1-19; without notice [*id.* ¶¶20-24]; with no opportunity to be heard [*id.*]; for purposes other than tax collection [*id.* ¶¶ 101-103]; even though the tax charges had not ripen to statutory liens, and amounted to a fraction of the value of the property [*id.* ¶¶ 96-100]; and the property was not distressed, the *sine qua non* of the TPT Program [*id.* ¶¶ 83-87].

A. Background

The essential facts are not in dispute. Plaintiffs' property is a multi-family, mixed-use building, consisting of a 26-apartments and 4-commercial-units. Compl. ¶ 50. It is located at 1600 Nelson Avenue, Bronx, New York 10453 in Bronx, New York (the "Building" or "Subject Property"). *Id.* ¶ 49. Plaintiff 1600 Nelson Avenue Housing Development Fund Corporation ["1600 Nelson"] is organized under Article XI of the New York State Private Housing Finance Law. *Id.* ¶ 48. It has owned the Building as a cooperative since November 20, 1986. *Id.* ¶ 49. Pursuant to PHFL § 547 (3)(a), (4), HDFC cooperatives are non-profit corporations organized "exclusively to develop a housing project for persons of low income," in which "persons who are entitled to occupy in such [a] housing project" own "shares in the corporations. N.Y. Priv. Hous. Fin. Law § 573(3)(a),(4). Plaintiffs Isabel Adon, et al. became owners of their particular units by virtue of their pro-rata ownership in Plaintiff 1600 Nelson and have an equity interest in the Building, including but not limited to the four (4) commercial units, leases and rental income derived therefrom. Compl. ¶¶ 51-65.

B. The City Illegally Confiscated Plaintiffs' Property

On July 7, 2015, the City commenced *in rem* foreclosure proceedings against scores of properties, including Plaintiffs' Property, purportedly because of unpaid charges that accrued from water, sewage and/or emergency repairs made by the City. However, none of the Plaintiffs received notice of the commencement of these proceeding, nor did the City or the Municipal Defendants comply with any of the additional notice requirements required by the Admin. Code. *Id.* ¶ 20. In the *in rem* proceedings, Municipal Defendants alleged that $399,345.35 was assessed against the Property in municipal arrears for taxes, water and sewer charges, although only $14,392.62 of DOF Lien constituted a "tax lien" under NYC law. *Id.* ¶ 21.

On November 16, 2017, the City secured a default *in rem* judgment against the Property. None of the Plaintiffs received a notice of this default judgment. *Id.* ¶ 22. Subsequently, the City transferred titled to Non-Municipal Defendants on September 13, 2018, with the intent of depriving Plaintiff 1600 Nelson of its primary assets, reducing the value of each individual named Plaintiffs' cooperative shares, and converting the status of each individual named Plaintiff from that of a homeowner to a tenant, and/or an alleged holdover tenant or licensee. *Id.* ¶ 23. None of the Plaintiffs were notified of any of the foregoing, until approximately September 2018, when agents and/or employees of Non-Municipal Defendants knocked on their cooperative-unit doors, informed them that Defendant Neighborhood Restore was now their landlord, and sought to change the locks to the building's entrance door. None of the Plaintiffs was provided with any opportunity to claim the surplus or equity value in the properties. *Id.* ¶ 24. Nor has the City or any of the Municipal Defendants tendered a payment to any of the Plaintiffs of the surplus, or the long-term homestead value that was unlawfully taken. *Id.*

On September 26, 2018, Plaintiff 1600 Nelson Avenue moved to vacate the default judgment of foreclosure and reverse the transfer of title, contenting *inter alia* that the City had failed to provide sufficient notice of the foreclosure action. By order dated May 31, 2019, the Bronx County Supreme Court denied the motion as untimely, citing NYC Admin. Code § 11-412.1(h), which the Court interpreted as requiring any challenge to be filed within four-month after the issuance of the foreclosure judgment. See Gribben Decl. Exh. 2. On January 18, 2022, the First Department affirmed. See 201 A.D.3d 517 (1st Dep't 2022). Gribben Decl. Exh. 3. On September 15, 2022, New York State Court of Appeals denied Plaintiff 1600 Nelson Avenue Housing Development Fund Corporation's motion for leave to appeal. See 38 N.Y.3d 1171, 195 N.E.3d 529, 174 N.Y.S.3d 695, 2022 NY Slip Op 71661 (2022), holding that the orders of the NY

Supreme Court and Appellate Division "do not finally determine the action within the meaning of the Constitution." Gribben Decl. Exh. 1.

