UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ISABEL ADON, et al.,

        Plaintiffs,

   -v-                                No.  23-CV-9616-LTS

CITY OF NEW YORK, et al.,

        Defendants.

-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        Plaintiffs, 1600 Nelson Avenue Housing Development Fund Corporation ("1600 Nelson HDFC") and fourteen individuals (the "Individual Plaintiffs") who allegedly held an interest in the cooperative building held in trust by 1600 Nelson HDFC, bring this action against the City of New York (the "City"), Ahmed Tigani, in his capacity as Acting Commissioner of the New York City Department of Housing Preservation and Development,[1] Preston Niblack, in his capacity as Commissioner of the New York City Department of Finance (collectively, the "Municipal Defendants"), Neighborhood Restore Housing Development Fund Corporation ("Neighborhood Restore"), and Bronx Pro Group, LLC ("Bronx Pro" and, collectively, the "Non-Municipal Defendants"), asserting fifteen causes of action related to the City's <u>in rem</u> foreclosure of the cooperative building.  (<u>See</u> docket entry no. 3 ("Complaint").)  The Court has jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1367.

        Pending before the Court are two motions to dismiss the Complaint in its entirety:

---

[1]      Pursuant to Federal Rule of Civil Procedure 25(d), the successor of Adolfo Carrion Jr., former Commissioner of the New York City Department of Housing Preservation and Development, is automatically substituted as a party to this action.

a motion filed by the Municipal Defendants (docket entry no. 16), and a motion filed by the Non-Municipal Defendants (docket entry no. 19), both of which are brought pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

The Court has reviewed the parties' submissions thoroughly and, for the following reasons, Defendants' motions to dismiss are granted.

BACKGROUND

The following facts are drawn from (1) the Complaint, and are presumed true for purposes of this motion practice, (2) documents from which judicial notice may be taken, and (3) relevant provisions of state and local law.

In 1996, the City enacted Local Law 37, establishing the Third Party Transfer Program (the "TPT Program") in reliance on its in rem foreclosure authority. (Complaint ¶ 79.) Since 1939, New York state law has authorized the City to engage in summary foreclosure proceedings against a res in order to collect unpaid municipal charges that, after a certain period of time, have matured into tax liens on that property. (Id. ¶ 80-81 (citing, inter alia, N.Y. REAL PROP. TAX LAW § 1120)); see also N.Y.C. ADMIN. CODE § 11-401 et seq. The TPT Program sought to utilize the City's in rem foreclosure authority to target buildings in disrepair "for effective intervention against abandonment." (Complaint ¶ 84 (citation omitted).)

Under the TPT Program, the Commissioner of the New York City Department of Housing Preservation and Development ("HPD") is tasked with reviewing parcels of class one and class two real property prior to a City tax lien sale to determine if any such parcel is

"distressed." [2]  (Id.); see also N.Y.C. ADMIN. CODE § 11-401.1(a).  A "distressed property" is defined, in relevant part, as a parcel of class one or class two real property that is subject to a tax lien or liens, with a lien or liens to value ratio equal to or greater than fifteen percent, and which meets further criteria demonstrating that the parcel has previously been subject to housing maintenance code violations or repair undertaken by the City.  (Complaint ¶ 87 (citing N.Y.C. ADMIN. CODE § 11-401(4)).)  Parcels that are determined to be distressed are excluded from the City's tax lien sale, and thereafter made subject to in rem foreclosure proceedings.  (Complaint ¶ 84); N.Y.C. ADMIN. CODE § 11-401.1(a), (c).

Upon obtaining a judgment of in rem foreclosure, the City transfers ownership of the foreclosed property to certain third party organizations selected by HPD.  (Complaint ¶ 94); see also N.Y.C. ADMIN. CODE § 11-412.1(b).  These organizations are entitled to receive the foreclosed property in fee simple absolute following a four-month mandatory redemption period provided for in section 11-412.1(d) of the New York City Administrative Code ("Administrative Code").  (Complaint ¶ 94 (citing N.Y.C. ADMIN. CODE § 11-412.1(c)).)  If the Commissioner of the New York City Department of Finance ("DOF") fails to transfer the foreclosed property within eight months after the foreclosure judgment, ownership of the property may be restored in the parties who had an interest in the property immediately before the foreclosure judgment was entered.  (Complaint ¶ 94); see also N.Y.C. ADMIN. CODE § 11-412.1(i).  Not all properties that have been made subject to in rem foreclosure and included in the TPT Program by the City are, however, distressed.  (Complaint ¶¶ 90-92; docket entry no. 18 ("MD Mem.") at 6-7.)

---

[2]     Class one real property consists of most residential properties with up to three units, and condominiums that are not more than three stories, whereas class two real property includes all other property that is primarily residential and is not in class one, such as rentals, cooperatives, and condominiums.  See N.Y. REAL PROP. TAX LAW § 1802(1).

Plaintiff 1600 Nelson HDFC is a cooperative corporation, which owned the subject cooperative building located at 1600 Nelson Avenue, Bronx, New York (the "1600 Nelson Property") beginning in November of 1986, when it acquired title from the City. (Complaint ¶¶ 48-49.)  1600 Nelson HDFC held the 1600 Nelson Property in trust, and operated the building for the benefit of the individuals entitled to purchase capital stock in the building's cooperative apartment units.  (Id. ¶ 49)  The Individual Plaintiffs each were shareholders in 1600 Nelson HDFC. (Id. ¶¶ 51-65.)

On July 7, 2015, the City commenced in rem foreclosure proceedings against the 1600 Nelson Property, representing that $399,345.35 was assessed in municipal arrears for taxes and water and sewer charges assessed against the property, and that the Property was subject to a tax lien of $14,392.62.  (Id. ¶¶ 20-21.)  On November 16, 2017, the Supreme Court of the State of New York, County of Bronx ("Bronx County Supreme Court"), entered an order granting a default in rem foreclosure judgment against the 1600 Nelson Property in favor of the City.  (See docket entry no. 19-2 at 23-30; Complaint ¶ 22); In Rem Foreclosure Action No. 52, Borough of Bronx, Index No. 40000/2015 (N.Y. Sup. Ct., N.Y. Cnty.) (the "Bronx 52 Action").  As part of the TPT Program, the 1600 Nelson Property was thereafter transferred to Defendant Neighborhood Restore on September 13, 2018.  (Complaint ¶ 23.)