C. Statutory Scheme

Starting on or about June 3, 1939, under Section 165 of Title 3 of Article VII A of Chapter 692 of the 1939 Laws of New York State (referred to herein as "Tax Law § 165"), New York State Legislature granted to tax districts across New York State *in rem* powers for the collection of tax liens. Tax Law § 165 was further amended from time to time, including through Chapter 602 of the 1993 Laws of New York State. It is now codified as Section 1120 of the Real Property Tax Law of New York Consolidated Laws ("New York State's In Rem Grant to Municipalities"). New York State's In Rem Grant to Municipalities expressly confines the use of in rem foreclosure procedures to actions for the purpose of collecting "Tax Liens." "Tax Liens" consist of unpaid municipal charges owed to "Tax Districts" that are classified as taxes over the period of time prescribed in state and the Local Law, and at the end of this period these charges, if still unpaid, are classified as liens for collection by the Tax District. Pursuant to New York State's In Rem Grant to Municipalities, starting in 1948, New York City Council enacted *in rem* foreclosure provisions to collect Tax Liens. Those provisions are now codified in Section 404 of Chapter 4, Title 11 of the Code.

**New York City's In Rem Laws**

In April 1996, the City was granted the right by the New York City Council—but not by the New York State Legislature—to broaden and utilize the *in rem* foreclosure powers to "permit the DOF Commissioner to transfer title to a tax foreclosed [distressed] building either to the City or a third party designated by the Commissioner of HPD." The City also expanded the classification of properties that could be taken through *in rem* proceedings, and changed the

purpose for those takings. Thus, the City proposed, and New York City Council enacted an expansive statutory definition of "distressed property" under the Local Law. See Code § 11-401.4, *et seq*.

The legislative intent of the Local Law was set forth in the testimonies of HPD Commissioners Deborah C. Wright and Lilliam Barrios-Paoli before the New York City Council on January 29, 1996, and April 22, 1996, both of which make clear that one of "most critical" parts of the Local Law was to target distressed properties "for effective intervention against abandonment." Gribben Decl. Exh. 5 and 6, respectively. Indeed ¶ 11-401.1(a), (b), and (c) set forth the procedures to determine which parcels are subject to a tax lien sale, or excluded from such sale, and therefore subject to *in rem* foreclosure. Pursuant to ¶ 11-401.1(a), HPD is tasked with the duty to determine whether a property is "distressed" and to exclude from the tax lien sale any parcel deemed "distressed".

The obligation for HPD to assess whether a property is distressed is a continuing one. A property initially deemed distressed, and included in list of properties subject to *in rem* foreclosure is required to be excluded from foreclosure once it no longer meets the statutory definition of distressed. To be subject to "Modified" In Rem Foreclosure under the Local Law, the property must meet the definition of "distressed". Under the Local Law, at NYC Admin. Code 11-401 (4) "Distressed property" is defined as: (a) Any parcel of class one or class two real property that is subject to a tax lien or liens with a lien or liens to value ratio, as determined by the commissioner of finance, equal to or greater than fifteen percent and that has hazardous or dangerous conditions.

D. <u>Defendants' Illegal Conduct</u>

The Municipal Defendants, in consultation and coordination with Non-Municipal Defendants make a list of properties they want to seize, and target properties owned by elder

persons of color who are less likely to have a mortgage on their home. Compl. ¶ 93. The City receives no tax revenue when it uses the TPT Program to foreclose upon and transfer properties. After foreclosure of a property, the City transfers title to a Third Party Program Partner without requiring the Third Party Program Partner to make any payment towards the Tax Lien or other amount that served as the basis for the City's exercise of its purported powers under Code § 11-401. Instead, the City simply transfers the property in fee simple absolute, which extinguishes any outstanding Tax Liens, and then conveys the property to the Third Party Program Partner for zero dollars. *Id.* ¶ 95.

The City used the underlying summary proceeding to secure an *in rem* foreclosure judgment, resulting in Plaintiffs losing all of the surplus or equity value in the Subject Property. There is no method pursuant to which Plaintiffs may claim the Surplus (the amount in excess of the amount claimed as a Tax Lien by the City, as exists with Tax Lien foreclosure sales resulting from judicial foreclosure proceedings). See Code §§ 11-401 – 428. Section 11-404 et seq. of the Code specifies that amounts owed to the City do not provide a basis to use summary in rem foreclosure proceedings until the owed amounts may be designated as Tax Liens. However, the Municipal Defendants utilized Code § 11-404(a) to seize or otherwise take the Subject Property. Compl. ¶ 97. Subsection 4 of the Definitions section - § 11.401- specifies the bases on which DOF and HPD are required to designate a property as a distressed property, before the *in rem* foreclosure proceeding can be commenced. But Municipal Defendants used the underlying proceedings to seize the Subject Property even though it did not meet the bases or requirements for being designated as "distressed" by DOF and HPD under Code § 11-401.4. Section 11-401.1 mandates that DOF and HPD follow certain procedures before commencing in rem foreclosure proceedings. See Code 11-401.1, et seq. Municipal Defendants used the proceedings to seize the

Subject Property even though they have failed to demonstrate compliance with these procedures. Moreover, Municipal Defendants used the proceedings to seize the Subject Property even though the amount of the Tax Lien asserted by the City comprises a small fraction of the value of the property. From 2015, the Municipal Defendants utilized § 11-404 et seq. for the purpose of advancing the City's (and it's then Mayor's) affordable housing program. Compl. ¶ 101.