Plaintiffs allege that, on the date of commencement of the in rem proceedings in July 2015, the 1600 Nelson Property was not a statutorily "distressed" property, that none of the Plaintiffs received notice of the commencement of foreclosure proceedings, and that the Municipal Defendants did not comply with any of the additional notice requirements imposed by governing law.  (Complaint ¶¶ 20-21.)  Plaintiffs further allege that they did not receive notice of the November 2017 default judgment, and that they did not receive any compensation "for the

surplus or equity in their properties, even though the value of the [1600 Nelson Property] far exceeded the putative tax liens separately or in the aggregate."  (<u>Id.</u> ¶ 22-23.)  According to Plaintiffs, they first learned of the foreclosure and subsequent transfer of the 1600 Nelson Property in September 2018, when agents or employees of Defendant Neighborhood Restore "knocked on their cooperative-unit doors, informed them that Neighborhood Restore was now their landlord, and sought to change the locks to the building's entrance door."  (<u>Id.</u> ¶ 24.)

On September 26, 2018, Plaintiff 1600 Nelson HDFC filed a motion to vacate the 2017 default <u>in rem</u> foreclosure judgment and subsequent transfer of title in Bronx County Supreme Court.  (<u>See</u> docket entry no. 19-2 at 18-20.)  On May 31, 2019, the Bronx County Supreme Court denied 1600 Nelson HDFC's motion to vacate.  (Docket entry no. 17-3.)

On January 18, 2022, following 1600 Nelson HDFC's appeal, the New York State Supreme Court, Appellate Division, First Department ("First Department") affirmed the Bronx County Supreme Court's May 2019 order denying the motion to vacate, finding that 1600 Nelson HDFC's motion was properly denied as untimely, that the First Department had "already held that the notice publication procedures used in this foreclosure action accorded with the applicable law and the requirements of due process" and that the record "support[ed] the [Bronx County Supreme Court's] conclusion that the City complied with the other statutory notice requirements."  <u>In re Tax Foreclosure Action No. 52</u>, 201 A.D.3d 517, 517-18 (N.Y. App. Div., 1st Dep't 2022) (citation omitted).  The First Department further found that, "to the extent the motion is not time-barred, we reject defendant's argument that its building was not a proper subject of this foreclosure proceeding under the Third Party Transfer Program because it is not a 'distressed' property," and found the "remaining arguments that are not time-barred" to be unavailing.  <u>Id.</u> at 518 (citations omitted).

On May 10, 2022, the First Department denied 1600 Nelson HDFC's motion for leave to appeal its January 2022 decision to the New York Court of Appeals.  City of New York v. 1600 Nelson Ave. Hous. Dev. Fund Corp., 2022 N.Y. App. Div. LEXIS 7402 (N.Y. App. Div., 1st Dep't May 10, 2022).  On September 15, 2022, the Court of Appeals also denied 1600 Nelson HDFC's motion for leave to appeal, "upon the ground that the orders sought to be appealed from do not finally determine the action within the meaning of the [New York] Constitution."  City of New York v. 1600 Nelson Ave. Hous. Dev. Fund Corp., 38 N.Y.3d 1171 (N.Y. 2022).

On November 17, 2023,[3] Plaintiffs initiated the instant action, asserting a total of fifteen claims, pursuant to 42 U.S.C. section 1983 ("Section 1983"), 42 U.S.C. section 1985 ("Section 1985"), the New York State Constitution, and New York statutory provisions and common law principles.  (See generally Complaint.)  Plaintiffs raise many of the same arguments that were asserted in the state court proceedings, arguing that the in rem foreclosure was unlawful under the TPT Program, as the 1600 Nelson Property was not "statutorily distressed," and that Plaintiffs did not receive requisite notice.  (Id. ¶¶ 27, 30.)  Plaintiffs raise further arguments concerning the administration of the TPT Program more generally, including the assertion that the TPT Program is administered in a discriminatory manner (id. ¶ 13), and that the Program exceeds the state statutory grant of authority because it is utilized for purposes other than collection of tax liens and includes in in rem foreclosure actions properties that are not "statutorily distressed."  (Id. ¶¶ 1, 6, 200.)

---

[3]    Plaintiffs attempted to initiate the instant action on November 1, 2023, but, due to various filing deficiencies, did not file the operative Complaint until November 17, 2023.  This discrepancy is not material for purposes of the instant motion practice.

<u>DISCUSSION</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citation omitted).  This requirement is satisfied when the factual content in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," <u>id.</u> (citation omitted), but a complaint that contains only "naked assertions" or "a formulaic recitation of the elements of a cause of action" does not suffice.  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "In deciding a Rule 12(b)(6) motion, a court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff."  <u>Sara Designs, Inc. v. A Classic Time Watch Co. Inc.</u>, 234 F. Supp. 3d 548, 554 (S.D.N.Y. 2017) (citation omitted).

"When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds . . . the Court must consider the Rule 12(b)(1) motion first."  <u>Bobrowsky v. Yonkers Courthouse</u>, 777 F. Supp. 2d 692, 703 (S.D.N.Y. 2011) (citations omitted).  Although courts are generally limited to examining the sufficiency of the pleadings in ruling on a motion to dismiss under Rule 12, "the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings" where a party challenges the court's subject matter jurisdiction.  <u>Flores v. S. Peru Copper Corp.</u>, 414 F.3d 233, 255 n.30 (2d Cir. 2003) (citation omitted).  The party asserting jurisdiction has the burden of establishing jurisdiction by a preponderance of the evidence.  <u>See</u> <u>APWU v. Potter</u>, 343 F.3d 619, 623 (2d Cir. 2003).