In papers submitted in the State Courts from 2019, the City has asserted that it is not limited to only seizing properties that meet the definition of "distressed property" under Section 11-401.4 of the Code, in order to advance the purported affordable housing plain set by then Mayor de Blasio. Compl. ¶ 103. However, neither the City nor HPD or DOF sought or obtained authority from the New York Council to broaden or expand the purpose for which it currently utilizes The Local Law. Nor has the City sought authority from the New York State Legislature to expand the New York State In Rem Grant to Municipalities to advance the Plan.

E. Plaintiffs' Injuries

Following the seizure and transfer of the Title to the Building, neither Plaintiff HDFC nor any of the Shareholder Plaintiffs had any means or mechanism to obtain the Surplus or Excess of the Subject Property. At the time that the Municipal Defendants seizure of Plaintiff's Property, the alleged municipal arrears for taxes, water and sewer charges assessed against the subject property were a fraction of the Subject Property's market value. At the time that the Municipal Defendants seizure, the value of the Subject Property as far in excess of ten million dollars ($10M). Compl. ¶ 28. However, to date, neither the City nor any of the Municipal Defendants have paid any of the Plaintiffs for the surplus or equity value of the Subject Property it unlawfully seized.

In addition to losing their homesteads, their family legacies, their proprietary leases, and the value of their coop shares, Plaintiffs have also lost the protections that come from being part

of an HDFC, including long term stability and affordable housing as owners. Indeed, the central purpose of HDFCs is to provide long term homeownership to low-income individuals and families who would otherwise be unprotected from the dislocation of market forces, harassment, overcharges, dislocation or displacement from landlord-tenant relationship. See, N.Y. Priv. Hous. Fin. Law § 575 (McKinney).

This is not just a theoretical or philosophical exercise. Many of the individual Plaintiffs are facing eviction proceedings, and the real world possibility of eviction and homelessness. See Gribben Decl. Exhibit 7.

## ARGUMENT

### A. RULE 12(B) STANDARDS ARE SATISFIED IN THE INSTANT CASE

In the context of Defendants' Rule 12(b)(6) motions to dismiss, the Court's duty is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." DiFolco v. MSNBC Cable LLC, 622 F.3d 104 (2d Cir. 2010). Simply put, "t(h)e issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Scheur v Rhodes, 416 US 232 (1974). In fact, it may even "appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Walker v. Schutt, 717 F.3d 119 (2d Cir. 2013).

The Supreme Court requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief" Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).

The Court went on to note two "working principles" to judge the sufficiency of a complaint: first, courts must accept as true all allegations in a complaint but not legal conclusions, and second, only a complaint that states a plausible claim for relief survives a motion to dismiss:

> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task

> that requires the reviewing court to draw on its judicial experience and common sense.

Iqbal, *supra*, 129 S. Ct. at 1950.

The Second Circuit has adopted the seminal "plausibility" standard set forth in Iqbal. See e.g., Fin Guar Inc. Co. v. Putnam Advisory Co., LLC, 783 F.3d 395 (2d Cir. 2015). Thus, a motion to dismiss based on the affirmative defense of statute of limitations may be granted only "if the defense appears on the face of the complaint." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004).

As detailed below, the Complaint more than satisfies these standards.

## B. COUNTS I-XI AND XIII OF PLAINTIFFS' COMPLAINT ARE PROPERLY AND TIMELY PLED

Defendants' threshold argument is that the statute of limitations for Counts I-XI and XIII of Plaintiff's Complaint began running no later than September 13, 2018, when Municipal Defendants transferred title to the Plaintiffs' Property to Non-Municipal Defendants. MOL 8. Plaintiffs assert violation of the Takings Clause (Counts I and VI), Equal Protection (II, V, and VII), Due Process (III and VIII), Excessive Fines (IV and IX), Conversion (X), Unjust Enrichment (XI), and Municipal Home Rule, NY GBL § 349 (Deceptive Practices) (XIII), resulting from Defendants taking their Property without any compensation, without a legitimate public use necessary to justify a taking, while motivated by purposes other than tax collection. Plaintiffs further assert that Municipal Defendants did not comply with the statutory provisions of Local Law No. 37, and that the statutory notice requirements of Local Law No. 37 are constitutionally deficient. Defendants' argument that Plaintiffs' Counts I-XI and XIII are bared by the statute of limitations must be rejected for five reasons.

First, New York Courts have long recognized that "a challenge to the constitutionality of a

notice provision, where the party had no timely notice, is not barred by the Statute of Limitations". ISCA Enterprises v. City of New York, 77 N.Y.2d 688, 698, 572 N.E.2d 610, 614, 569 N.Y.S.2d 927, 931, (1991); see also, Hatorah v. New York, 175 A.D.2d 795, 796, 573 N.Y.S.2d 94, 95(2d Dept., 1991. The Second Circuit has adopted this. In MacNaughton v. Warren County, 123 Fed. Appx. 425, 427, 2005 U.S. App. LEXIS 1393, *5, the Court quoting ISCA Enterprises, *supra*, held: "It is clear under New York law that the statute of limitations is inapplicable in a case where the plaintiff fails to receive notice, as here. In a case very similar to the present case, the New York Court of Appeals held that plaintiffs' suit was not barred by the statute of limitations." Accordingly, Defendants' argument must fail here since Plaintiffs allege that they have never received timely notice.