In resolving a motion to dismiss, a court is also "free to consider documents that are incorporated into the complaint by reference or attached to the complaint as exhibits, or

whose terms and effect are relied upon by the plaintiff in drafting the complaint," <u>Gryl ex rel.</u> <u>Shire Pharms. Gpr. PLC v. Shire Pharmaceuticals Grp. PLC</u>, 298 F.3d 136, 140 (2d Cir. 2002), and to take judicial notice of a document filed in another court "to establish the fact of such litigation and related filings."  <u>Glob. Network Communs., Inc. v. City of New York</u>, 458 F.3d 150, 157 (2d Cir. 2006) (citation omitted).

 The Court turns to the Defendants' jurisdictional arguments regarding application of the <u>Rooker-Feldman</u> doctrine to this case and Plaintiffs' standing, before addressing Defendants' arguments concerning Plaintiffs' allegedly insufficient pleading of the remaining claims.

<u>Rule 12(b)(1) Review – Rooker-Feldman</u>

 Defendants assert that the Complaint is barred, at least in part, by the <u>Rooker-Feldman</u> doctrine, which prevents "federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases."  <u>Dorce v. City of New York</u>, 2 F.4th 82, 101 (2d Cir. 2021) (citing 28 U.S.C. § 1257).  This doctrine is named after the first two cases in which it was articulated, <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923), and <u>District of Columbia Court of Appeals v.</u> <u>Feldman</u>, 460 U.S. 462 (1983).  For <u>Rooker-Feldman</u> to apply, four requirements must be met: "(1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced."  <u>Dorce</u>, 2 F.4th at 101 (internal quotation marks and citation omitted).  "[T]he second requirement—that the plaintiff complains of an injury <u>caused</u> by a state-court judgment—is the core requirement from which the other <u>Rooker-Feldman</u>

requirements derive," although all four requirements must be met for the jurisdictional bar to apply.  Sung Cho v. City of New York, 910 F.3d 639, 646 (2d Cir. 2018) (emphasis in original) (internal quotation marks and citation omitted).

  The Municipal Defendants argue that, to the extent the Complaint seeks reversal of the foreclosure of the 1600 Nelson Property, or compensatory damages above the "surplus" or "excess value" of the Property, Plaintiffs' claims are barred by Rooker-Feldman.  (MD Mem. at 11.)  The Non-Municipal Defendants additionally argue that the Bronx County Supreme Court found that the New York City Commissioner of Finance was the entity responsible for the in rem foreclosure at issue in Bronx 52, and that Plaintiffs therefore "cannot now challenge that Finding of Fact and claim that Neighborhood Restore and Bronx Pro were involved in that process[.]" (Docket entry no. 20 ("NMD Mem.") at 7.)  Plaintiffs assert that Rooker-Feldman does not apply to this case for several reasons: (1) the prior state court actions were in rem, meaning Plaintiffs have not previously litigated their claims in state court; (2) the fourth prong of Rooker-Feldman is not met here, as there is currently pending a motion for leave to renew 1600 Nelson HDFC's motion to vacate the underlying default judgment in the Bronx 52 Action; (3) Rooker-Feldman "does not apply to general constitutional challenges to the validity of a statute"; and (4) applying Rooker-Feldman in this case "would run contrary" to the Supreme Court's decision in Knick v. Twp. of Scott, 588 U.S. 180 (2019).  (Docket entry no. 31 ("Pls. Mem.") at 20-24.)  Defendants assert that each of these arguments lacks merit.

  Plaintiffs' claims are largely identical to the claims advanced by the plaintiffs in Dorce v. City of New York, 2 F.4th 82 (2d Cir. 2021), a case in which the plaintiffs similarly challenged in rem transfers pursuant to the TPT Program, and the TPT Program as a whole.  As held in Dorce, the Court agrees that, to the extent Plaintiffs seek reversal of the foreclosure of the

1600 Nelson Property, or compensatory damages exceeding the surplus value of the Property after accounting for taxes owed, Rooker-Feldman bars such review. Id. at 108. Turning to the first requirement of Rooker-Feldman, Plaintiffs plainly lost in state court when the City first obtained an in rem foreclosure judgment against the property in the Bronx 52 action, and in the proceedings that followed, satisfying the first Rooker-Feldman requirement. The Dorce plaintiffs attempted to advance the same argument as Plaintiffs here in contending that this requirement was not met, i.e., that the plaintiffs were not named parties in the in rem foreclosure action. Id. at 102. While the Second Circuit conceded that the argument "has some logical force," the panel flatly disagreed with the plaintiffs' position, finding that "[s]omeone who loses an ownership interest in property through a state in rem foreclosure proceeding against the property has lost in state court" for purposes of Rooker-Feldman. Id. (noting that to hold otherwise would preclude state courts from "exercising in rem jurisdiction without the risk of federal courts undoing their work").

As to the second and third requirements, again, as in Dorce, Plaintiffs "cannot seek to void the state court foreclosure decision[] transferring their property" in an action before this Court. Id. at 104; (see also, e.g., Complaint ¶ 214 (seeking declaratory judgment that the Non-Municipal Defendants have no "right, title, claim, lien, mortgage, or interest" in the 1600 Nelson Property, and that Plaintiff 1600 Nelson HDFC is the owner in fee simple absolute).) This type of claim is "squarely foreclose[d]" by Rooker-Feldman, "both because it addresses an injury caused by the state court judgment, and because it would require the district court to review that judgment." Dorce, 2 F.4th at 104. While claims concerning misconduct that purportedly preceded the state court proceeding are not barred by Rooker-Feldman—such as the due process claims in this case concerning allegedly improper notice—reversal of the foreclosure

judgment entered by the Bronx County Supreme Court, or attempts to seek corresponding compensatory damages, are beyond this Court's purview.  Id.  Similarly, as the Municipal Defendants note, Rooker-Feldman bars "challenges to state-court decisions . . . even if those challenges allege that the state court's action was unconstitutional."  (Docket entry no. 32 ("MD Reply Mem.") at 10 (quoting Feldman, 460 U.S. at 486).)  The same is true even where a plaintiff seeks to challenge the constitutional validity of the statute on which the state court relied in the action.  See, e.g., Dorce, 2 F.4th at 104 (discussing Feldman and explaining that, "although the plaintiffs there could not seek federal court review of state court judgments denying their requests for waiver of a rule [before a district court]. . . they could mount a general challenge to the constitutionality of the rule in federal court" (emphasis in original) (citations and internal quotation marks omitted)).