Second, the claims did not accrue merely with the transfer of deed. A claim accrues only when "the plaintiff has or ... should have discovered the critical facts of both his injury and its cause." *A.*Q.C. ex rel. Castillo v. United States, 656 F.3d 135, 140 (2d Cir. 2011)); Parisienne v. Scripps Media, Inc., No. 19 CIV. 8612 (ER), 2021 WL 3668084, at *4 (S.D.N.Y. Aug. 17, 2021)(finding plaintiff did not have a "duty to police" possible claims before counsel brought certain facts to plaintiff's attention); Roque v. United States, 676 F. Supp. 2d 36, 42 (D. Conn. 2009)(finding that although plaintiff knew many facts about alleged injury several years before, accrual did not begin on his tort claim until later when more circumstances about the injury became known); *see also* Grancio v. De Vecchio, 572 F. Supp. 2d 299, 309 (E.D.N.Y. 2008) (finding media coverage of an event was not enough to begin accrual of the statute of limitations). A takings claim only accrues when the government has both physically seized a property and denied its owner just compensation. Knick v. Township of Scott, Pennsylvania, 139 S.Ct. 2162, 2181 (2019) Therefore, Plaintiffs' claims here could not accrue until Plaintiffs

learned that they would not be paid just compensation for the properties. Here, the City never communicated to Plaintiffs the fact that they would not receive any compensation for their surplus or equity value in the Subject Property taken.

Third, up until June 2019, Plaintiffs could not even have commenced the instant litigation because Supreme Court precedent required pending state court proceedings to be exhausted prior to commencing a § 1983 claim in federal court based on an unjust taking. However, on June 21, 2019, the Supreme Court issued its decision in Knick v. Township of Scott, Pa., supra, overruling its decision in *Williamson*, and changing when a takings claim pursuant to § 1983 is considered "ripe."

In *Sagaponack Realty, LLC v. Vill. of Sagaponack*, 778 F. App'x 63, 64 (2d Cir. 2019), the Second Circuit has explained *Knick*'s holding as follows:

> Before the Supreme Court's recent decision in *Knick* . . ., the law in the Second Circuit provided that a takings claim was not ripe unless the property owner could show "that (1) the state regulatory entity has rendered a 'final decision' on the matter, and (2) the plaintiff has sought just compensation by means of an available state procedure." (citations omitted). *Knick* eliminated the state-exhaustion requirement as "an unjustifiable burden on taking plaintiffs. . . ." 139 S. Ct. at 2167. But *Knick* leaves undisturbed the first prong, that a state regulatory agency must render a final decision on a matter before a taking claim can proceed. *See* *id.* at 2169 ("Knick does not question the validity of this finality requirement, which is not at issue here.").

So long as "avenues still remain for the government to clarify or change its decision," the decision is not final and a takings claim is not ripe. Pakdel v. City & County of San Francisco, 141 S. Ct. 2226, 2230, 210 L. Ed. 2d 617 (2021). In Kleinknecht v. Ritter, 2023 U.S. App. LEXIS 1851, *6-7, 2023 WL 380536, the Second Circuit found that a litigant must seek at least make one meaningful attempt at a change of the underlying decision before litigating a takings claim in federal court, noting in the context of land use application that where a developer has an

opportunity to seek a variance after his permitting application is denied, he must do so before properly commencing litigation in federal court. *See also* Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 348 (2d Cir. 2005) (explaining that federal review of a takings claim is conditioned "on a property owner submitting at least one meaningful application for a variance"). Nevertheless, a property owner need not apply for a variance when doing so would be futile, such as when the zoning agency "has dug in its heels and made clear that all such applications will be denied." *Id.* at 349.

In the instant case, Plaintiffs' takings claim became ripe only upon the NY Court of Appeals' denial of Plaintiff 1600 Nelson's motion for leave to appeal on September 15, 2022. Prior to the US Supreme Court's decision in Tyler v. Hennepin County, Minnesota, 598 U.S. 631 (2023), which triggered Plaintiffs' pending motion to renew before the state trail court (see Gribben Decl. Exch. 4), the September 15, 2022 Court of Appeals' decision is when the City's decision could arguably be called "final", as it then foreclosed any avenue to clarify or change its decision in this matter. See, Pakdel, *supra.* It is also the conclusion of Plaintiff 1600 Nelson's one meaningful attempt at a change of the underlying decision before resorting to litigating a takings claim in federal court. See, Murphy, *supra.*

Fourth, the continuing-violation doctrine creates an exception to the state law limitations period of three years from the date of a plaintiff's injury or discovery or reason to know of his or her injury. Where such claims are "composed of a series of separate acts that collectively constitute one unlawful … practice," the plaintiff may seek relief beyond the limitations period, so long as at least one non-time-barred act contributed to the violation. Lucente v. City of Suffolk, 980 F.3d 284, 309 (2d Cir. 2020).