The final requirement of Rooker-Feldman, which mandates that the relevant state proceedings have "ended," is also met in this case.  See Hoblock v. Albany Cnty. Bd. Of Elections, 422 F.3d 77, 89 (2d Cir. 2005); accord Exxon Mobil v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005).  On November 16, 2017, the City obtained an in rem foreclosure judgment against the 1600 Nelson Property.  (See docket entry no. 19-2 at 23-30.)  On May 31, 2019, the Bronx County Supreme Court denied Plaintiff 1600 Nelson HDFC's motion to vacate and reverse that foreclosure and the subsequent transfer of the 1600 Nelson Property.  (Docket entry no. 17-3.)  On January 18, 2022, the First Department affirmed the denial of 1600 Nelson HDFC's motion to vacate, finding that the motion to vacate was untimely, and further rejecting all of 1600 Nelson HDFC's arguments on appeal on the merits.  See In re Tax Foreclosure Action No. 52, 201 A.D.3d 517 (N.Y. App. Div., 1st Dep't 2022).  On May 10, 2022, the First Department denied 1600 Nelson HDFC's motion for leave to appeal the January 18, 2022

decision to the New York Court of Appeals.  City of New York v. 1600 Nelson Ave. Hous. Dev.

Fund Corp., 2022 N.Y. App. Div. LEXIS 7402 (N.Y. App. Div., 1st Dep't May 10, 2022).

Finally, on September 15, 2022, the Court of Appeals also denied Nelson HDFC's motion for

leave to appeal.  City of New York v. 1600 Nelson Ave. Hous. Dev. Fund Corp., 38 N.Y.3d

1171 (N.Y. 2022).  Having seemingly pursued every available avenue for state appellate review,

Plaintiffs initiated this action in November 2023.

Plaintiffs now assert that the state court proceedings "have arguably not ended

within the meaning of Rooker-Feldman" because, three days before Plaintiffs filed their

opposition papers in the instant case, and after four requested extensions of time to do so, 1600

Nelson HDFC filed a motion for leave to renew its motion to vacate the default foreclosure

judgment in Bronx County Supreme Court.  (Pls. Mem. at 22; docket entry no. 30-4.)  Apart

from the fact that said motion has, as of the date of this Memorandum Opinion and Order, been

denied by the Bronx County Supreme Court,[4] the state court proceedings had ended within the

meaning of Rooker-Feldman prior to the Complaint being filed in the instant litigation.  Federal

courts "assess jurisdiction as of the moment the complaint was filed."  Hunter v. McMahon, 75

F.4th 62, 67 (2d Cir. 2023).  At the time Plaintiffs filed their Complaint, Plaintiff 1600 Nelson

HDFC's vacatur motion had been denied, and appeal of that denial had been pursued to the New

York Court of Appeals.  See Hoblock, 422 F.3d at 89 (finding that, where plaintiff in New York

---

[4]    The Bronx County Supreme Court denied 1600 Nelson HDFC's motion to renew on
August 1, 2024.  A copy of the decision is appended to this Memorandum Opinion and
Order as Appendix A.  Had the Bronx County Supreme Court found it appropriate to
reexamine its holding in light of 1600 Nelson HDFC's motion to renew, there might have
been questions raised concerning the application of comity or abstention doctrines.  (See
Pls. Mem. at 22-23.)  These issues are plainly not before the Court, however, in light of
the Bronx County Supreme Court's finding that the motion to renew was "entirely
misplaced."

state litigation has pursued appeals of relevant state court judgment to the Court of Appeals, and the Court of Appeals has rendered its decision, "the state suit has unequivocally terminated" for Rooker-Feldman purposes).

Although Plaintiffs assert that the Court of Appeals' denial was issued because the "orders of the NY Supreme Court and Appellate Division did not 'finally determine the action within the meaning of the Constitution'" (Pls. Mem. at 22-23), Plaintiffs do not assert that there remains time to appeal the default foreclosure judgment or the denial of the relevant vacatur motion, both of which were entered roughly 6 and 5 years, respectively, before Plaintiffs' Complaint in this action was filed. Cf., e.g., Hunter, 75 F.4th at 69 n.9 (gathering case law in which the Rooker-Feldman doctrine was held to operate as a jurisdictional bar because, inter alia, the time to appeal the relevant state-court judgment had passed). Plaintiffs therefore have not demonstrated that the fourth requirement of Rooker-Feldman is unmet in this case. See APWU, 343 F.3d at 623 (2d Cir. 2003) (party invoking federal jurisdiction has burden to show establish jurisdiction by preponderance of evidence).

In sum, to the extent Plaintiffs ask this Court to review and reject the in rem foreclosure judgment, or seek compensatory damages above "surplus" or "excess value" of the 1600 Nelson Property after accounting for the tax arrears owed to the City, any such claims are barred by Rooker-Feldman, all four requirements of that doctrine having been met in this case. Those portions of the Complaint (see Complaint ¶¶ 141, 164, 169, 174, 179, 184, 188, 195), and Count XV in its entirety (id. ¶¶ 213-214), are therefore dismissed.