The continuing-violation doctrine has long applied to constitutional claims brought under

§ 1983 in the Second Circuit. To establish a continuing-violation, Plaintiffs must show an ongoing policy of unconstitutional acts or omissions and some non-time-barred acts that furthered that policy. A claim subject to this doctrine continues to include wrongful acts for as long the defendant perpetuates the misconduct. See, e.g., Sherman v. Town of Chester, 752 F.3d 554, 566-67 (2d Cir. 2014)(applying doctrine in § 1983 land use case); Fahs Constr. Grp., Inc. v. Gray, 725 F.3d 289-291-92 (2d Cir. 2013) (applying doctrine to Equal Protection Claim); Shomo v. City of NY, 579 F.3d 176, 182 (2d Cir. 2009) (applying to 8th Amendment claim).

Here, there are ample proof a continuing violation. Defendants' contention that transfer of the deed to Non-Municipal Defendants was a "discrete" act fails to vindicate the Supreme Court's admonition in Palazzalo v. Rhode Island, 533 U.S. 606, 621 (2001) that government authorities not impose undue burden, replete with byzantine or unfair procedures. Municipal Defendants recognize that the illegal taking is not merely the transfer of title without notice to Plaintiffs, but also the lack of compensation and current attempts by Non-Municipal Defendants to use the local Courts to evict the individual named Plaintiffs from their homes. Thus, Municipal Defendants concede that Plaintiffs have established a continuing-violation and future harm, noting that the Complaint alleges that "certain of the Plaintiffs … are currently facing eviction." See City's Brief at p. 16.

Thus, rather than a discrete act, Municipal Defendants' transfer of the deed was one of a series of acts to deprive Plaintiffs of their rights long after the transfer of the deed. After all, state law provides for a right to vacate a judgment entered by default. See CPLR § 317 and 5015. Plaintiff 1600 Nelson sought such a relief. Defendants could have remedied much if not all Plaintiffs' injuries had they not opposed Plaintiff 1600 Nelson's Order to Show Cause to vacate the default judgment. Instead, they continued with their conscience-shocking conduct. That the

state courts ignored Plaintiffs' injuries does not inoculate Defendants from Plaintiffs' claims. See Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 156–158, 160–164 (1980) ("Neither the Florida Legislature by statute, nor the Florida courts by judicial decree, may accomplish the result the county seeks simply by re-characterizing the principal as 'public money' because it is held temporarily by the court."). See also, In Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot., 560 U.S. 702 (2009) (in a plurality opinion, Justice Scalia (joined by three justices) recognized that the Takings Clause—unlike many constitutional provisions—"is not addressed to the action of a specific branch or branches," but is instead "concerned simply with the act" of taking private property without just compensation. Stop the Beach, 560 U.S. at 713–14). Based on the plain constitutional text, the plurality concluded that "the Takings Clause bars the State from taking private property without paying for it, no matter which branch is the instrument of the taking." Stop the Beach, 560 U.S. at 715. Under the plurality's test, "[i]f a legislature or a court declares that what was once an established right of private property no longer exists, it has taken that property[.]" Id. at 715, 717.

Fifth, New York and the Second Circuit provide for tolling of the statute of limitations under certain circumstances present here. See, e.g. Lopez v. Annucci 690 Fed. Appx., 56, 59 (2d Cir. 2017) (reversing because the District Court did not consider all potential bases for tolling, noting that in "rare and exceptional circumstances," or "where "extraordinary circumstances" a party can be prevented from timely performing a required act, and that the party "acted with reasonable diligence throughout the period [sought to be tolled]". See also, Abbas v. Dixon, 480 F.3d 636, 642 (2007) (Under New York law, the doctrines of equitable tolling "may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.").

In the instant case, there are both "extraordinary circumstances" and allegations of fraud, misrepresentations or deception on the part of the Defendants triggering the equitable tolling. First, the holding **in Tyler, *supra*,** that surplus equity was "property" and thus susceptible to a Takings claim means there was sufficient "extraordinary circumstance" to toll the statute of limitations, as this was the first time the Court has laid down this rule of law. Further, Plaintiffs here assert that the Municipal Defendants instituted the *in rem* proceeding with actual knowledge that they were not providing notice reasonably calculated to inform Plaintiffs of the proceeding, and that the statutory notice requirements themselves are constitutionally deficient for the purposes for which Defendants apply them. Plaintiffs further assert that Municipal Defendants failed to notify them of any of the subsequent proceedings before the state trial court. Plaintiffs also assert that Defendants pursued fraudulent course of conduct in obtaining the foreclosure judgment, transfer of title, and eviction proceedings. Plaintiffs further assert that Defendants have taken their Property without paying for it, and continue to refuse to do so. Plaintiffs also assert Defendants lack a legitimate public use necessary to justify a taking. See, Haw. Hous. Auth. V. Midkiff, 467 U.S. 229, 245 (1984) ("A purely private taking could not withstand the scrutiny of the public use requirements; it would serve no legitimate purpose of government and would thus be void.") Plaintiffs credibly allege that Defendants' tax enforcement is a pretext for political or other non-public purposes. See also, Kelo v. City of New London, Conn, 545 U.S. 469, 477 (2005) ("Nor would the City be allowed to take property under the mere pretext of a public purpose, when its actual purpose was to bestow a private benefit.") There exist issues of fact as to Defendants' purpose in effecting the TPT Program. Without the aid of discovery, a motion to dismiss on statutes of limitation grounds is inappropriate and premature. Brody v. Brody, 2009 WL 436404, P. 3 (S.D.N.Y 2009)[Reversing because "the District Court should not