The Court is less persuaded by the Non-Municipal Defendants' attempts to extricate themselves from this litigation by invoking Rooker-Feldman. (See NMD Mem. at 7-8.) To start, the judgment of foreclosure issued by the Bronx County Supreme Court did not find

that the Commissioner of Finance "was the entity responsible for the creation of the properties that were included in Bronx 52, as well as the exclusion of Properties, pursuant to Admin. Code § 11-413," as the Non-Municipal Defendants claim.  (Id. at 7.)  Rather, the Bronx County Supreme Court's findings of fact formulaically recited the process by which in rem foreclosure is effectuated in New York City, finding that the Commissioner of Finance "caused" to be filed, posted, and mailed copies of the list of properties on which the City sought to foreclose in the Bronx 52 Action, including the 1600 Nelson Property, in accordance with the relevant Administrative Code requirements.  (See docket entry no. 19-2 at 23-27.)

Moreover, attempts to relitigate a factual issue determined in state court are more properly analyzed under issue or claim preclusion principles, rather than Rooker-Feldman.  As the Supreme Court has cautioned, Rooker-Feldman "is a narrow doctrine," and "[i]ncorporation of preclusion principles into Rooker-Feldman risks turning that limited doctrine into a uniform federal rule governing the preclusive effect of state-court judgments, contrary to the Full Faith and Credit Act."  Lance v. Dennis, 546 U.S. 459, 464, 466 (2006) (emphasis in original).  The Court therefore does not find Plaintiffs' claims as against the Non-Municipal Defendants to be barred by Rooker-Feldman, to the extent they do not seek reversal of the foreclosure of the 1600 Nelson Property or compensatory damages above "surplus" or "excess value" of the Property, as set forth above.

Rule 12(b)(1) Review – Equitable Relief

The Municipal Defendants also assert that Plaintiffs lack standing to seek declaratory and injunctive relief that would, inter alia, declare the TPT Program unconstitutional and enjoin Defendants from "undertak[ing] in rem foreclosure actions pursuant to the [TPT]

Program."  (MD Mem. at 15-16; Complaint ¶ 211(A)-(E).)[5]

To establish standing, the party invoking federal jurisdiction bears the burden of demonstrating: (1) an injury in fact; (2) a causal connection between the injury and conduct complained of; and (3) sufficient likelihood that the injury will be redressed by a favorable decision.  Lujan v. Defs. Of Wildlife, 504 U.S. 555, 560-61 (1992).  When seeking injunctive or declaratory relief, a plaintiff "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that [they] will be injured in the future."  Dorce, F.4th at 95 (citation omitted).  Moreover, the "threatened [future] injury" must be "certainly impending," or there must be "a substantial risk that the harm will occur," rather than a mere possibility.  See id. (citation omitted).

Defendants argue that, as in Dorce, Plaintiffs lack standing to seek equitable relief in this case because any such remedy "would do nothing to prevent Plaintiffs from being evicted from the already foreclosed-upon 1600 Nelson Property."  (MD Mem. at 16.)  Plaintiffs do not respond to this argument in their opposition papers, and the Court agrees that there is no impending future injury discernible on the face of Plaintiffs' Complaint that could be remedied by the equitable relief they seek.  Plaintiffs' property has already been foreclosed upon and their interests have been extinguished.  As explained above, the Court has no jurisdiction to review and reject the state court in rem foreclosure judgment, and an order of this Court preventing the City's future use of the TPT Program, or declaring the use of such Program to be inappropriate

---

[5]    Plaintiffs frame the requested relief in Count XIV as declaratory relief, but the Plaintiffs also seek injunctive relief in this Count.  See, e.g., Cicero v. Olgiati, 426 F. Supp. 1213, 1219 (S.D.N.Y. 1976) (explaining that injunctive relief is coercive, not merely persuasive, and that violations of injunctions are punishable by contempt); (see also Complaint ¶ 211(B) (seeking relief "[d]eclaring that Defendants can no longer undertake in rem foreclosure actions pursuant to the Third Party Transfer Program").)

as applied to the 1600 Nelson Property, will not ameliorate the injuries of which Plaintiffs

complain.  See City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983) ("The equitable remedy is

unavailable . . . where there is no showing of any real or immediate threat that the plaintiff will

be wronged again[.]"); see also H.B. v. Byram Hills Cent. Sch. Dist., 648 F. App'x 122, 125 (2d

Cir. 2016) (finding requested declaratory relief to be "impermissible" where aimed at past

conduct (citing, inter alia, Ward v. Thomas, 207 F.3d 114, 120 (2d Cir. 2000))).

 Count XIV is therefore dismissed for lack of standing.

Rule 12(b)(6) Review

 Defendants argue that, to the extent Plaintiffs' claims are not barred by Rooker-

Feldman, each claim is time-barred under the relevant statute of limitations.  Specifically,

Defendants argue that Plaintiffs knew, or had reason to know, of the in rem foreclosure judgment

and subsequent transfer of the 1600 Nelson Property by September 26, 2018, at the latest, when

Plaintiff 1600 Nelson HDFC filed its motion to vacate the foreclosure and reverse the transfer of

the 1600 Nelson Property in the Bronx 52 Action, and that the statute of limitations on Plaintiffs'

claims therefore accrued as of that date at the very latest.  (MD Mem. at 7-9; NMD Mem. at 9-

10.)  Plaintiffs do not dispute Defendants' assertion that Plaintiffs knew, or had reason to know,

of the foreclosure and transfer by September 26, 2018, but they raise a number of arguments in

support of their assertion that certain of the claims set forth in the Complaint are timely.  (Pls.

Mem. at 11-18.)

 The Court addresses each group of remaining claims and Plaintiffs' arguments in

turn.

 Counts I-V

 Counts I-V of the Complaint are claims asserted under 42 U.S.C. sections 1983

and 1985.  (Complaint ¶¶ 106-64.)  The statute of limitations for claims arising under these

statutes in New York is three years, with a claim accruing when "the plaintiff knows or has

reason to know of the injury which is the basis of [his or her] action."  <u>Ward v. City of New

York</u>, 777 F. App'x 540, 542 (2d Cir. 2019) (citations omitted).  There is no dispute that

Plaintiffs knew or had reason to know of the injuries complained of, <u>i.e.</u>, the <u>in rem</u> foreclosure

and subsequent transfer of the 1600 Nelson Property, by September 26, 2018, at the latest, which

renders Counts I-V of Plaintiffs' Complaint, filed in November 2023, untimely.