have resolved the fact-specific equitable tolling issue on defendants' motion to dismiss [because w]hen ... facts are disputed, the best practice is to analyze [the] question ... in the context of summary judgment"]. See also, Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc., 51 F.Supp.2d 457, 468 (S.D.N.Y.1999) ("[I]f a factual question exists, a court should deny the motion to dismiss based on statute of limitations grounds."). Based upon the foregoing, the Court should deny Defendants' motions to dismiss.

## C. THE COURT IS VESTED WITH JURISDICTION TO ENTERTAIN PLAINTIFFS' MUNICIPAL HOME RULE LAW CLAIM

Municipal Defendants contend that Plaintiffs' Municipal Home Rule Law claim (Count XII) should be dismissed because "the Court has no basis to exercise supplemental jurisdiction over" it, since the federal claims must be dismissed as time barred. See MOL 10-11. Contrary to Municipal Defendants contention, and as demonstrated above, the federal claims are in fact timely and properly pled. Municipal Defendants' reliance upon Rizvi v. Town of Wawarsing, 654 Fe. Appx. 37, 39-40 (2d Cir. 2016); and Carnegie-Mellon Univ. Cohill, 484 US.343, 350 n.7 (1988) is therefore misplaced inasmuch as the federal claims in the instant case should not be eliminated before trial.

Exercising supplemental jurisdiction in this matter is well within the Court's discretion. 28 U.S.C. § 1367 ("section 1367") governs a district court's exercise of supplemental jurisdiction.[4] For purposes of section 1367(a), claims "form part of the same case or controversy" if they "derive from a common nucleus of operative fact." Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373

4 Subsection (a) of section 1367 provides: (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. . 28 U.S.C. § 1367(a) (2006).

F.3d 296, 308 (2d Cir. 2004). Here, Plaintiffs' federal and state claims arose "out of approximately the same set of events". Salim Shahriar v. Smith & Wollensky Rest. Group, Inc., 659 F.3d 234, 245, 2011 U.S. App. LEXIS (2d Cir. 2004). Where section 1367(a) is satisfied, "the discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of subsection 1367(c)." Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 448 (2d Cir. 1998) (emphasis supplied). None of the enumerated category of subsection 1367(c) is present in the instant case. Plaintiffs' claims do not raise a novel or complex issue of state law. To the contrary, Plaintiffs' claims raise simple and fundamental questions of whether Plaintiffs' property can be taken without due process of law, for lack of public purpose, and without just compensation. Second, the state claims do not predominate over the federal claims. Third, the Court should not dismiss all of Plaintiffs' federal claims.

Municipal Defendants also contend that the Plaintiffs' complaint is not properly pled because it fails to specify how the City exceeded its authority. See MOL 11. Because state governments generally have plenary lawmaking power, political subdivisions can only exercise such power to the extent delegated by the State. Boening v. Nassau Cty. Dep't of Assessment, 69 N.Y.S.3d 666, 669 (N.Y. App. Div. 2018). For a local taxing law to be valid, the state legislature must delegate the power of taxation in "express terms," as the delegation "cannot be inferred." Id. The State clearly did not authorize Defendants to steal people's private property through an illusory process that uses tax collection as a pretext, which is precisely what Defendants are doing here. Defendants argue that the City has authority to take ultra vires actions (outside of its grant of authority from the New York State legislature and the New York State Constitution) and enact its own in rem laws for purposes other than tax collection. See MOL 11. The City claims that, on its own initiative, it broadened its own authority to utilize in rem proceedings. However, Defendants