   Plaintiffs advance five arguments as to why the Court should find that these

claims are not time-barred, each of which is unavailing.  Plaintiffs first argue that a challenge to

the constitutionality of a notice provision, where the party had no timely notice, is not barred by

statute of limitations, citing New York state and Second Circuit case law.  (Pls. Mem. at 11-12.)

To the extent Plaintiffs are seeking to vacate the default judgment of <u>in rem</u> foreclosure in the

Bronx 52 Action for lack of timely notice, such relief is, as discussed above, barred by <u>Rooker-

Feldman</u>.  <u>See</u> discussion <u>supra</u> pp. 8-14.  As to Plaintiffs' claims concerning lack of notice that

preceded the foreclosure judgment, such as Plaintiffs' federal due process claim, Plaintiffs

received sufficient notice of the foreclosure judgment and subsequent transfer of the 1600

Nelson Property to timely litigate any such claims.  The City first obtained a default foreclosure

judgment on November 16, 2017.  Plaintiffs had actual notice as of September 26, 2018,

approximately 314 days later, at the latest, when Plaintiff 1600 Nelson HDFC sought to vacate

the default judgment and subsequent transfer in Bronx County Supreme Court.  As opposed to

the circumstances at issue in the case law cited by Plaintiffs, any purported deficiencies in the

City's notice procedures therefore did not deprive Plaintiffs of "actual notice in time to bring

their action"; ample time remained to litigate a claim within the governing three-year statute of

limitations.  Cf., e.g., ISCA Enterprises v. City of New York, 77 N.Y.2d 688, 698 (N.Y. 1991).

Plaintiffs next make several arguments that go to the ripeness of their Section 1983 takings claim.  "Ripeness is a doctrine rooted in both Article III's case or controversy requirement and prudential limitations on the exercise of judicial authority."  Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005) (citations omitted).  At its core, ripeness requires the reviewing court to consider whether the claims before it are sufficiently concrete and final, or whether adjudication of the case would be premature, amounting to "abstract disagreements."  Id. (quoting, inter alia, Abbott Labs v. Gardner, 387 U.S. 136, 148 (1967)).

Plaintiffs argue that their Section 1983 takings claim under the Fifth Amendment did not accrue at the time the 1600 Nelson Property was transferred, reasoning that takings claims are only ripe "when the government has both physically seized a property and denied its owner just compensation" (Pls. Mem. at 12 (emphasis in original)), and, here, "the City never communicated to Plaintiffs the fact that they would not receive any compensation for their surplus or equity value in the Subject Property taken" (id. at 13).  Plaintiffs' argument appears to stem from a misinterpretation of the Supreme Court's decision in Knick v. Twp. of Scott, 588 U.S. 180 (2019), which overruled past precedent to hold that exhaustion of state law remedies is not a prerequisite to filing an action under Section 1983.  (Pls. Mem. at 12 (citing Knick, 588 U.S. at 208-209 (Kagan, J., dissenting)).)  In Knick, the Court specifically held that "[a] property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it," i.e., when the government has reached a "conclusive position" with respect to the property at issue.  588 U.S. at 185 (emphasis added); see also Pakdel v. City & Cnty. of San Francisco, 594 U.S. 474, 480 (2021) ("To be sure, we have indicated that a

plaintiff's failure to properly pursue administrative procedures may render a claim unripe if avenues still remain for the government to clarify or change its decision.").

In this case, the 1600 Nelson Property had been foreclosed upon and transferred pursuant to the TPT program by September 13, 2018.  (See Complaint ¶ 23; id. ¶ 105 ("Following the seizure and transfer of the Title to the [1600 Nelson Property], neither Plaintiff HDFC nor any of the Shareholder Plaintiffs had any means or mechanism to obtain the Surplus or Excess of the Subject Property.").)  At that point, there was no further opportunity for Plaintiff 1600 Nelson to redeem the 1600 Nelson Property, nor any further possibility that the Property would revert to the original owner, 1600 Nelson.  Cf. Pakdel, 594 U.S. at 480; see also, e.g., N.Y.C. ADMIN. CODE § 11-412.1(d) (providing for a 4-month redemption period following entry of judgment for in rem foreclosure); id. § 11-412.1(i) (providing that the property that has been subject to in rem foreclosure must be conveyed to the City or to a third party within eight months after the entry of final judgment, or all parties that had an interest in the property must have their interest restored).  Because this injury had ripened and Plaintiffs knew or should have known of the injury by September 26, 2018, at the latest, the statute of limitations on Plaintiffs' Section 1983 takings claim began to run as of that date, at the latest,[6] notwithstanding the existence of any unresolved avenues for seeking compensation for the taking.

---

[6]     Knick resolved the question of when a Section 1983 case is ripe for adjudication, i.e., when the claim may be properly brought.  See 588 U.S. at 185 (explaining when a Fifth Amendment takings claim is "actionable").  As noted, however, in a Section 1983 case, the statute of limitations only begins to run when a plaintiff knew or should have known of the injury forming the basis of the plaintiff's complaint.  Hogan v. Fischer, 738 F.3d 509, 518 (2d Cir. 2013) (citation omitted).  Where, as here, a plaintiff alleges to have discovered an unconstitutional federal takings injury at a date later than when the government accomplished the taking, the statute of limitations for a Section 1983 claim premised on that taking only begins to run as of the date of discovery, despite the fact that such claim is, per Knick, ripe as soon as the unconstitutional taking is final.

Plaintiffs next argue that they could not have commenced the instant litigation until June 21, 2019, when the Supreme Court issued its decision in Knick, as prior precedent required property owners to seek compensation under state law in state court before bringing a federal takings claim under Section 1983.  (Pls. Mem. at 13.)  Even assuming that this argument is correct on the merits, the instant litigation would <u>still</u> be untimely; Plaintiffs would have been required to file their Complaint by June 21, 2022, to meet the three-year statute of limitations. Plaintiffs did not commence this action until November 2023.