offer no explanation as to the source of this claimed inherent authority, and cite no statutory, constitutional, case law or other authority for the proposition that the City can simply enact laws because it wishes to enhance some "goal." See MOL 4, and passim. Defendants couch their entire argument as if they are actually enforcing a taxation statute, even though Defendants do not refute the Complaint's central allegation that the City collects no taxes through the TPT Program and, in contrast, actually extinguishes all tax liability associated with properties seized through the TPT Program. See, e.g., Compl. ¶¶ 101-103; (alleging the City collects no tax liens through the TPT Program). Additionally, Defendants admit that the City authorized itself to dispose of residential properties utilizing an in rem process for a purpose other than tax collection. MOL at 4. Indeed, because Plaintiffs credibly allege that the taxing-aspect of Defendant's co-called "modified in rem process" is a pretext, Defendants can obtain no protection from the Municipal Home Rule Law's authorization of local laws relating to tax collection. Municipal Home Rule Law § 10(1)(ii)(a)(8). Thus, Plaintiffs more than adequately plead a claim for violation of the Municipal Home Rule Law. See, e.g., Baldwin Union Free Sch. Dist. v. Cty. of Nassau, 9 N.E.3d 351, 361 (N.Y. 2014) (law invalid because "the legislature [did not] specifically authorize[] the County to enact local legislation"); Kamhi v. Town of Yorktown, 547 N.E.2d 346, 348–49 (N.Y. 1989) (holding that a town's attempt to require a property owner to pay money or contribute parkland as a condition of developing a condominium project invalid). In addition, Local Law No. 37 violates New York State's Home Rule. See, e.g., City of Amsterdam v. Helsby, 332 N.E.2d 290, 292 (N.Y. 1975) (local laws relating to "property, affairs or government" may not be inconsistent with the provisions of the Constitution or of any general law).

## D. THE ROOKER-FELDMAN DOCTRINE DOES NOT NEGATE JURISDICTION

Next, Defendants argue that the Complaint would be barred in part and to the "extent it

seeks damages above surplus or excess value." MOL 11. Dismissal is not warranted here because Rooker-Feldman doctrine does not apply. In Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005), the Supreme Court confirmed that the Rooker-Feldman doctrine is "narrow" and essentially stands for the limited proposition that a state court litigant cannot appeal a state court decision directly to a federal district court. 544 U.S. 280, 284 (2005) (holding that the Rooker-Feldman doctrine is "confined to cases . . . brought by state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"); see also Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005) ("Rooker and Feldman thus established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments"). Because Plaintiffs bring independent federal claims and do not seek to appeal any state court decision, Rooker-Feldman has no application here.

There are four requirements for the Rooker-Feldman doctrine to negate jurisdiction: (1) the federal-court litigant lost in state court; and (2) the state court litigant complains of injuries caused by the state court judgment; and (3) the state court litigant invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced. Green v. Mattingly, 585 F. 3d 97, 101 (2d Cir. 2009); see also Baretta v. Wells Fargo Bank, N.A., 693 F. App'x 26, 28 (2d Cir. 2017). Defendants cannot even make a *prima facie* showing that the doctrine applies because none of the individual Plaintiffs in this action were even parties to prior state court actions, much less losers in them. See Lance v. Dennis, 546 U.S. 459, 464–66 (2006) ("[W]e have held Rooker-Feldman inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding."); Johnson v. De Grandy, 512 U. S. 997, 1005–06 (1994) (Rooker-Feldman does not bar actions by a nonparty to

the earlier state suit). The prior state court actions name the respective parcel of property, not Plaintiffs herein, as defendants. For this reason, Defendants' reliance upon Vossbrinck v. Accredited Home Lenders, Inc.,773 F.3d 423 (2d. Cir. 2014) is misplaced. Vossbrinck was a party to a foreclosure action by a private lender, in which the action is against the borrower. Id. at 425. This is entirely different than an in rem proceeding against a property directly. Additionally, Vossbrinck supports Plaintiffs because it confirms that Rooker-Feldman has no application to claims that were not litigated in state court, even if they concern related factual matters. Id. at 427 (Rooker-Feldman has no application to fraud claims that do "not require the federal court to sit in review of the state court judgment" and where if it applies, the proper procedure is remand, not dismissal).

Defendants also fail the fourth prong. Municipal Defendants argue that Plaintiffs have lost in state courts three times, all before Plaintiffs commenced the within action. MOL 12. However, Plaintiffs are presently seeking leave from the Bronx County Supreme Court to renew Plaintiff 1600 Nelson's motion to vacate the underlying default judgment. See Gribben Decl. Exh. 4. Thus, the state court proceedings have arguably not ended within the meaning of Rooker-Feldman on the federal questions at issue. See, Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 292, (2005) ("When there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court. This Court has repeatedly held that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *McClellan* v. *Carland*, 217 U.S. 268, 282, 54 L. Ed. 762, 30 S. Ct. 501 (1910). Comity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation. (Citations omitted). But neither *Rooker* nor *Feldman* supports

the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court. See also, Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R., 410 F.3d 17, 24, 2005 U.S. App. LEXIS 9748, *17-18.[5] Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85, (2d Cir. 2005)[6]

Moreover, even if all of the prongs of the doctrine had been met—which they have not—the doctrine does not apply to general constitutional challenges to the validity of a statute. See Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 (1983); see also Fullerton Ave. Land Dev. Ltd. v. Cianciulli, 48 F. App'x 813, 815 (2d Cir. 2002). As set forth in the Complaint, the TPT Program represent a continued threat to Plaintiffs (see Compl. ¶ 4, namely imminent and credible threat of eviction. See also Susan B. Anthony List v. Driehaus, 573 U.S. 149, 159 (2014) ("[A] plaintiff satisfies the injury-in-fact requirement where . . . there exists a credible threat" that an alleged unconstitutional law will be enforced) (quoting Babbitt v. Farm Workers, 442 U.S. 289, 298 (1979). Finally, applying Rooker-Feldman in this case would also run contrary to Knick, which confirms that a victim of an illegal taking has an immediate right to proceed to federal court under Section 1983 regardless of any procedures a State may have set up. 139 S.Ct. at 2169–70.