Plaintiffs' final argument concerning ripeness is that the instant case was not ripe until the Court of Appeals denied Plaintiff 1600 Nelson HDFC's motion for leave to appeal, rendered on September 15, 2022, because the City's decision was not "final" until that point in time.  (Pls. Mem. at 14.)  This argument runs directly counter to the Supreme Court's holding in Knick, which expressly found that a Fifth Amendment violation occurs "at the time of the taking," and that "plaintiffs may bring constitutional [takings] claims under § 1983 'without first bringing any sort of state lawsuit, even when state court actions addressing the underlying behavior are available.'"  588 U.S. at 194 (citations omitted).  The Supreme Court has instead made clear that "administrative 'exhaustion of state remedies' is not a prerequisite for a takings claim when the government has reached a conclusive position."  Pakdel, 594 U.S. at 480 (citation omitted).  In this case, such a "conclusive position" was reached by the City when the 1600 Nelson Property was transferred pursuant to the TPT Program on September 13, 2018, as explained above.

Plaintiffs next argue that the continuing violations doctrine provides an exception to the three-year limitations period.  (Pls. Mem. at 14.)  The continuing violations doctrine provides an "exception to the normal knew-or-should-have-known accrual date" where claims

are "composed of a series of separate acts that collectively constitute one unlawful . . . practice." Harris v. City of New York, 186 F.3d 243, 248 (2d Cir. 1999); Washington v. Cnty. of Rockland, 373 F.3d 310, 318 (2d Cir. 2004) (citations omitted).  "The continuing violation doctrine thus applies not to discrete unlawful acts, even where those discrete acts are part of 'serial violations,' but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment."  Lucente v. Cnty. of Suffolk, 980 F.3d 284, 309 (2d Cir. 2020) (citation omitted).  The archetypal case is a discrimination action, where there is an ongoing discriminatory policy or practice.  See id.

Plaintiffs argue that the continuing violation doctrine is applicable in this case, because "rather than a discrete act, Municipal Defendants' transfer of the deed was one of a series of acts to deprive Plaintiffs of their rights long after the transfer of the deed."  (Pls. Mem. at 15.)  Plaintiffs list as "continuing acts" the "lack of compensation and current attempts by Non-Municipal Defendants to use the local Courts to evict the individual[ly] named Plaintiffs from their homes," and the fact that the Municipal Defendants opposed Plaintiff 1600 Nelson HDFC's efforts to vacate the default in rem foreclosure judgment and subsequent transfer of the 1600 Nelson Property.  (Id. at 15-16.)

The continuing violations doctrine is not, however, meant to encompass the continuing impact of a past harm, nor allegations of harm that merely reflect a defendant's "ongoing failure to fix a past wrong . . . as opposed to Defendant's committing any new misdeeds."  Gonzales v. Nat'l Westminster Bank PLC, No. 11-CV-1435-LAP, 2013 U.S. Dist. LEXIS 183406, at *10 (S.D.N.Y. Nov. 18, 2013); see also Ugo-Alum v. N.Y. State DMV, No. 23-CV-7458-JPC, 2024 WL 3553168, at *13 (S.D.N.Y. July 26, 2024) ("[T]he law is clear that a claim accrues when an injury becomes known, regardless of when its effects are ultimately felt."

(gathering case law)).  Plaintiffs' Complaint is premised on discrete injuries, i.e., the allegedly unconstitutional taking and subsequent transfer of their property, both of which now fall outside the relevant statute of limitations; their attempts to recast the lingering effects of those harms as a single unlawful practice is insufficient to support invocation of the continuing violations doctrine.  Harris, 186 F.3d at 250 ("We have made it clear that a continuing violation cannot be established merely because the claimant continues to feel the effects of a time-barred . . . act." (citation omitted)).

Plaintiffs next note that "New York and the Second Circuit provide for tolling of the statute of limitations" in situations where there are "extraordinary circumstances" or where a plaintiff "was induced by fraud, misrepresentation or deception to refrain from filing a timely action."  (Pls. Mem. at 16-17 (citing Lopez v. Annucci, 690 F. App'x 56, 59 (2d Cir. 2017); Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007).)  Plaintiffs assert that "Defendants pursued [a] fraudulent course of conduct in obtaining the foreclosure judgment, transfer of title, and eviction proceedings."  (Id. at 17.)  Their position is meritless.  To start, there are no allegations in the Complaint describing Defendants' conduct as "fraudulent," nor do Plaintiffs assert a claim for fraud.  (See generally Complaint.)  In any case, Plaintiffs do not make clear in their Complaint or opposition briefing how this alleged course of conduct was designed to induce them to "refrain from filing a timely action," nor why or how they were prevented from doing so once they learned of Plaintiffs' allegedly unlawful conduct as of September 26, 2018, at the latest.  See Abbas, 480 F.3d at 642 ("If a plaintiff cannot articulate any acts by defendants that prevented him from timely commencing suit then he has failed to meet his burden of showing that he was wrongfully induced by defendants not to commence suit." (internal quotation marks and citations omitted)).

As to Plaintiffs' argument concerning "extraordinary circumstances," the line of case law allowing for equitable tolling generally requires a plaintiff to establish: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Watson v. United States, 865 F.3d 123, 132 (2d Cir. 2017) (citation omitted). "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011) (citations omitted). The Second Circuit has advised that, to secure equitable tolling under this exception, "it is not enough for a party to show that he experienced extraordinary circumstances; he must further demonstrate that those circumstances caused him to miss the original filing deadline." Smalls v. Collins, 10 F.4th 117, 146 (2d Cir. 2021) (internal quotation marks and citation omitted); see also Lopez, 690 F. App'x at 59.