Based upon the foregoing, the request for dismissal is premature and inappropriate. While Municipal Defendants' reliance on Dorce, *supra,* is misplaced because the facts of that case are clearly and easily distinguishable inasmuch the instant case has not ended in state courts within

[5] "If federal litigation is initiated *before* state proceedings have ended, then -- even if the federal plaintiff expects to lose in state court and hopes to win in federal court -- the litigation is parallel, and the *Rooker-Feldman* doctrine does not deprive the court of jurisdiction"

[6] "*Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation".

the meaning of Rooker-Feldman, Dorce does however confirm that Plaintiffs have viable claims. The Complaint may need to be amended to cure any defects, but it should not be dismissed.

### E. NON-MUNICIPAL DEFENDANTS ARE PROPERLY JOINED

Non-Municipal Defendants are properly joined in this case. The Complaint alleges that while they are not local government units, they are liable as a result of the close nexus and joint activity between them and the City. Among other things, Plaintiffs assert that the Non-Municipal Defendants have acted and are acting under color of state law in accepting properties transferred to them under the TPT Program. See Compl. ¶ 109. Plaintiffs make clear the close nexus and joint activity between the Defendants, alleging that Municipal Defendants rely on Non-Municipal Defendants to implement their housing plan. *Id.* ¶ 3. Plaintiffs assert that Non-Municipal Defendants consult with the Municipal Defendants concerning the selection properties for inclusion in the TPT Program and target properties generally owned by elderly persons of color, including Plaintiffs. *Id.* ¶72. Plaintiff also allege that Non-Municipal Defendants, through coordination with the City obtained title to the property previously owned by Plaintiffs when Municipal Defendants transferred those properties under the TPT Program. *Id.* ¶ 74. The former provide valuable properties, including Plaintiffs' Property, for free. Id. ¶ 95. Significantly, it is important to note that Non-Municipal Defendants are doing the dirty work of instituting eviction proceedings against Plaintiffs. *Id.* ¶44; see also Gribben Decl. Exhibit 7.

To hold non-government defendants liable under § 1983, a plaintiff must show that the "the private actor 'is a willful participant in joint activity with the State or its agents," Drayton v. Toys 'R' Us Inc., 645 F. Supp. 2d 149, 162, 2009 U.S. Dist. LEXIS 64214, *31. "Private parties conspiring with [a state official are] acting under color of state law . . . ." Dennis v. Sparks, 449 U.S. 24, 27-28 (1980); *see also* Rounseville v. Zahl, 13 F.3d 625, 633 (2d Cir. 1994)(involvement

of state actor in a conspiracy may ground § 1983 claim against the other conspirators). Even if the state actors are absolutely immune from suit, private parties who conspire with them may be held liable for damages. *Dennis*, 449 U.S. at 28; Rounseville, 13 F.3d at 633; Dykes v. Hosemann, 743 F.2d 1488, 1494 (11th Cir. 1984), *rev'd in part on other grounds*, 776 F.2d 942 (11th Cir. 1985) (en banc), and *modified*, 783 F.2d 1000 (11th Cir. 1986).

Here, Plaintiffs have shown Non-Municipal Defendants' willful participation in all facets of the entire TPT Program. See Complaint ¶¶ 154-164.

## F. REQUEST FOR INJUNCTIVE RELIEF

Pursuant to the Civil Rights Attorneys' Fees Awards Act of 1976, Plaintiffs are entitled to declaratory relief, injunctive relief, and attorneys' fees. See, e.g, Civic Ass'n of Deaf of New York City, Inc. v. Giuliani, 915 F. Supp. 622, 625 (S.D.N.Y. 1996) (granting declaratory and injunctive relief against municipal actors).

## CONCLUSION

For the foregoing reasons, the motions to dismiss should be denied in their entirety. Alternatively, Plaintiffs should be granted leave to amend the Complaint to address any purported pleading deficiencies, or issue an appropriate stay pending the resolution of the state proceedings.

Dated: New York, New York
July 29, 2024

Respectfully submitted,
**HIMMELSTEIN MCCONNELL GRIBBEN & JOSEPH LLP**

/s/ Jesse Gribben

By:______________________

Jesse Gribben
15 Maiden Lane, 17th Floor
New York, New York 10038
Tel: (212) 349-3000
Email: jgribben@hmgjlaw.com
Attorneys for Plaintiffs