Plaintiffs list a number of circumstances they characterize as "extraordinary," such as the Supreme Court's decision in Tyler v. Hennepin Cnty., 598 U.S. 621 (2023), issued nearly five years following the accrual of Plaintiffs' claims, but they do not attempt to explain or demonstrate how such circumstances prevented them from timely filing the instant litigation. (See Pls. Mem. at 17); see also, e.g., Aiken v. United States, Nos. 12-CV-6120, 06-CR-479-JFK (S.D.N.Y. Aug. 20, 2013) (finding unavailability of helpful precedent not to be an "extraordinary circumstance" because "that phrase is meant to connote an event which actually prevents a [plaintiff] from [filing]" (gathering case law)).

Apparently in conjunction with their argument concerning "extraordinary circumstances," Plaintiffs assert that there "exist issues of fact as to Defendants' purpose in effecting the TPT Program," and that, "[w]ithout the aid of discovery" as to said issue, "a motion to dismiss on statute[] of limitation[s] grounds is inappropriate and premature." (Pls. Mem. at

17-18.)  Plaintiffs fail, however, to articulate how fact discovery would remedy any of the myriad <u>legal</u> deficiencies in their arguments, which have been reviewed at length above.

Accordingly, for the reasons explained above, the remainder of Plaintiffs' federal claims, Counts I-V, are dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

<u>State and Local Law Claims (Counts VI-XIII)</u>

The remaining claims of the Complaint, Counts VI-XIII, are asserted under various provisions of state and local law.  A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C.A. § 1367(c)(3) (Westlaw through P.L. 119-4).  Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction[.]"  <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 (1988) (citation omitted).  Because all of Plaintiffs' federal claims are dismissed, the Court declines to exercise supplemental jurisdiction of Plaintiffs' state and local law claims.  Counts VI-XII are dismissed without prejudice to litigation in a forum of competent jurisdiction.

CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted.  Counts XIV and XV are dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing and jurisdiction, respectively.  Counts I-V are dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) as untimely.  The Court declines to exercise jurisdiction of Counts VI-XIII, pursuant to 28 U.S.C. section 1367(c).

All claims against all parties having been resolved, the Clerk of Court is respectfully directed to enter judgment accordingly, terminate all pending motions, and close this case.

SO ORDERED.

Dated: New York, New York
       March 31, 2025

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

# Appendix A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF BRONX: PART IA-15**
--------------------------------------------------------------X

IN REM TAX FORECLSOURE ACTION NO.    Index №.: 40000/2015
52, BOROUGH OF THE BRONX

SECTIONS 9, 10, 11, 12, 14, 15 and 16      **Hon. Ben R. Barbato, JSC**

TAX CLASSES 1 and 2

RE: **1600 NELSON AVENUE HOUSING**
     **DEVELOPMENT FUND CORPORATION**
     **1600 Nelson Avenue**
     **Bronx, New York**
     **Block: 2876  Lot: 1**
--------------------------------------------------------------X

The following papers numbered 1 to _____ were read on this motion (Mot. Seq. No.) to #16
submitted on August 18, 2023.

| | |
|---|---|
| Notice of Motion – Exhibits and Affidavits | NYSCEF No(s). |
| Affirmation in Opposition and Exhibits | NYSCEF No(s). |
| Affirmation in Reply | NYSCEF No(s). |

*Motion is Respectfully Referred to Justice: _____*
*Dated: _____*

     In this ex parte order to show cause application, Defendant, 1600 Nelson Avenue Housing Development Fund Corporation ("1600 Nelson") seeks to renew its motion dated September 27, 2018 which sought inter alia, to vacate a default judgment obtained by the Plaintiff, the City of New York, against it. Teh Court denied the motion by decision and Order dated July 19, 2019 ("Court's Order"). Thereupon an appeal of the Court's Order was affirmed by the Appellate Division (see In Rem Tax Foreclosure Action No. 52, etc., City of New York v 1600 Nelson Avenue Housing Development Fund Corporation, 201 AD3d 517 [1st Dept 2022], which leave to appeal was denied by the Court of Appeals (In Rem Tax Foreclosure Action No. 52, etc., City of New York v 1600 Nelson Avenue Housing Development Fund Corporation, 38 NY3d 1171 [2022]).

     It is axiomatic that a motion to renew is discretionary with the Court and is based upon additional material facts which existed at the time the prior motion was made, but were not then known to the party seeking leave to renew, and therefore not made known to the court (see CPLR § 2221 [e]; see also, Foley v Roche, 68 AD2d 558 [1st Dept 1979]; Chris Grant Browhawk Films v Digital Seven LLC, 210 AD3d 552 [1st Dept 2022]). Although, "[r]enewal should be denied where the party fails to offer a valid excuse for not submitting the additional facts upon the original application" (Foley v Roche, 68 AD2d at 568 [1st Dept 1979]), renewal may be appropriate in those instances where there is a change in the law. It is on this basis that 1600 Nelson seeks to vacate the Court's Order, relying on the United States Supreme Court decision in

Tyler v Hennepin County, Minnesota et al, 598 US 631 (2023) and United States Court of Appeals, Second Circuit decision in Dorce, et al. v City of New York 2 F4th 82 (2ᵈ Cir 2021).

The application is entirely misplaced insofar as the Court's Order addressed the default judgment entered against 1600 Nelson in the in rem proceeding, and a finding that 1600 Nelson did not present a basis to vacate the same. The federal cases cited would not have an impact on the vacatur of the default. Indeed, the relief sought at this juncture, would address the alleged improper taking and just compensation therefor, a remedy which would be properly adjudicated in the federal action that 1600 Nelson has commenced.  The Court accordingly denies to entertain the application.

Dated: AUG 0 1 2024

Hon. _____

BEN R. BARBATO, J.S.C.

1. CHECK ONE............................................    X CASE DISPOSED IN ITS ENTIRETY    ☐ CASE STILL ACTIVE
2. MOTION IS.............................................    ☐ GRANTED    ☒ DENIED    ☐ GRANTED IN PART    ☐ OTH
3. CHECK IF APPROPRIATE.....................    ☐ SETTLE ORDER    ☐ SUBMIT ORDER    ☐ SCHEDULE APPEARANCE
                                                 ☐ FIDUCIARY APPOINTMENT    ☐ REFEREE APPOINTMENT